# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
219 SOUTH DEARBORN STREET
CHICAGO. ILLINOIS 60604
**Kenneth S. Gardner**, Bankruptcy Clerk

Date:

To:  Michael Dobbins, Clerk
United States District Court
219 South Dearborn Street
Chicago, IL 60604

**08CV4665
JUDGE CONLON
MAG. JUDGE NOLAN**

RE:  Bankruptcy Case Number:  02-22594

Debtor:  Compak Corporation

Adversary Case Number:  04-4028

Plaintiff:  The Compak Companies Inc

Defendant:  Jimmie L Johnson et al    Bruce Carlson

RON BOWEN, PAT PAK INC. DUOTECH HOLDINGS INC. DUOTECH Packaging, LLC aimarc Packaging Co

Pursuant to Rule 9033 (d) of the Bankruptcy Rules of Procedure, transmitted herewith is:

- [✓] Proposed Findings of Fact and Conclusions of Law
- [✓] Objections
- [✓] Responses
- [ ] Transcript of Record
- [ ] Designation of Record with Record included
- [ ] Other

**FILED**

AUG 1 5 2008

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

Claudia E Cabrales
Case Administrator

cc: Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| COMPAK CORPORATION, | ) | Case No. 02 B 22594 |
| | ) | Honorable Bruce W. Black |
| Debtor. | ) | Chapter 7 |
| | ) | |
| COMMUNION PACKAGING | ) | Case No. 02 B 39188 |
| COMPANY, an Illinois corporation, | ) | Chapter 7 |
| | ) | Honorable Bruce W. Black |
| Debtor. | ) | |
| | ) | (Jointly Administered) |
| _____ | ) | |
| | ) | |
| THE COMPAK COMPANIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 04 A 04028 |
| | ) | |
| v. | ) | |
| | ) | |
| JIMMIE L. JOHNSON, RON BOWEN, | ) | **08CV4665** |
| BRUCE CARLSON, PATPAK, INC., | ) | **JUDGE CONLON** |
| DUOTECH HOLDINGS, INC., | ) | **MAG. JUDGE NOLAN** |
| DUOTECH PACKAGING, LLC, AND | ) | |
| OLMARC PACKAGING COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Background

This adversary proceeding was referred to this court by order of United States District

Judge John F. Grady on September 1, 2004, pursuant to 28 U.S.C. § 157(a). Judge Grady's order

referred counts I and II of the complaint filed in the district court as case number 03 C 7427 as

"related to" the bankruptcy case of Compak Corporation. Presently before this court is the

defendants' motion for summary judgment. The motion has been thoroughly briefed and argued.

1

2\9

The issues raised in counts I and II are not "core" bankruptcy issues as defined in 28 U.S.C. § 157(b), and the plaintiff has not consented to this judge entering final judgment herein. Consequently, under 28 U.S.C. § 157(c) and Federal Rule of Bankruptcy Procedure 9033, this court hereby files these Proposed Findings of Fact and Conclusions of Law and recommends that the District Court grant the motion for summary judgment and enter judgment in favor of the defendants.

Findings of Fact

There are no genuine disputes regarding the following material facts:

1. The plaintiff is The Compak Companies LLC ("TCC"), a Florida limited liability company.

2. BMJ Partners ("BMJ") is an Illinois partnership.

3. Compak Corporation ("Compak") is an Oregon corporation, and Communion Packaging Company ("CPC") is an Illinois corporation. Compak filed for relief under chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 101 ff) on June 10, 2002. CPC filed under chapter 11 on October 7, 2002. The two cases were consolidated on October 23, 2002. The cases were converted to cases under chapter 7 on April 3, 2003.

4. BMJ was the successful bidder at an auction of certain assets of the debtors under section 363 of the Bankruptcy Code. See Sale Order entered on March 24, 2003.

5. BMJ assigned various interests to TCC in April of 2003.

6. Pursuant to the assignment from BMJ, TCC is alleging patent infringement by the defendants.

2

7. Three of the defendants – DuoTech Holdings, Inc., an Illinois corporation, DuoTech
   Packaging LLC, and Bruce Carlson (individually "Holdings", "Packaging" and
   "Carlson"; and collectively the "DuoTech Defendants") – have moved for summary
   judgment.

8. Jimmie L. Johnson ("Johnson") was the principal of Compak and CPC.

9. On April 7, 1992, Johnson filed a patent application which resulted in United States
   Patent No. 5,246,106 (the '106 patent) being issued to Johnson on September 21,
   1993.

10. On July 9, 1992, Johnson assigned all of his interest in the invention underlying the
    application which led to the '106 patent, and any subsequent related inventions, to
    Compak. (Bill of Sale, exhibit 4 to the plaintiff's Appendix attached to its Statement
    of Additional Facts)

11. Between 1993 and 1998 three other patents – the '351, the '388 patent, and the '312
    patent – were issued to Johnson.

12. Prior to the debtors' bankruptcies, Compak, Holdings, Johnson, and Patpak
    Corporation (another Johnson creation) had entered into a series of agreements which
    purported to grant Holdings a license to use all four of the patents. (The "DuoTech
    License" )

13. The latest agreement was dated August 29, 2001, and purported to modify a similar
    license agreement draft circulated among the parties in July 2001.

14. Both the August and July versions of the DuoTech License Agreement recited that (1)
    Compak owned the '106 patent, (2) Patpak owned the other three patents, and (3)
    Patpak had licensed the exclusive use of the other three patents to Compak.

3

15. Both the August and July versions of the DuoTech License Agreement provide in substance that "COMPAK hereby grants to DUO-TECH an irrevocable license" to use the four patents.

16. The schedule of executory contracts and unexpired leases filed by Compak listed Holdings as a party to an executory contract and disclosed the existence of the DuoTech License.

17. On February 28, 2003, Compak filed and served notice of its "Motion to Sell Business Real and Personal Property and to Shorten Notice Period." ("Sale Motion")

18. The notice of the Sale Motion consisted of a copy of the motion and a copy of the proposed asset purchase agreement between Compak and a stalking-horse bidder. ("The Notice")

19. The Notice was not served on any of the DuoTech Defendants.

20. The Notice did not expressly state that the debtors' assets would be sold free and clear of licenses generally or of the DuoTech License specifically. Instead, a portion of the asset purchase agreement included in the Notice indicated that all executory contracts of the debtor would be "assigned to and assumed by the purchaser."

21. The DuoTech Defendants were not present nor represented at the hearing on the Sale Motion.

<u>Conclusions of Law</u>

This court submits that the following conclusions of law are applicable to the facts of this case. Additional statements of fact contained in the conclusions of law will stand as further findings of fact to which there are no genuine disputes.

## Count 11

1. The ideas and inventions which are the subjects of the '351, '388, and '312 patents are related to the ideas and inventions which are the subject of the '106 patent.

2. By virtue of Johnson's assignment of his rights, title, and interest in the pending '106 patent and any related inventions to Compak, Johnson was divested of any transferable interest in the '351, '388, and '312 patents.

3. All rights, title, and interest in the '351, '388, and '312 patent vested in Compak by operation of law when the patents were issued.

4. The purported Patpak license was invalid because Johnson had given up his rights, title, and interest in the patents.

5. The series of agreements among Compak, Johnson, and Holdings in June, July, and August of 2001 resulted in Holdings having a license to use all four patents.

6. If the August 29, 2001, agreement was not effective due to lack of consideration or mutuality, the prior license agreement would still be valid.

7. As of the debtors' petition dates, Holdings held a valid license to use all four patents.

8. That Compak owned all four patents, rather than being a licensee from Patpak for three of them, is not legally significant in light of Compak's clear grant of a license to Holdings regarding all four patents.

9. Holdings was entitled to receive notice of the Sale Motion under Federal Rule of Bankruptcy Procedure 2002.

10. Notice of the Sale Motion was not served on Holdings or anyone else authorized by law to receive notice on behalf of Holdings.

11. The legal authorities *In re La Rowe*, 91 F.Supp. 52 (D. Minn. 1950), *Boyd v. Illinois State Police*, 2001 WL 726988 (N.D. Ill. June 28, 2001), and *Lawrence Tractor Co. v. Gregory (In re Gregory)*, 705 F.2d 1118 (9th Cir. 1983), cited by the plaintiffs in support of the proposition that Holdings was properly served with notice of the Sale Motion, afford no support for that proposition.

12. *La Rowe* is clearly distinguishable because there the party objecting to the sale admitted that it had prior knowledge of the sale.

13. *Boyd* simply has no relevance to this case.

14. *Gregory* was an adversary proceeding stemming from a chapter 13 case in which the plaintiff received notice of the meeting of creditors but failed to object to confirmation of the chapter 13 plan. Thus, it is clearly distinguishable from this case.

15. Because Holdings did not receive notice of the Sale Motion, terminating the DuoTech License pursuant to the Sale Order would violate Holdings' right to due process of law under the Fifth Amendment to the Constitution of the United States.

16. The plaintiff's general allegation that DuoTech had actual notice of the sale is not supported by any evidence and is countered by the affidavit of DuoTech's President, Bruce Carlson. (Affidavit of Bruce Carlson, exhibit V to the defendants' Appendix attached to its Supplement in Support of the Motion for Summary Judgment)

17. Even if the Defendants had actual notice or were served with the Sale Motion, that notice would not have been "of such nature as reasonably to convey the required information" that the property rights of the Defendants were in jeopardy at the sale. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); See also *Fogal v. Zell*, 221 F.3d 955 (7th Cir. 2000).

18. Accordingly, the DuoTech License was not adversely affected by the Sale Order, and anything in that order to the contrary is void. The 2003 Sale Order is otherwise valid and fully enforceable. See *In re Metzger*, 346 B.R. 806, 819 (Bkrtcy.N.D.Cal. 2006).

19. It follows that BMJ Partners acquired Compak's interest in the DuoTech License through its purchase of the debtors' assets and that BMJ assumed the DuoTech License Agreement.

20. Section 365(d)(1) of the Bankruptcy Code does not apply to these facts because the DuoTech License was not an asset of the chapter 7 estate, having been purchased by BMJ Partners before the conversion to chapter 7.

21. Neither BMJ Partners nor its successor in interest, the plaintiff, have taken action to terminate the DuoTech License.

22. Because the DuoTech License has not been terminated, the DuoTech Defendants have had the right to use all four patents in their business and there has been no patent infringement.

23. The DuoTech Defendants' motion for summary judgment regarding count II should be granted.

### Count I

1. "Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises." Restatement (First) of Restitution § 160 (1937).

2. All rights, title, and interest in the '351, '388, and '312 patent vested in Compak by operation of law when the patents were issued.

3. The imposition of a constructive trust to transfer legal title to the plaintiff is needless because Compak, had, and continues to have, legal title to the patents.

4. The plaintiffs request for an imposition of a constructive trust over all revenues derived from or traceable to the Patents subsequent to March 19, 2003 should be denied because the plaintiff has failed to prove its claim for a constructive trust.

5. "A constructive trust will not be imposed unless the complaint makes specific allegations of wrongdoing, such as fraud, breach of fiduciary duty, duress, coercion or mistake." *Amendola v. Bayer*, 907 F.2d 760, 763 (7th Cir. 1990).

6. Here, the plaintiffs have made no specific allegation or showing that the revenues were improperly transferred or paid.

7. Even if the plaintiff proved its claim for a constructive trust, the issue of whether this court should impose a constructive trust over all revenues derived from or traceable to the Patents subsequent to March 19, 2003, is mooted by the interpleader action filed by DuoTech (03 A 03898) and subsequent related settlements.

8. In connection with the interpleader action, DuoTech had deposited quarterly deposits with the Clerk of the Court of what it contends are royalties due and owing in connection with its use of the 106, 351, 312 and/or 388 Patents (the "Interpleader Royalty Fund").

9. This court entered an order approving compromise and settlement of claims in the interpleader action on November 29, 2007 ("Order Approving Settlement").

10. The Order Approving Settlement authorized the Trustees "to assign and sell to DuoTech any and all the rights, titles and interests that either of the Trustees has or *may have or claim to have*." (emphasis added) See paragraph 3 of the Order Approving Settlement.

11. Final adjudication of count I in accordance with the proposed conclusions set forth above resolves many of the questions as to the rights, titles, and interest that the parties may have or claim to have.

12. An imposition of a constructive trust is not necessary because the proper remedy lies in the interpleader action.

13. The DuoTech Defendants' motion for summary judgment regarding count I should be granted.


Dated: June 25, 2008                          Respectfully Submitted,


                                              Bruce W. Black
                                              Bankruptcy Judge


9

**U.S. Bankruptcy Court**
**Northern District of Illinois (Chicago)**
**Adversary Proceeding #: 04-04028**
**Internal Use Only**

*Assigned to:* Honorable Judge Bruce W. Black
*Related BK Case:* 02-22594
*Related BK Title:* Compak Corporation
*Related BK Chapter:* 7
*Demand:* $2000000
*Nature[s] of Suit:* 498 Other Action

*Date Filed:* 11/05/04

**08CV4665**
**JUDGE CONLON**
**MAG. JUDGE NOLAN**

**Plaintiff**

**The Compak Companies Inc**

represented by **Allen J Guon**
Shaw Gussis Fishman Glantz Wolfson & Tow
321 N. Clark St., Suite 800
Chicago, Il 60610
312 541-0151
Fax : (312) 980-3888
Email: aguon@shawgussis.com

**Ann W Lopez**
Lopez & Harding
100 N Lasalle Suite 1107
Chicago, IL 60602
312-782-3039
*LEAD ATTORNEY*

**George J. Spathis**
Shaw Gussis Fishman Glantz Wolfson & Tow
321 N. Clark Street
Suite 800
Chicago, IL 60610
312 541-0151
Fax : 312 980-3888
Email: gspathis@shawgussis.com

**Jeffrey Cole**
Cole & Staes Ltd
321 S Plymouth Court Ste 1150
Chicago, IL
312-697-0200
*TERMINATED: 04/27/2005*
*LEAD ATTORNEY*

**Joshua J Whiteside**
Staes & Scallan PC
111 W Washington St Suite 1310



This is to certify that the within and attached document is a full, true and correct copy of the original thereof as the same appears on file in the office of the Clerk of the United States Bankruptcy Court for the Northern District of Illinois

_____
CLERK OF COURT

By _____
Deputy Clerk

Dated 15 AUG 2008

Chicago, IL 60602
312 201-8969
Fax : 312 201-9233
Email: joshwhiteside@covad.net
*TERMINATED: 02/28/2007*

**Philip Mann**
Mann Law Group
1420 Fifth Avenue
Suite #2200
Seattle, WA 98101
*TERMINATED: 02/28/2007*
*LEAD ATTORNEY*

V.

**Defendant**
----------------------

**Jimmie L Johnson et al**
**Bruce Carlson**                              represented by **Christopher Combest**
Quarles & Brady LLP
Citicorp Center
500 W Madison St Ste 3700
Chicago, IL 60661
312-715-5091
Fax : 312- 632-1727
Email: ccombest@quarles.com
*TERMINATED: 01/17/2008*

**Steven E Anderson**
Barnes & Thornburg LLP
1 N Wacker Drive
Suite 4400
Chicago, IL 60606
312 214-4865
Fax : 312-759-5646
Email: sanderson@btlaw.com

**Duotech Holdings Inc**                       represented by **Christopher Combest**
(See above for address)
*TERMINATED: 01/17/2008*

**Steven E Anderson**
(See above for address)

**Duotech Packaging LLC**                      represented by **Christopher Combest**
(See above for address)
*TERMINATED: 01/17/2008*

**Steven E Anderson**
(See above for address)

**Joseph Baldi,** *Chapter 7 Trustee of the*    represented by **Donna B Wallace**
*Estate of Jimmie L. Johnson*                   Joseph A Baldi & Associates, PC
19 S Lasalle Street Suite 1500

Chicago, IL 60603
312-726-8150
Fax : 312-332-4629
Email: dbwallace@ameritech.net

**Joseph A Baldi**
Joseph Baldi & Associates
19 S Lasalle Street Suite 1500
Chicago, IL 60603
312-726-8150
Fax : 312 332-4629
Email: jabaldi@ameritech.net

**Joseph A Baldi, Tr**
Joseph Baldi & Associates
19 S Lasalle Street Suite 1500
Chicago, IL 60603
312-726-8150
Fax : 312 332-4629
Email: jabaldi@ameritech.net

**Olmarc Packaging Co**                    represented by **Steven J Rosenberg**
53 W Jackson Suite 224
Chicago, IL 60604
312-280-7717
*LEAD ATTORNEY*

**Ron Bowen**                    represented by **Ariel Weissberg**
Weissberg & Associates, Ltd
401 S. LaSalle Street
Suite 403
Chicago, IL 60605
(312) 663-0004
Fax : 312 663-1514
Email: ariel@weissberglaw.com

**Trustee**
------------------------
**David P Leibowitz**                    represented by **Charles S Riecke**
Seyfarth Shaw
131 S. Dearborn Street
Suite 4200
Chicago, IL 60603
312 460-5987
Fax : 312 460-7987
Email: criecke@seyfarth.com

**David P Leibowitz, ESQ**
Leibowitz Law Center
420 Clayton Street
Waukegan, IL 60085-4232
847-249-9100
Fax : 847-249-9180
Email: dleibowitz@lakelaw.com

**Counter-Claimant**
-----------------------

Bruce Carlson                                    represented by **Steven E Anderson**
                                                                (See above for address)

Duotech Holdings Inc                             represented by **Steven E Anderson**
                                                                (See above for address)

Duotech Packaging LLC                            represented by **Steven E Anderson**
                                                                (See above for address)


V.


**Counter-Defendant**
-----------------------

The Compak Companies Inc                         represented by **The Compak Companies Inc**
                                                                PRO SE

                                                                **Stephen Scallan**
                                                                Staes & Scallan PC
                                                                111 W Washington St
                                                                Suite # 1310
                                                                Chicago, IL 60602
                                                                312-201-8969
                                                                *TERMINATED: 02/28/2007*
                                                                *LEAD ATTORNEY*


**Counter-Claimant**
-----------------------

Joseph Baldi, *Chapter 7 Trustee of the*         represented by **Donna B Wallace**
*Estate of Jimmie L. Johnson*                                   (See above for address)


V.


**Counter-Defendant**
-----------------------

The Compak Companies Inc


| Filing Date | # | Docket Text |
|---|---|---|
| 11/05/2004 | ●1 | 456 (Declaratory Judgment): Received Certified Copy of Transfer Order from The U S District Court Norhern District of Illinois Case Number, 03C7427 . (Cabrales, Claudia) Additional attachment(s) added on 11/19/2004 (Agnello, Joseph). (Entered: 11/05/2004) |
| 11/05/2004 | ●2 | Adversary Proceeding Cover Sheet Filed by Ann W Lopez on behalf of The Compak Companies Inc . (Cabrales, Claudia) Additional attachment(s) added on 11/19/2004 (Agnello, Joseph). (Entered: |

| | | 11/05/2004) |
|---|---|---|
| 11/17/2004 | ●3 | Appearance Filed by Faye B Feinstein on behalf of Bruce Carlson , Duotech Holdings Inc , Duotech Packaging LLC . (Seamann, Pamela) (Entered: 11/18/2004) |
| 11/17/2004 | ●4 | Appearance Filed by Christopher Combest on behalf of Bruce Carlson , Duotech Holdings Inc , Duotech Packaging LLC . (Seamann, Pamela) (Entered: 11/18/2004) |
| 12/15/2004 | ●5 | Notice of Motion and Motion to Extend Time To Answer Or Plead Filed by Faye B Feinstein on behalf of Bruce Carlson , Duotech Holdings Inc , Duotech Packaging LLC . (Attachments: # 1 Proposed Order) (Ramey, Dorothy) (Entered: 12/17/2004) |
| 12/20/2004 | ●6 | Notice of Motion and Motion to Extend Time answer or otherwise plead Filed by Donna B Wallace on behalf of Joseph Baldi. Hearing scheduled for 12/22/2004 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Attachments: # 1 Proposed Order) (Wallace, Donna) (Entered: 12/20/2004) |
| 12/20/2004 | ●7 | Amended Notice of Motion Filed by Donna B Wallace on behalf of Joseph Baldi (RE: 6 Motion to Extend Time, ). Hearing scheduled for 12/22/2004 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illinois 60604. (Wallace, Donna) (Entered: 12/20/2004) |
| 12/22/2004 | ●8 | Order Granting Motion to Extend Time through and including 1/4/2005(Related Doc # 5). Signed on 12/22/2004. (Green, Ron) (Entered: 12/23/2004) |
| 12/22/2004 | ●10 | Order Granting Motion to Extend Time (Related Doc # 6). Signed on 12/22/2004. (Ramey, Dorothy) (Entered: 12/28/2004) |
| 12/27/2004 | ●9 | Notice of Motion and Motion to Extend Time to Answer or Otherwise Plead Filed by Christopher Combest on behalf of Bruce Carlson , Duotech Holdings Inc , Duotech Packaging LLC . Hearing scheduled for 12/29/2004 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Attachments: # 1 Proposed Order) (Chavez, Baldo) (Entered: 12/28/2004) |
| 12/28/2004 | ●11 | Certificate of Mailing/Service Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 9 Motion to Extend Time, ). (Combest, Christopher) (Entered: 12/28/2004) |
| 12/29/2004 | ●12 | Order Granting Motion to Extend Time through and including February 9, 2005 (Related Doc # 9). Signed on 12/29/2004. |

| | | (Hamilton, Annette) (Entered: 12/30/2004) |
|---|---|---|
| 12/29/2004 | ●13 | Order Scheduling re: oral motion to extend time within which the trustee for estate of Jimmie L Johnson to file its answer or otherwise plead to complaint . Responses due by 2/9/2005. Signed on 12/29/2004 (Camacho, Marilyn) (Entered: 12/30/2004) |
| 01/03/2005 | ●15 | Certificate of Service Filed by Christopher Combest on behalf of Bruce Carlson , Duotech Holdings Inc , Duotech Packaging LLC (RE: 12 Order on Motion to Extend Time). (Chavez, Baldo) (Entered: 01/05/2005) |
| 01/05/2005 | ●14 | Hearing Continued (RE: 1 Received Transfer Order). Status hearing to be held on 2/16/2005 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Thoma, Susan) (Entered: 01/05/2005) |
| 02/07/2005 | ●16 | Notice of Motion and Motion to Extend Time to Answer or Plead Filed by Christopher Combest on behalf of Bruce Carlson , Duotech Holdings Inc , Duotech Packaging LLC . Hearing scheduled for 2/9/2005 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Attachments: # 1 Proposed Order) (Green, Ron) (Entered: 02/09/2005) |
| 02/15/2005 | ●17 | Notice of Motion and Motion to Dismiss Adversary Proceeding Filed by Christopher Combest on behalf of Bruce Carlson , Duotech Holdings Inc , Duotech Packaging LLC . Hearing scheduled for 2/16/2005 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Attachments: # 1 Appendix # 2 Appendix # 3 Proposed Order) (Beckerman, Steve) (Entered: 02/16/2005) |
| 02/16/2005 | ●18 | Order Scheduling (RE: 17 Motion to Dismiss Adversary Proceeding, ). Reply due by: 4/27/2005 Responses due by 3/28/2005. Status hearing to be held on 5/11/2005 at 10:30 AM . Signed on 2/16/2005 (Camacho, Marilyn) (Entered: 02/17/2005) |
| 02/26/2005 | ●19 | Hearing Continued Status hearing to be held on 5/11/2005 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Thoma, Susan) (Entered: 02/26/2005) |
| 03/09/2005 | ●20 | Notice of Motion and Motion to/for Motion to Dismiss. Filed by Donna B Wallace on behalf of Joseph Baldi. Hearing scheduled for 5/11/2005 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Attachments: # 1 Proposed Order) (Wallace, Donna) (Entered: 03/09/2005) |
| 03/24/2005 | ●21 | Notice of Motion and Motion to Extend Time To File Response To |

| | | |
|---|---|---|
| | | Motion to Dimiss filed by Defendants Duo Tech Holdings Inc, Duo Tech Packaging LLC, and Bruce Carlson Filed by Stephen Scallan on behalf of The Compak Companies Inc . Hearing scheduled for 3/30/2005 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Attachments: # 1 Proposed Order) (Epps, Wanda) (Entered: 03/25/2005) |
| 03/28/2005 | 22 | Notice of Limited Joinder Filed by Charles Riecke on behalf of David P Leibowitz (RE: 17 Motion to Dismiss Adversary Proceeding, ). (Camacho, Marilyn) (Entered: 03/30/2005) |
| 03/30/2005 | 23 | Order Scheduling (RE: 21 Motion to Extend Time, ). Reply due by: 5/16/2005 Responses due by 4/15/2005. Signed on 3/30/2005 (Hamilton, Annette) (Entered: 03/31/2005) |
| 04/13/2005 | 24 | Notice of Motion and Motion to Withdraw as Co-Counsel Filed by Jeffrey Cole . Hearing scheduled for 4/20/2005 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Chavez, Baldo) (Entered: 04/14/2005) |
| 04/13/2005 | 25 | Notice of Motion and Motion to Extend Time File Response to Motion to Dismiss Filed by Jeffrey Cole on behalf of The Compak Companies Inc . Hearing scheduled for 4/20/2005 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Attachments: # 1 Proposed Order) (Epps, Wanda) (Entered: 04/14/2005) |
| 04/15/2005 | 26 | Notice of Withdrawal Filed by Jeffrey Cole on behalf of The Compak Companies Inc (RE: 24 Motion to Withdraw as Attorney). (Hamilton, Annette) (Entered: 04/18/2005) |
| 04/20/2005 | 27 | Hearing Continued (RE: 24 Motion to Withdraw as Attorney). Hearing scheduled for 4/27/2005 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illinois 60604. (Davis, Shurray) (Entered: 04/20/2005) |
| 04/20/2005 | 28 | Order Granting Motion to Extend Time (Related Doc # 25). Signed on 4/20/2005. (Epps, Wanda) (Entered: 04/21/2005) |
| 04/26/2005 | 29 | Notice of Motion and Motion to Withdraw as Attorney Filed by Jeffrey Cole on behalf of The Compak Companies Inc . Hearing scheduled for 5/4/2005 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Attachments: # 1 Proposed Order) (Green, Ron) (Entered: 04/27/2005) |
| 04/27/2005 | 30 | Order Granting Motion To Withdraw As Attorney (Related Doc # 24). Signed on 4/27/2005. (Hamilton, Annette) (Entered: 05/05/2005) |

| 05/04/2005 | ●31 | Order Granting Motion To Withdraw As Attorney (Related Doc # 29). Signed on 5/4/2005. (Hamilton, Annette) (Entered: 05/11/2005) |
| 05/06/2005 | ●32 | Response to (related document(s): 17 Motion to Dismiss Adversary Proceeding, ) Filed by Stephen Scallan on behalf of The Compak Companies Inc (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit) (Epps, Wanda) (Entered: 05/11/2005) |
| 05/11/2005 | ●34 | Order Granting Motion to Join (Related Doc # 20). Signed on 5/11/2005. (Chavez, Baldo) (Entered: 05/13/2005) |
| 05/12/2005 | ●33 | Hearing Continued Status hearing to be held on 6/8/2005 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Thoma, Susan) (Entered: 05/12/2005) |
| 05/31/2005 | ●35 | Notice of Motion and Motion to Extend Time to File Reply (ROUTINE MOTION) Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC. Hearing scheduled for 6/2/2005 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illinois 60604. (Attachments: # 1 Proposed Order) (Combest, Christopher) (Entered: 05/31/2005) |
| 06/02/2005 | ●36 | Order Granting Motion to Extend Time through and including 6/20/2005 (Related Doc # 35). Signed on 6/2/2005. (Hamilton, Annette) (Entered: 06/03/2005) |
| 06/08/2005 | ●37 | Hearing Continued (RE: 1 Received Transfer Order). Status hearing to be held on 7/20/2005 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illinois 60604. (Castellano, Nancy) (Entered: 06/08/2005) |
| 06/14/2005 | ●38 | Notice of Motion and Motion to Extend Time to File Reply (ROUTINE MOTION) Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC. Hearing scheduled for 6/16/2005 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illinois 60604. (Attachments: # 1 Proposed Order) (Combest, Christopher) (Entered: 06/14/2005) |
| 06/16/2005 | ●39 | Order Granting Motion to Extend Time (Related Doc # 38). Signed on 6/16/2005. (Cabrales, Claudia) (Entered: 06/17/2005) |
| 06/29/2005 | ●40 | Reply to (related document(s): 32 Response, ) Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (Combest, Christopher) (Entered: 06/29/2005) |
| 06/29/2005 | ●41 | Notice of Filing Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 40 |

| | | |
|---|---|---|
| | | Reply). (Combest, Christopher) (Entered: 06/29/2005) |
| 07/27/2005 | ●42 | Hearing Continued (RE: 1 Status hearing to be held on 9/7/2005 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Thoma, Susan) (Entered: 07/27/2005) |
| 07/28/2005 | ●43 | Order Scheduling (RE: 17 Motion to Dismiss Adversary Proceeding, )Motion Denied. Answer due by: 8/31/2005. Status hearing to be held on 9/7/2005 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. Signed on 7/28/2005 (Cabrales, Claudia) (Entered: 08/04/2005) |
| 08/31/2005 | ●44 | Answer to Complaint, Counterclaim by Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC against The Compak Companies Inc Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC. (Attachments: # (1) Exhibit A# 2 Exhibit B# 3 Exhibit C)(Combest, Christopher) (Entered: 08/31/2005) |
| 08/31/2005 | ●46 | Answer to (related document(s): 1 Received Transfer Order) Filed by Steven J Rosenberg on behalf of Olmarc Packaging Co (Cabrales, Claudia) (Entered: 09/01/2005) |
| 08/31/2005 | ●47 | Statement Rule 7007.1(a) Filed by Steven J Rosenberg on behalf of Olmarc Packaging Co . (Cabrales, Claudia) (Entered: 09/01/2005) |
| 08/31/2005 | ●48 | Notice of Filing Filed by Steven J Rosenberg on behalf of Olmarc Packaging Co (RE: 46 Answer, 47 Statement). (Cabrales, Claudia) (Entered: 09/01/2005) |
| 09/01/2005 | ●45 | Notice of Filing Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 44 Answer to Complaint,, Counterclaim, ). (Combest, Christopher) (Entered: 09/01/2005) |
| 09/01/2005 | ●49 | Amended Notice of Filing Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 44 Answer to Complaint,, Counterclaim, ). (Combest, Christopher) (Entered: 09/01/2005) |
| 09/01/2005 | ●50 | Statement Under Local Rule 7007-1 (Corporate Disclosure Statement) Filed by Christopher Combest on behalf of Duotech Holdings Inc. (Combest, Christopher) (Entered: 09/01/2005) |
| 09/01/2005 | ●51 | Notice of Filing Filed by Christopher Combest on behalf of Duotech Holdings Inc (RE: 50 Statement). (Combest, Christopher) (Entered: 09/01/2005) |

| 09/01/2005 | ◐52 | Answer to Complaint, Counterclaim by Joseph Baldi against The Compak Companies Inc Filed by Donna B Wallace on behalf of Joseph Baldi. (Attachments: # 1 Exhibit A# 2 Exhibit A cont.# 3 Exhibit B# 4 Exhibit C)(Wallace, Donna) (Entered: 09/01/2005) |
| --- | --- | --- |
| 09/07/2005 | ◐53 | Hearing Continued Status hearing to be held on 11/9/2005 at 10:00 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Castaneda, Peter) (Entered: 09/07/2005) |
| 09/22/2005 | ◐54 | Answer to (related document(s): 44 Answer to Complaint, , Counterclaim, ) Filed by Stephen Scallan on behalf of The Compak Companies Inc (Chavez, Baldo) (Entered: 09/26/2005) |
| 09/22/2005 | ◐55 | Order Scheduling . Status hearing to be held on 11/9/2005 at 10:00 AM . Signed on 9/22/2005 (Hamilton, Annette) (Entered: 09/29/2005) |
| 10/27/2005 | ◐56 | Answer to Counterclaim Filed by Stephen Scallan on behalf of The Compak Companies Inc . (Beckerman, Steve) (Entered: 10/31/2005) |
| 11/09/2005 | ◐57 | Hearing Continued Status hearing to be held on 1/18/2006 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Thoma, Susan) (Entered: 11/09/2005) |
| 11/09/2005 | ◐58 | Notice of Motion and Motion to Dismiss Counter Claim Filed by Stephen Scallan on behalf of The Compak Companies Inc . Hearing scheduled for 11/23/2005 at 10:00 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Cabrales, Claudia) (Entered: 11/10/2005) |
| 11/09/2005 | ◐59 | Notice of Motion and Motion for Default Judgment against Ron Bowen and in favor of The Compak Companies LLC Filed by Stephen Scallan on behalf of The Compak Companies Inc . Hearing scheduled for 11/23/2005 at 10:00 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Cabrales, Claudia) (Entered: 11/10/2005) |
| 11/22/2005 | ◐60 | Objection to (related document(s): 59 Motion for Default Judgment, ) Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (Combest, Christopher) (Entered: 11/22/2005) |
| 11/22/2005 | ◐61 | Notice of Filing Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 60 Objection). (Combest, Christopher) (Entered: 11/22/2005) |
| 11/22/2005 | ◐62 | Certificate of Service Filed by Christopher Combest on behalf of |

| | | |
|---|---|---|
| | | Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 60 Objection, 61 Notice of Filing). (Combest, Christopher) (Entered: 11/22/2005) |
| 11/23/2005 | ◐63 | Hearing Continued (RE: 58 ,). Hearing Scheduled for 01/18/2006 at 10:30 AM at Courtroom 615 219 South Dearborn, Chicago, IL, 60604. (Nelson,Freddie) (Entered: 11/23/2005) |
| 11/23/2005 | ◐64 | Hearing Continued (RE: 59 Default Judgment,). Hearing Scheduled for 01/18/2006 at 10:30 AM at Courtroom 615 219 South Dearborn, Chicago, IL, 60604. (Nelson,Freddie) (Entered: 11/23/2005) |
| 11/23/2005 | ◐65 | Order Withdrawing (RE: 60 Objection). Signed on 11/23/2005 (Cabrales, Claudia) (Entered: 11/30/2005) |
| 12/01/2005 | | Motions terminated (RE: 21 Motion to Extend Time,, 16 Motion to Extend Time,, 17 Motion to Dismiss Adversary Proceeding, ). (Cabrales, Claudia) (Entered: 12/01/2005) |
| 12/20/2005 | ◐66 | Response to (related document(s): 58 Motion to Dismiss Counter Claim, ) Filed by Donna B Wallace on behalf of Joseph Baldi (Wallace, Donna) (Entered: 12/20/2005) |
| 01/04/2006 | ◐67 | Appearance Filed by Philip Mann on behalf of The Compak Companies Inc . (Cabrales, Claudia) (Entered: 01/05/2006) |
| 01/18/2006 | ◐79 | Order Withdrawing Motion to Dismiss Counter Claim (Related Doc # 58). Signed on 1/18/2006. (Cabrales, Claudia) (Entered: 02/09/2006) |
| 01/20/2006 | ◐68 | Hearing Continued Status hearing to be held on 4/26/2006 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Castellano, Nancy) (Entered: 01/20/2006) |
| 01/20/2006 | ◐69 | Hearing Continued (RE: 59 Default Judgment,). Hearing Scheduled for 04/26/2006 at 10:30 AM at Courtroom 615 219 South Dearborn, Chicago, IL, 60604. (Castellano,Nancy) (Entered: 01/20/2006) |
| 01/20/2006 | ◐70 | Answer to Complaint Filed by Ariel Weissberg on behalf of Ron Bowen. (Weissberg, Ariel) (Entered: 01/20/2006) |
| 01/20/2006 | ◐71 | Notice of Filing Filed by Ariel Weissberg on behalf of Ron Bowen (RE: 70 Answer to Complaint). (Weissberg, Ariel) (Entered: 01/20/2006) |
| 02/01/2006 | ◐72 | **INCORRECT EVENT ENTERED** Order Granting Motion For Default Judgment (Related Doc # 59). Signed on 2/1/2006. (Cabrales, Claudia) Modified on 2/3/2006 (Camacho, Marilyn). (Entered: |

| | | 02/03/2006) |
|---|---|---|
| 02/01/2006 | ⬤74 | Order of Default Against Ron Bowen (RE: 59 Motion for Default Judgment, ). Signed on 2/1/2006 (Cabrales, Claudia) (Entered: 02/03/2006) |
| 02/03/2006 | ⬤73 | CORRECTIVE ENTRY INCORRECT EVENT ENTERED (RE: 72 Order on Motion for Default Judgment). (Camacho, Marilyn) (Entered: 02/03/2006) |
| 02/06/2006 | ⬤75 | Objection to Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (Attachments: # 1 Exhibit A - Complaint) (Combest, Christopher) (Entered: 02/06/2006) |
| 02/06/2006 | ⬤76 | Notice of Filing Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 75 Objection). (Combest, Christopher) (Entered: 02/06/2006) |
| 02/06/2006 | ⬤77 | Certificate of Service Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 75 Objection, 76 Notice of Filing). (Combest, Christopher) (Entered: 02/06/2006) |
| 02/07/2006 | ⬤78 | Notice of Motion and Uncontested Motion to Intervene Filed by Charles S Riecke on behalf of David P Leibowitz. Hearing scheduled for 2/16/2006 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illinois 60604. (Attachments: # 1 Proposed Order and Minute Order) (Riecke, Charles) (Entered: 02/07/2006) |
| 02/10/2006 | ⬤80 | Notice of Motion and Motion to Vacate Filed by Ariel Weissberg on behalf of Ron Bowen. Hearing scheduled for 2/22/2006 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illinois 60604. (Weissberg, Ariel) (Entered: 02/10/2006) |
| 02/16/2006 | ⬤81 | Order Granting Motion To Intervene (Related Doc # 78). Signed on 2/16/2006. (Cabrales, Claudia) (Entered: 02/16/2006) |
| 02/21/2006 | ⬤82 | Notice of Motion and Motion For Summary Judgment in favor of The Compak Companies and against Duo Tech Holdings Inc Filed by Stephen Scallan on behalf of The Compak Companies Inc . Hearing scheduled for 3/1/2006 at 09:30 AM . (Cabrales, Claudia) (Entered: 02/22/2006) |
| 02/21/2006 | ⬤83 | Statement Filed by Stephen Scallan on behalf of The Compak Companies Inc (RE: 82 Motion for Summary Judgment, ). (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 |

| | | |
|---|---|---|
| | | Exhibit # 6 Exhibit # 7 Exhibit) (Cabrales, Claudia) (Entered: 02/22/2006) |
| 02/21/2006 | 84 | Notice Deposition Filed by Stephen Scallan (RE: 82 Motion for Summary Judgment, ). (Cabrales, Claudia) (Entered: 02/22/2006) |
| 02/23/2006 | 85 | Amended Notice of Motion Filed by Ariel Weissberg on behalf of Ron Bowen (RE: 80 Motion to Vacate). Hearing scheduled for 3/8/2006 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Weissberg, Ariel) (Entered: 02/23/2006) |
| 03/01/2006 | 86 | Hearing Continued (RE: 82 Summary Judgment,). Hearing Scheduled for 03/22/2006 at 10:30 AM at Courtroom 615 219 South Dearborn, Chicago, IL, 60604. (Thoma,Susan) (Entered: 03/01/2006) |
| 03/09/2006 | 87 | Hearing Continued (RE: 80 Vacate,). Hearing Scheduled for 03/15/2006 at 10:30 AM at Courtroom 615 219 South Dearborn, Chicago, IL, 60604. (Thoma,Susan) (Entered: 03/09/2006) |
| 03/16/2006 | 96 | Order Granting Motion To Vacate (Related Doc # 80). Signed on 3/16/2006. (Cabrales, Claudia) (Entered: 03/22/2006) |
| 03/17/2006 | 88 | Objection to (related document(s): 82 Motion for Summary Judgment,, 83 Statement, ) Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (Combest, Christopher) Modified on 3/27/2006 to correct related to entry 82 only (Hamilton, Annette). (Entered: 03/17/2006) |
| 03/17/2006 | 89 | Notice of Filing Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 88 Objection). (Combest, Christopher) (Entered: 03/17/2006) |
| 03/17/2006 | 90 | **INCORRECT EVENT ENTERED, FILER NOTIFIED TO REFILE** in Opposition Statement Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 82 Motion for Summary Judgment,, 83 Statement, ). (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E) (Combest, Christopher) Modified on 3/22/2006 (Camacho, Marilyn). (Entered: 03/17/2006) |
| 03/17/2006 | 91 | Notice of Filing Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 90 Statement, ). (Combest, Christopher) (Entered: 03/17/2006) |
| 03/17/2006 | 92 | Certificate of Service Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 88 Objection, 89 Notice of Filing, 90 Statement,, 91 Notice of Filing). |

| | | (Combest, Christopher) (Entered: 03/17/2006) |
|---|---|---|
| 03/20/2006 | ●<u>93</u> | Notice of Motion and Motion to Compel Bruce Carlson and Duotech Holdings to Respond to Plaintiffs Discovery Requests Filed by Stephen Scallan on behalf of The Compak Companies Inc . Hearing scheduled for 3/22/2006 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illinois 60604. (Cabrales, Claudia) (Entered: 03/20/2006) |
| 03/20/2006 | ●<u>95</u> | Reply to (related document(s): <u>94</u> Response, ) Filed by Stephen Scallan on behalf of The Compak Companies Inc (Cabrales, Claudia) Modified on 3/28/2006 to correct related document #<u>88</u> (Hamilton, Annette). (Entered: 03/22/2006) |
| 03/21/2006 | ●<u>94</u> | Response in Opposition to (related document(s): <u>82</u> Motion for Summary Judgment,, <u>83</u> Statement, ) Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (Attachments: # <u>1</u> Exhibit A# <u>2</u> Exhibit B# (3) Exhibit C# <u>4</u> Exhibit D# <u>5</u> Exhibit E) (Combest, Christopher) Modified on 3/27/2006 to correct to relate to entry <u>83</u> only (Hamilton, Annette). (Entered: 03/21/2006) |
| 03/22/2006 | ●<u>97</u> | Hearing Continued (RE: <u>93</u> Compel,). Hearing Scheduled for 03/29/2006 at 10:30 AM at Courtroom 615 219 South Dearborn, Chicago, IL, 60604. (Woods,Sharon) (Entered: 03/22/2006) |
| 03/22/2006 | ●98 | CORRECTIVE ENTRY INCORRECT EVENT ENTERED, FILER NOTIFIED TO REFILE (RE: <u>90</u> Statement, ). (Camacho, Marilyn) (Entered: 03/22/2006) |
| 03/27/2006 | ●99 | CORRECTIVE ENTRY to correct related to entry <u>82</u> only (RE: <u>88</u> Objection, ). (Hamilton, Annette) (Entered: 03/27/2006) |
| 03/27/2006 | ❶100 | CORRECTIVE ENTRY to correct to relate to entry <u>83</u> only (RE: <u>94</u> Response, ). (Hamilton, Annette) (Entered: 03/27/2006) |
| 03/28/2006 | ❶101 | CORRECTIVE ENTRY to correct related document #<u>88</u> (RE: <u>95</u> Reply). (Hamilton, Annette) (Entered: 03/28/2006) |
| 03/29/2006 | ❶<u>102</u> | Agreed Order Granting Motion To Compel (Related Doc # <u>93</u>). Signed on 3/29/2006. (Cabrales, Claudia) (Entered: 03/29/2006) |
| 03/30/2006 | ❶<u>103</u> | Notice of Motion and Motion To Supplement its Summary Judgement Response Filed by Stephen Scallan on behalf of The Compak Companies Inc . Hearing scheduled for 4/5/2006 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illinois 60604. (Attachments: # <u>1</u> Supplement) (Ross, Demetrius) (Entered: |

| | | |
|---|---|---|
| | | 03/31/2006) |
| 03/31/2006 | ●104 | Amended Notice of Motion and Certificate of Service Filed by Stephen Scallan on behalf of The Compak Companies Inc (RE: 103 Generic Motion, ). Hearing scheduled for 4/5/2006 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Ross, Demetrius) (Entered: 04/03/2006) |
| 04/04/2006 | ●105 | Objection to (related document(s): 103 Generic Motion, ) Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (Combest, Christopher) (Entered: 04/04/2006) |
| 04/04/2006 | ●106 | Notice of Filing Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 105 Objection). (Combest, Christopher) (Entered: 04/04/2006) |
| 04/04/2006 | ●107 | Certificate of Service Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 105 Objection, 106 Notice of Filing). (Combest, Christopher) (Entered: 04/04/2006) |
| 04/05/2006 | ●108 | Order Denying Motion (Related Doc # 103). Signed on 4/5/2006. (Cabrales, Claudia) (Entered: 04/06/2006) |
| 04/26/2006 | ●109 | Hearing Continued (RE: 1 Received Transfer Order). Status hearing to be held on 7/26/2006 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Davis, Shurray) (Entered: 04/26/2006) |
| 04/26/2006 | ●110 | Order Denying Motion For Summary Judgment (Related Doc # 82). Signed on 4/26/2006. (Pruitt, Debra) (Entered: 04/28/2006) |
| 04/27/2006 | ●111 | Notice of Motion and Motion For Reconsideration of the Courts Denial of Partial Summary Judgement Filed by Stephen Scallan on behalf of The Compak Companies Inc . Hearing scheduled for 5/5/2006 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Cabrales, Claudia) (Entered: 04/28/2006) |
| 05/02/2006 | ●112 | Amended Notice of Motion Filed by Stephen Scallan on behalf of The Compak Companies Inc (RE: 111 Generic Motion, ). Hearing scheduled for 5/11/2006 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Cabrales, Claudia) (Entered: 05/03/2006) |
| 05/09/2006 | ●113 | Objection to (related document(s): 111 Generic Motion, ) Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings |

| | | |
|---|---|---|
| | | Inc, Duotech Packaging LLC (Combest, Christopher) (Entered: 05/09/2006) |
| 05/09/2006 | ●114 | Notice of Filing Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 113 Objection). (Combest, Christopher) (Entered: 05/09/2006) |
| 05/09/2006 | ●115 | Certificate of Service Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 113 Objection, 114 Notice of Filing). (Combest, Christopher) (Entered: 05/09/2006) |
| 05/11/2006 | ●116 | Order Denying Motion (Related Doc # 111). Signed on 5/11/2006. (Cabrales, Claudia) (Entered: 05/12/2006) |
| 06/06/2006 | ●117 | Notice of Motion and Second Motion to Compel Defendants Carlson and Duotech Holdings to Respond to Plaintiffs Discovery Requests Filed by Stephen Scallan on behalf of The Compak Companies Inc . Hearing scheduled for 6/15/2006 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Cabrales, Claudia) (Entered: 06/07/2006) |
| 06/15/2006 | ●118 | Order Denying Motion To Compel without prejudice. (Related Doc # 117). Signed on 6/15/2006. (Cabrales, Claudia) (Entered: 06/16/2006) |
| 06/19/2006 | ●119 | Notice of Motion and Renewed Second Motion to Compel Duotech Holdings INC , Duotech Packaging Inc and Bruce Carlson to Production of Documents Filed by Stephen Scallan on behalf of The Compak Companies Inc . Hearing scheduled for 6/22/2006 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Attachments: # 1 Proposed Order # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit # 7 Exhibit) (Cabrales, Claudia) (Entered: 06/20/2006) |
| 06/21/2006 | ●120 | Response to (related document(s): 119 Motion to Compel, ) Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (Attachments: # 1 Proposed Order) (Combest, Christopher) (Entered: 06/21/2006) |
| 06/21/2006 | ●121 | Notice of Filing Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 120 Response). (Combest, Christopher) (Entered: 06/21/2006) |
| 06/21/2006 | ●122 | Certificate of Service Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 120 Response, 121 Notice of Filing). (Combest, Christopher) (Entered: 06/21/2006) |

| 06/22/2006 | ●123 | Order Granting Motion To Compel Respondents to comply with the documents requests on or before 7/21/2006. Order Denying Plaintiff's request for sanctions. (Related Doc # 119). Signed on 6/22/2006. (Camacho, Marilyn) (Entered: 06/23/2006) |
|---|---|---|
| 07/27/2006 | ●124 | Hearing Continued Status hearing to be held on 10/25/2006 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Smith, Lester) (Entered: 07/27/2006) |
| 10/25/2006 | ●125 | Hearing Continued (RE: 1 Transfer Case). Status hearing to be held on 1/17/2007 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Beckerman, Steve) (Entered: 10/25/2006) |
| 01/17/2007 | ●126 | Hearing Continued (RE: 1 Transfer Case). Status hearing to be held on 4/25/2007 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Davis, Shurray) (Entered: 01/17/2007) |
| 02/05/2007 | ●127 | Notice of Motion and Motion for Administrative Order Setting Briefing Schedule on Motions for Summary Judgment Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC. Hearing scheduled for 2/8/2007 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Attachments: # 1 Proposed Order Administrative Order Setting Briefing Schedule) (Combest, Christopher) (Entered: 02/05/2007) |
| 02/06/2007 | ●128 | Certificate of Service Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 127 Motion for Administrative Order, ). (Combest, Christopher) (Entered: 02/06/2007) |
| 02/08/2007 | ●129 | Order Granting Motion for Administrative Order Regarding Briefing Schedule For Summary Judgement Motions. (Related Doc # 127). Signed on 2/8/2007. (Cabrales, Claudia) (Entered: 02/09/2007) |
| 02/13/2007 | ●130 | Notice of Motion and Motion to Withdraw as Attorney Filed by Joshua Whiteside , Andrew Staes , Stephen Scallan on behalf of The Compak Companies Inc . Hearing scheduled for 2/28/2007 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Cabrales, Claudia) Additional attachment(s) added on 2/16/2007 (Hamilton, Annette). Modified on 2/16/2007 to attach correct PDF (Hamilton, Annette). (Entered: 02/14/2007) |
| 02/13/2007 | ●131 | Notice of Hearing of Rule to Show Cause with Certificate of Service against Joshua J Whiteside for Not Filing Electronically . Hearing scheduled for 3/1/2007 at 10:00 AM at 219 South Dearborn, Courtroom 744, Chicago, Illinois 60604. (Cabrales, Claudia) (Entered: 02/14/2007) |

| 02/16/2007 | ●132 | CORRECTIVE ENTRY to attach correct PDF (RE: <u>130</u> Motion to Withdraw as Attorney, ). (Hamilton, Annette) (Entered: 02/16/2007) |
|---|---|---|
| 02/23/2007 | ●<u>133</u> | Objection to (related document(s): <u>130</u> Motion to Withdraw as Attorney, ) Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (Attachments: # <u>1</u> Exhibit A# <u>2</u> Exhibit B) (Combest, Christopher) (Entered: 02/23/2007) |
| 02/23/2007 | ●<u>134</u> | Notice of Filing Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: <u>133</u> Objection). (Combest, Christopher) (Entered: 02/23/2007) |
| 02/23/2007 | ●<u>135</u> | Certificate of Service Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: <u>133</u> Objection, <u>134</u> Notice of Filing). (Combest, Christopher) (Entered: 02/23/2007) |
| 02/27/2007 | ●<u>136</u> | Notice of Motion and Motion to Dismiss Counts N/A of Adversary Proceeding Filed by Joshua J Whiteside on behalf of The Compak Companies Inc. Hearing scheduled for 3/1/2007 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Attachments: # <u>1</u> Rule 56 Statement of Facts# <u>2</u> Exhibit List# <u>3</u> Exhibit 1# <u>4</u> Exhibit 2# <u>5</u> Exhibit 3# <u>6</u> Exhibit 4b# <u>7</u> Exhibit 4c# <u>8</u> Exhibit 4d# <u>9</u> Exhibit 5# <u>10</u> Exhibit 6# <u>11</u> Exhibit 7# <u>12</u> Exhibit 8# <u>13</u> Exhibit 9# <u>14</u> Exhibit 10# <u>15</u> Exhibit 11# <u>16</u> Exhibit 12# <u>17</u> Exhibit 13# <u>18</u> Exhibit 14# <u>19</u> Exhibit 15# <u>20</u> Exhibit 16# <u>21</u> Exhibit 17# <u>22</u> Exhibit 18a# <u>23</u> Exhibit 18b# <u>24</u> Exhibit 19a# <u>25</u> Exhibit 19b# <u>26</u> Exhibit 19c# <u>27</u> Exhibit 19d# <u>28</u> Exhibit 20a# <u>29</u> Exhibit 20b# <u>30</u> Exhibit 20c# <u>31</u> Exhibit 20d# <u>32</u> Exhibit 20e# <u>33</u> Exhibit 20f# <u>34</u> Exhibit 20g# <u>35</u> Exhibit 20h# <u>36</u> Exhibit 3# <u>37</u> Proposed Order) (Whiteside, Joshua) (Entered: 02/27/2007) |
| 02/27/2007 | ●<u>137</u> | Notice and Certificate of Service Certificate of Service Only Filed by Joshua J Whiteside on behalf of The Compak Companies Inc (RE: <u>136</u> Motion to Dismiss Certain Counts of Adversary Proceeding,,, ). (Whiteside, Joshua) (Entered: 02/27/2007) |
| 02/27/2007 | ●<u>138</u> | Amended Certificate of Service Filed by Joshua J Whiteside on behalf of The Compak Companies Inc. (Whiteside, Joshua) (Entered: 02/27/2007) |
| 02/28/2007 | ●<u>140</u> | Order Granting Motion To Withdraw As Attorney (Related Doc # <u>130</u>). Signed on 2/28/2007. (Cabrales, Claudia) (Entered: 03/05/2007) |
| 03/01/2007 | ●<u>139</u> | Hearing Concluded (RE: <u>131</u> Notice of Hearing of Rule to Show Cause for Not Filing Electronically, ). (Williams, Velda) (Entered: 03/01/2007) |

| 03/01/2007 | 🌑142 | Order Denying Motion to Dismiss Certain Counts of Adversary Proceeding (Related Doc # 136). Movant having not appeared; it is hereby ordered the motion is Denied for want of prosecution. Signed on 3/1/2007. (Cabrales, Claudia) (Entered: 03/08/2007) |
|---|---|---|
| 03/07/2007 | 🌑141 | Certificate of Service Filed by Joshua J Whiteside on behalf of The Compak Companies Inc (RE: 140 Order on Motion to Withdraw as Attorney). (Whiteside, Joshua) (Entered: 03/07/2007) |
| 03/09/2007 | 🌑143 | Notice of Motion and Motion For Summary Judgment in favor of Defendants Duo Tech Holdings, Inc., DuoTech Packaging, LLC, and Bruce Carlson and against Plaintiff Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC. (Attachments: # 1 Proposed Order) (Combest, Christopher) (Entered: 03/09/2007) |
| 03/09/2007 | 🌑144 | Memorandum in Support Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 143 Motion for Summary Judgment, ). (Combest, Christopher) (Entered: 03/09/2007) |
| 03/09/2007 | 🌑145 | Notice of Filing Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 144 Memorandum). (Combest, Christopher) (Entered: 03/09/2007) |
| 03/09/2007 | 🌑146 | Statement Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 143 Motion for Summary Judgment, ). (Combest, Christopher) (Entered: 03/09/2007) |
| 03/09/2007 | 🌑147 | Notice of Filing Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 146 Statement). (Combest, Christopher) (Entered: 03/09/2007) |
| 03/09/2007 | 🌑148 | Supplement Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 146 Statement). (Attachments: # 1 Exhibit A-Patent Complaint (Part 1)# 2 Exhibit A-Patent Complaint (Part 2)# 3 Exhibit B-PatPak License# 4 Exhibit C-Assignment and Acceptance of Agreements# 5 Exhibit D-DuoTech License# 6 Exhibit E-Answer of DuoTech Defendants# 7 Exhibit F-DuoTech Packaging Articles# 8 Exhibit G-Compak Original Schedule F# 9 Exhibit H-Compak Amended Schedule F# 10 Exhibit I-Compak Schedule G# 11 Exhibit J-Compak Sale Motion# 12 Exhibit K-DuoTech Holdings Articles# 13 Exhibit L-Compak Procedures Order# 14 Exhibit M-BMJ Sale Objection# 15 Exhibit N-Compak Sale Order# 16 Exhibit O-Sale Transcript# 17 Exhibit P-Compak Equity Holders# 18 Exhibit Q-Sale Hearing Transcript# 19 Exhibit R-Plaintiff's Response# 20 Exhibit S-Compak Schedules A and B# 21 Exhibit T-Referral Order and Opinion# 22 Exhibit U- |

| | | Plaintiff LLC Documents (Part 1)# 23 Exhibit U-Plaintiff LLC Documents (Part 2)# 24 Exhibit V-Affidavit) (Combest, Christopher) (Entered: 03/09/2007) |
|---|---|---|
| 03/09/2007 | ●149 | Notice of Filing Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 148 Supplement,,,, ). (Combest, Christopher) (Entered: 03/09/2007) |
| 03/09/2007 | ●150 | Certificate of Service Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 146 Statement, 144 Memorandum, 143 Motion for Summary Judgment,, 147 Notice of Filing, 145 Notice of Filing, 148 Supplement,,,,, 149 Notice of Filing). (Combest, Christopher) (Entered: 03/09/2007) |
| 03/13/2007 | ●151 | Second Certificate of Service Filed by Joshua J Whiteside on behalf of The Compak Companies Inc (RE: 140 Order on Motion to Withdraw as Attorney). (Attachments: # 1 Exhibit 1) (Whiteside, Joshua) (Entered: 03/13/2007) |
| 03/23/2007 | ●152 | Appearance for Robert M. Fishman Filed by George J. Spathis on behalf of The Compak Companies Inc. (Spathis, George) (Entered: 03/23/2007) |
| 03/23/2007 | ●153 | Appearance Filed by George J. Spathis on behalf of The Compak Companies Inc. (Spathis, George) (Entered: 03/23/2007) |
| 03/23/2007 | ●154 | Appearance for Rebecca Hanson Filed by George J. Spathis on behalf of The Compak Companies Inc. (Spathis, George) (Entered: 03/23/2007) |
| 04/20/2007 | ●155 | Notice of Motion and Motion to Extend Time to file response to motion for summary judgment Filed by George J. Spathis on behalf of The Compak Companies Inc. Hearing scheduled for 4/25/2007 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Attachments: # 1 Proposed Order) (Spathis, George) (Entered: 04/20/2007) |
| 04/25/2007 | ●156 | Hearing Continued (RE: 143 Motion for Summary Judgment,, 1 Transfer Case). Status hearing to be held on 7/25/2007 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Davis, Shurray) (Entered: 04/25/2007) |
| 04/25/2007 | ●157 | Order Granting Motion to Extend Time (Related Doc # 155). Signed on 4/25/2007. (Ramey, Dorothy) (Entered: 04/27/2007) |
| 05/21/2007 | ●158 | Response in Opposition to (related document(s): 143 Motion for |

| | | Summary Judgment, ) Filed by George J. Spathis on behalf of The Compak Companies Inc (Spathis, George) (Entered: 05/21/2007) |
|---|---|---|
| 05/21/2007 | ●159 | Response to (related document(s): 146 Statement) Filed by George J. Spathis on behalf of The Compak Companies Inc (Attachments: # 1 Appendix Ex. 1# 2 Appendix Exs. 2-7# 3 Appendix Exs. 8-11# 4 Appendix Exs. 12-17# 5 Appendix Exs. 18-19# 6 Appendix Exs. 20-23# 7 Appendix Ex. 24# 8 Appendix Exs. 25-40# 9 Appendix Exs. 41-42# 10 Appendix Exs. 43-50# 11 Appendix Exs. 51-55# 12 Appendix Exs. 56-59# 13 Appendix Exs. 60-61# 14 Appendix Exs. 62-78) (Spathis, George) (Entered: 05/21/2007) |
| 05/21/2007 | ●160 | Notice of Motion and Uncontested Motion for Leave to File Responses Instanter and Exceed Page Limitation Filed by George J. Spathis on behalf of The Compak Companies Inc. Hearing scheduled for 5/31/2007 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Attachments: # 1 Proposed Order) (Spathis, George) (Entered: 05/21/2007) |
| 05/31/2007 | ●161 | Order Granting Motion for Leave (Related Doc # 160). The motion is granted, Plaintiffs Responses are deemed filed. The DuoTech Defendants shall have to and including July 17, 2007 to file their reply in support of their motion. Signed on 5/31/2007. (Cabrales, Claudia) (Entered: 06/06/2007) |
| 07/16/2007 | ●162 | Notice of Motion and Motion to Extend Time to File Reply in Support of Summary Judgment Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC. Hearing scheduled for 7/18/2007 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Attachments: # 1 Proposed Order) (Combest, Christopher) (Entered: 07/16/2007) |
| 07/18/2007 | ●163 | Order Granting Motion to Extend Time (Related Doc # 162). The time within which Duo Tech must file its reply papers in support of its motion for summary judgement (Adv. Docket No. 143) is hereby extended through and including July 31, 2007. Signed on 7/18/2007. (Cabrales, Claudia) (Entered: 07/19/2007) |
| 07/25/2007 | ●164 | Hearing Stricken (RE: 1 Transfer Case). (Nelson, Freddie) (Entered: 07/25/2007) |
| 07/25/2007 | ●165 | Hearing Stricken (RE: 143 Motion for Summary Judgment, ). (Nelson, Freddie) (Entered: 07/25/2007) |
| 07/25/2007 | ●166 | Hearing Continued (RE: 1 Transfer Case). Status hearing to be held on 8/22/2007 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Nelson, Freddie) (Entered: 07/25/2007) |

| | | |
|---|---|---|
| 07/25/2007 | ●167 | Hearing Continued (RE: <u>143</u> Motion for Summary Judgment, ). Status hearing to be held on 8/22/2007 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Nelson, Freddie) (Entered: 07/25/2007) |
| 07/31/2007 | ●<u>168</u> | Reply in Support to (related document(s): <u>158</u> Response, <u>143</u> Motion for Summary Judgment, ) Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (Attachments: # <u>1</u> Appendix) (Combest, Christopher) (Entered: 07/31/2007) |
| 07/31/2007 | ●<u>169</u> | Notice of Filing Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: <u>168</u> Reply). (Combest, Christopher) (Entered: 07/31/2007) |
| 07/31/2007 | ●<u>170</u> | Response to (related document(s): <u>159</u> Response, ) Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (Combest, Christopher) (Entered: 07/31/2007) |
| 07/31/2007 | ●<u>171</u> | Notice of Filing Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: <u>170</u> Response). (Combest, Christopher) (Entered: 07/31/2007) |
| 07/31/2007 | ●<u>172</u> | Notice of Motion and Motion to Strike Portions of (A) Plaintiff's Response to the DuoTech Defendants' Statement of Undisputed Material Facts, and (B) Plaintiff's Statement of Additonal Material Facts, and (II) for Other Relief Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC. Hearing scheduled for 8/8/2007 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Combest, Christopher) (Entered: 07/31/2007) |
| 08/08/2007 | ●173 | Hearing Continued (RE: <u>172</u> Strike,). Hearing Scheduled for 08/22/2007 at 10:30 AM at Courtroom 615 219 South Dearborn, Chicago, IL, 60604. (Davis,Shurray) (Entered: 08/08/2007) |
| 08/22/2007 | ●174 | Hearing Continued (RE: <u>172</u> Motion to Strike,, <u>1</u> Transfer Case). Status hearing to be held on 10/3/2007 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Davis, Shurray) (Entered: 08/22/2007) |
| 08/22/2007 | ●175 | Hearing Continued (RE: <u>143</u> Motion for Summary Judgment, ). Hearing scheduled for 10/3/2007 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Davis, Shurray) (Entered: 08/22/2007) |
| | | |

| 08/22/2007 | ⦿176 | Order Scheduling (RE: 1 Transfer Case). Hearing scheduled for 10/3/2007 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illinois 60604.Reply due by: 9/26/2007 Responses due by 9/12/2007. Signed on 8/22/2007 (Cabrales, Claudia) (Entered: 08/24/2007) |
|---|---|---|
| 09/14/2007 | ⦿177 | Response to (related document(s): 172 Motion to Strike, ) Filed by George J. Spathis on behalf of The Compak Companies Inc (Attachments: # 1 Exhibit A and B) (Spathis, George) (Entered: 09/14/2007) |
| 09/28/2007 | ⦿178 | Reply in Support to (related document(s): 172 Motion to Strike,, 177 Response) Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (Combest, Christopher) (Entered: 09/28/2007) |
| 09/28/2007 | ⦿179 | Notice of Filing Filed by Christopher Combest on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 178 Reply). (Combest, Christopher) (Entered: 09/28/2007) |
| 10/04/2007 | ⦿180 | Hearing Continued (RE: 1 Transfer Case). Status hearing to be held on 10/24/2007 at 11:00 AM at 219 South Dearborn, Courtroom 619, Chicago, Illinois 60604. (Davis, Shurray) (Entered: 10/04/2007) |
| 10/04/2007 | ⦿181 | Hearing Continued (RE: 143 Motion for Summary Judgment,, 172 Motion to Strike, ). Hearing scheduled for 10/24/2007 at 11:00 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Davis, Shurray) (Entered: 10/04/2007) |
| 10/24/2007 | ⦿182 | Hearing Continued (RE: 143 Summary Judgment). Hearing Scheduled for 11/07/2007 at 11:00 AM at Courtroom 615 219 South Dearborn, Chicago, IL, 60604. (Davis,Shurray) (Entered: 10/24/2007) |
| 10/24/2007 | ⦿183 | Hearing Continued (RE: 172 Strike). Hearing Scheduled for 11/07/2007 at 11:00 AM at Courtroom 615 219 South Dearborn, Chicago, IL, 60604. (Davis,Shurray) (Entered: 10/24/2007) |
| 10/24/2007 | ⦿184 | Hearing Continued (RE: 1 Transfer Case). Status hearing to be held on 11/7/2007 at 11:00 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Davis, Shurray) (Entered: 10/24/2007) |
| 11/07/2007 | ⦿185 | Hearing Continued (RE: 143 Motion for Summary Judgment,, 172 Motion to Strike,, 1 Transfer Case). Status hearing to be held on 11/14/2007 at 11:00 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Davis, Shurray) (Entered: 11/07/2007) |
| 11/14/2007 | ⦿186 | Hearing Continued (RE: 143 Motion for Summary Judgment,, 172 |

| | | Motion to Strike,, 1 Transfer Case). Status hearing to be held on 11/29/2007 at 11:00 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Davis, Shurray) (Entered: 11/14/2007) |
|---|---|---|
| 12/03/2007 | ●187 | Hearing Continued (RE: 143 Motion for Summary Judgment,, 172 Motion to Strike,, 1 Transfer Case). Status hearing to be held on 12/18/2007 at 11:00 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Davis, Shurray) (Entered: 12/03/2007) |
| 12/18/2007 | ●188 | Hearing Continued (RE: 1 Transfer Case). Status hearing to be held on 1/16/2008 at 11:00 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Nelson, Freddie) (Entered: 12/18/2007) |
| 12/18/2007 | ●189 | Hearing Continued (RE: 143 Summary Judgment). Hearing Scheduled for 01/16/2008 at 11:00 AM at Courtroom 615 219 South Dearborn, Chicago, IL, 60604. (Nelson,Freddie) (Entered: 12/18/2007) |
| 12/18/2007 | ●190 | Hearing Continued (RE: 172 Strike). Hearing Scheduled for 01/16/2008 at 11:00 AM at Courtroom 615 219 South Dearborn, Chicago, IL, 60604. (Nelson,Freddie) (Entered: 12/18/2007) |
| 01/02/2008 | ●191 | Notice of Motion and Motion to Withdraw as Attorney Filed by Christopher Combest on behalf of Quarles & Brady LLP. Hearing scheduled for 1/16/2008 at 11:00 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Attachments: # 1 Proposed Order) (Combest, Christopher) (Entered: 01/02/2008) |
| 01/16/2008 | ●192 | Hearing Continued (RE: 143 Motion for Summary Judgment,, 172 Motion to Strike,, 1 Transfer Case). Status hearing to be held on 3/26/2008 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Davis, Shurray) (Entered: 01/16/2008) |
| 01/16/2008 | ●193 | **INCORRECT EVENT ENTERED**Order Withdrawing Motion To Withdraw As Attorney (Related Doc # 191). Signed on 1/16/2008. (Hamilton, Annette) Modified on 4/9/2008 (Hamilton, Annette). (Entered: 01/17/2008) |
| 01/16/2008 | ●200 | Order Granting Motion To Withdraw As Attorney (Related Doc # 191). Signed on 1/16/2008. (Hamilton, Annette) (Entered: 04/09/2008) |
| 01/17/2008 | | Terminated Attorney Christopher Combest . (Hamilton, Annette) (Entered: 01/17/2008) |
| 03/17/2008 | ●194 | Request For Additional Time to Locate An Attorney Filed by Bruce Carlson . (Epps, Wanda) (Entered: 03/18/2008) |

| 03/17/2008 | ●195 | Certificate of Service Filed by Bruce Carlson (RE: 194 Request). (Epps, Wanda) (Entered: 03/18/2008) |
|---|---|---|
| 03/27/2008 | ●196 | Hearing Continued (RE: 143 Motion for Summary Judgment,, 172 Motion to Strike,, 1 Transfer Case). Status hearing to be held on 4/24/2008 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illinois 60604. (Davis, Shurray) (Entered: 03/27/2008) |
| 03/27/2008 | ●198 | Order Denying - Request for additional time to locate an attorney (RE: 194 Request). IT IS ORDERED: The motion to adversary case 04 A 4028 is denied on its merits under the circumstances of the case. Signed on 3/27/2008 (Cabrales, Claudia) (Entered: 04/01/2008) |
| 03/31/2008 | ●197 | Notice of Motion and Motion for Default against Bruce Carlson, Duotech Holdings, Inc. and Duotech Packaging, LLC in favor of The Compak Companies, LLC Filed by Allen J Guon on behalf of The Compak Companies Inc. Hearing scheduled for 4/3/2008 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illinois 60604. (Attachments: # 1 Proposed Order) (Guon, Allen) (Entered: 03/31/2008) |
| 04/03/2008 | ●199 | (E)Order Withdrawing Motion for Default (Related Doc # 197). Signed on 04/03/2008. (Beckerman, Steve) (Entered: 04/03/2008) |
| 04/09/2008 | | Reopen Document (RE: 191 Motion to Withdraw as Attorney, ). (Hamilton, Annette) (Entered: 04/09/2008) |
| 04/24/2008 | ●201 | Hearing Continued (RE: 143 Motion for Summary Judgment,, 172 Motion to Strike,, 1 Transfer Case). Status hearing to be held on 5/1/2008 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illinois 60604. (Davis, Shurray) (Entered: 04/24/2008) |
| 04/24/2008 | ●202 | Appearance Filed by Steven E Anderson on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC. (Anderson, Steven) (Entered: 04/24/2008) |
| 04/29/2008 | ●203 | Memorandum MEMORANDUM OF TRUSTEES REGARDING STATUS OF CASES AND PRESENT EFFECT OF ORDER OF NOVEMBER 29, 2007 Filed by Joseph A Baldi on behalf of Joseph Baldi, David P Leibowitz. (Baldi, Joseph) (Entered: 04/29/2008) |
| 05/01/2008 | ●204 | Hearing Continued (RE: 143 Motion for Summary Judgment,, 172 Motion to Strike,, 1 Transfer Case). Status hearing to be held on 5/14/2008 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illinois 60604. (Davis, Shurray) (Entered: 05/01/2008) |
| 05/14/2008 | ●205 | Hearing Continued (RE: 1 Transfer Case). Status hearing to be held |

| | | |
|---|---|---|
| | | on 5/28/2008 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Davis, Shurray) (Entered: 05/14/2008) |
| 05/27/2008 | ●206 | Hearing Continued (RE: 143 Summary Judgment). Hearing Scheduled for 05/28/2008 at 10:30 AM at Courtroom 615 219 South Dearborn, Chicago, IL, 60604. (Smith,Lester) (Entered: 05/27/2008) |
| 05/27/2008 | ●207 | Hearing Continued (RE: 172 Strike). Hearing Scheduled for 05/28/2008 at 10:30 AM at Courtroom 615 219 South Dearborn, Chicago, IL, 60604. (Smith,Lester) (Entered: 05/27/2008) |
| 05/28/2008 | ●208 | Hearing Continued (RE: 143 Motion for Summary Judgment,, 1 Transfer Case). Status hearing to be held on 6/4/2008 at 11:00 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Davis, Shurray) (Entered: 05/28/2008) |
| 05/28/2008 | ●209 | Order Granting in part, Denying in part Motion to Strike (Related Doc # 172). Signed on 5/28/2008. (Cabrales, Claudia) (Entered: 05/29/2008) |
| 05/28/2008 | ●210 | Order Granting Motion For Summary Judgment (Related Doc # 143). Parties granted leave to file additional supplement by or before 4:30 p.m. on May 30, 2008. This matter is continued to June 4, 2008 at 11:00 a.m. Signed on 5/28/2008. (Cabrales, Claudia) (Entered: 05/29/2008) |
| 05/30/2008 | ●211 | Notice of Motion and Motion to Vacate Filed by George J. Spathis on behalf of The Compak Companies Inc. Hearing scheduled for 6/4/2008 at 11:00 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Attachments: # 1 Exhibit # 2 Proposed Order Granting Motion to Reconsider and Partially Vacating May 28, 2008 Order Regarding Admissibility of Exhibits and Statements of Fact Based Thereon) (Spathis, George) (Entered: 05/30/2008) |
| 06/04/2008 | ●212 | Hearing Continued (RE: 143 Summary Judgment). Hearing Scheduled for 06/10/2008 at 02:30 PM at Courtroom 615 219 South Dearborn, Chicago, IL, 60604. (Davis,Shurray) (Entered: 06/04/2008) |
| 06/04/2008 | ●213 | Hearing Continued (RE: 211 Vacate). Hearing Scheduled for 06/10/2008 at 02:30 PM at Courtroom 615 219 South Dearborn, Chicago, IL, 60604. (Davis,Shurray) (Entered: 06/04/2008) |
| 06/04/2008 | ●214 | Hearing Continued (RE: 1 Transfer Case). Status hearing to be held on 6/10/2008 at 02:30 PM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Davis, Shurray) (Entered: 06/04/2008) |
| 06/10/2008 | ●215 | Hearing Continued (RE: 1 Transfer Case). Status hearing to be held |

| | | |
|---|---|---|
| | | on 6/25/2008 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illinois 60604. (Davis, Shurray) (Entered: 06/10/2008) |
| 06/10/2008 | 216 | Hearing Continued (RE: 143 Summary Judgment). Hearing Scheduled for 06/25/2008 at 10:30 AM at Courtroom 615 219 South Dearborn, Chicago, IL, 60604. (Davis,Shurray) (Entered: 06/10/2008) |
| 06/10/2008 | 217 | Order Granting Motion To Reeconsider and Partially Vacating May 28, 2008 Order Regarding Admissibility of Exhibits and Statements of Fact Based Thereon (Related Doc # 211). Signed on 6/10/2008. (Cabrales, Claudia) (Entered: 06/11/2008) |
| 06/25/2008 | 218 | Hearing Continued (RE: 1 Transfer Case). Status hearing to be held on 7/23/2008 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illinois 60604. (Davis, Shurray) (Entered: 06/25/2008) |
| 06/25/2008 | 219 | Proposed Finding of Facts and Conclusions of Law Pursuant to Rule 9033 . Objections due by 7/7/2008 Transmission Due by 7/7/2008. (Cabrales, Claudia) (Entered: 06/25/2008) |
| 06/25/2008 | 220 | Certificate of Service (RE: 219 Proposed Finding of Facts and Conclusions of Law 9033). (Cabrales, Claudia) (Entered: 06/25/2008) |
| 07/07/2008 | 221 | Notice of Motion and Motion to Extend Time File Objections to Proposed Findings of Facts and Conclusions of Law Filed by Allen J Guon on behalf of The Compak Companies Inc. Hearing scheduled for 7/9/2008 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illinois 60604. (Attachments: # 1 Proposed Order) (Guon, Allen) (Entered: 07/07/2008) |
| 07/07/2008 | 222 | Response to (related document(s): 221 Motion to Extend Time, ) Filed by Steven E Anderson on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (Anderson, Steven) (Entered: 07/07/2008) |
| 07/07/2008 | 223 | Objection to (related document(s): 219 Proposed Finding of Facts and Conclusions of Law 9033) Filed by Steven E Anderson on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (Anderson, Steven) (Entered: 07/07/2008) |
| 07/07/2008 | 224 | Notice of Filing of DuoTech's Objection to Proposed Findings of Fact and Conclusions of Law Filed by Steven E Anderson on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (RE: 223 Objection). (Anderson, Steven) (Entered: 07/07/2008) |
| 07/07/2008 | 225 | Notice of Motion and Amended Motion (related document(s): 221 Motion to Extend Time, ) Filed by Steven E Anderson on behalf of |

| | | Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC. (Anderson, Steven) (Entered: 07/07/2008) |
|---|---|---|
| 07/09/2008 | ●226 | Certificate of Service Filed by Allen J Guon on behalf of The Compak Companies Inc (RE: 221 Motion to Extend Time, ). (Guon, Allen) (Entered: 07/09/2008) |
| 07/09/2008 | ●227 | Order Granting Motion to Extend Time (Related Doc # 221), Granting Amended Motion (Related Doc # 225). Amendment Objection due by 7/25/2008. Signed on 7/9/2008. (Cabrales, Claudia) (Entered: 07/10/2008) |
| 07/23/2008 | ●228 | Hearing Continued (RE: 1 Transfer Case). Status hearing to be held on 8/13/2008 at 10:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Davis, Shurray) (Entered: 07/23/2008) |
| 07/25/2008 | ●229 | Joinder In Objection to (related document(s): 223 Objection) Filed by David P Leibowitz ESQ on behalf of David P Leibowitz (Leibowitz, David) (Entered: 07/25/2008) |
| 07/25/2008 | ●230 | Notice of Filing Filed by Trustee David P Leibowitz (RE: 229 Objection). (Leibowitz, David) (Entered: 07/25/2008) |
| 07/25/2008 | ●231 | Objection to (related document(s): 219 Proposed Finding of Facts and Conclusions of Law 9033) Filed by George J. Spathis on behalf of The Compak Companies Inc (Attachments: # 1 Exhibit 32# 2 Exhibit 33# 3 Exhibit 34# 4 Exhibit 56# 5 Exhibit 57# 6 Exhibit 59# 7 Exhibit 60 Part 1# 8 Exhibit 60 Part 2# 9 Exhibit 62# 10 Exhibit 66) (Spathis, George) (Entered: 07/25/2008) |
| 07/25/2008 | ●232 | Joinder In Objection to (related document(s): 223 Objection) Filed by Joseph A Baldi Tr on behalf of Joseph Baldi (Baldi, Joseph) (Entered: 07/25/2008) |
| 08/04/2008 | ●233 | Response to (related document(s): 229 Objection, 232 Objection, 223 Objection) Filed by George J. Spathis on behalf of The Compak Companies Inc (Spathis, George) (Entered: 08/04/2008) |
| 08/04/2008 | ●234 | Response to (related document(s): 231 Objection, ) Filed by Steven E Anderson on behalf of Bruce Carlson, Duotech Holdings Inc, Duotech Packaging LLC (Anderson, Steven) (Entered: 08/04/2008) |
| 08/08/2008 | ●235 | Notice of Motion and Motion for Leave to Amend Its Objections to Proposed Findings Of Fact And Conclusions Of Law Filed by Allen J Guon on behalf of The Compak Companies Inc. Hearing scheduled for 8/14/2008 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Attachments: # 1 Exhibit A# 2 Proposed |

| | | Order Granting Plaintiff's Motion for Leave to File Amended Objections to the Court's Proposed Findings of Fact and Conclusions of Law) (Guon, Allen) (Entered: 08/08/2008) |
|---|---|---|
| 08/13/2008 | ●236 | Hearing Continued (RE: <u>1</u> Transfer Case). Status hearing to be held on 8/14/2008 at 09:30 AM at 219 South Dearborn, Courtroom 615, Chicago, Illnois 60604. (Davis, Shurray) (Entered: 08/13/2008) |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| COMPAK CORPORATION, | ) Case No. 02 B 22594 |
| | ) Honorable Bruce W. Black |
| Debtor. | ) Chapter 7 |
| | ) |
| COMMUNION PACKAGING | ) Case No. 02 B 39188 |
| COMPANY, an Illinois corporation, | ) Chapter 7 |
| | ) Honorable Bruce W. Black |
| Debtor. | ) |
| | ) (Jointly Administered) |
| | ) |
| THE COMPAK COMPANIES, LLC, | ) |
| | ) |
| Plaintiff, | ) Adv. No. 04 A 04028 |
| | ) |
| v. | ) |
| | ) |
| JIMMIE L. JOHNSON, RON BOWEN, | ) **08CV4665** |
| BRUCE CARLSON, PATPAK, INC., | ) **JUDGE CONLON** |
| DUOTECH HOLDINGS, INC., | ) **MAG. JUDGE NOLAN** |
| DUOTECH PACKAGING, LLC, AND | ) |
| OLMARC PACKAGING COMPANY, | ) |
| | ) |
| Defendants. | ) |

## OBJECTIONS TO THE PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO BANKRUPTCY RULE 9033 AND LOCAL RULE 9033-1

DuoTech Holdings, Inc., DuoTech Packaging LLC and Bruce Carlson (collectively hereafter "DuoTech") by and through its attorneys Barnes & Thornburg LLP, in accordance with Fed. R. Bank. P. 9033 and Local Rule 9033-1 respectfully object to the Proposed Findings of Fact and Conclusions of Law entered by the Bankruptcy Court on June 25, 2008 as follows:

1

## Introduction

DuoTech agrees with the ultimate conclusion reached by the Bankruptcy Court that summary judgment should enter in its favor on Counts I and II of the Complaint. DuoTech, respectfully, objects to certain conclusions of law rendered by the Bankruptcy Court when reaching this conclusion. Pursuant to Bankruptcy Rule 9033, the District Court should review the findings of facts and conclusions of law in the June 25, 2008 order on a *de novo* basis.

DuoTech disagrees with the Bankruptcy Court findings in four (4) principal areas. First, the Bankruptcy Court found that the transfer of the '351, '388, and '312 patents from Jimmie Johnson ("Johnson") to Patpak was invalid, and, as a result, those patents were owned by Compak. However, when these bankruptcy cases were filed, Patpak was the record owner of the '351, '388, and '312 patents. Any such action by Compak to assert or challenge ownership of these patents was a bankruptcy cause of action under Section 547 or 548 of the Bankruptcy Code. Bankruptcy causes of action were excluded from the assets sold by the 2003 Sale Order[1], so any such claim by Plaintiff is barred as a collateral attack on the 2003 Sale Order or by *res judicata*. Further, only a Chapter 7 trustee or debtor-in-possession, and not Plaintiff, could prosecute these claims. No such action was instituted and the statute of limitations on these claims expired on June 10, 2004.

Second, the Bankruptcy Court found that existence of the DuoTech License[2] nullified the need to determine ownership of the '351, '388, and '312 patents since DuoTech held the license right to use the patents. However, as shown above, Patpak, not Compak, owned the '351, '388,

---

[1] The term "2003 Sale Order" refers to the order entered in March, 2003 approving the asset sale between the bankruptcy estate of Compak and BMJ, plaintiff's assignee.

[2] The term "Patpak License" refers to the license agreement whereby Patpak licensed rights to the '351, '388 and '312 patents to Compak. The term "DuoTech License" refers to the license agreement whereby Compak licensed rights to the '106, '351, '388 and '312 patents to DuoTech.

and '312 patents. Therefore, they were not included in the 2003 Sale Order and were instead purchased by DuoTech through the Settlement Agreement.[3]

Third, the Bankruptcy Court found that Plaintiff, by the 2003 Sale Order, assumed the DuoTech License and, as a result, acts as licensor of the '106 and the '351, '388, and '312 patents to DuoTech. However, no Bankruptcy Court order approved assumption and assignment of the DuoTech License by Plaintiff.[4] Since neither license was assumed by Plaintiff, they remained with the Bankruptcy estate after the 2003 Sale Order. Also, since the DuoTech License is for intellectual property and Compak was the licensor in that agreement, Section 365(n) of the Bankruptcy Code allows DuoTech, the licensee, to retain its rights under the DuoTech License. The obligations imposed on the bankruptcy estate for this retention of rights under Section 365(n) was purchased by DuoTech in the Settlement Agreement. DuoTech's purchase, of all of Patpak's assets through the Settlement Agreement, makes DuoTech the outright owner of the '351, '388, and '312 patents. Plaintiff's ownership rights to the disputed patents is limited to ownership of the '106 patent. Therefore, any license fee to be paid by DuoTech should be limited to use of the '106 patent.

Fourth, and finally, the DuoTech License gave DuoTech the rights to its attorneys' fees and expenses incurred in protecting its rights to the '106, '351, '388, and '312 patents. Here, DuoTech should be entitled to recoup its fees thus expended against the royalty payments held by this Court and, if these funds are insufficient to cover these fees, against future royalty payments to Plaintiff for the '106 patent.

---

[3] The term "Settlement Agreement" refers to the agreement approved by the Bankruptcy Court on November 29, 2007 whereby DuoTech, *inter alia*, purchased all of the remaining assets of the Compak, Communion Packaging Company, Patpak and Jimmie Johnson bankruptcy estates.

[4] Reference to "Plaintiff" also includes BMJ since BMJ was the counterparty with the estate in the 2003 Sale Order and thereafter assigned its rights to Plaintiff.

Based on these areas of contention, DuoTech hereby objects to Conclusions of Law

(Count II) numbers 2, 3, 4, 8, and 18. DuoTech also objects to Conclusions of Law (Count I)

numbers 2 and 3. Additionally, DuoTech respectfully suggests that additional Conclusions of

Law be entered. Detail on these objections follows.

## OBJECTIONS TO THE BANKRUPTCY'S COURTS PROPOSED CONCLUSIONS OF LAW

### Objection to Paragraph 2 of Count II

DuoTech objects to the Bankruptcy Court's proposed finding of law, Count II, ¶2, which

states:

> 2. By virtue of Johnson's assignment of his rights, title, and interest in the pending '106 patent and any related inventions to Compak, Johnson was divested of any transferable interest in the '351, '388, and '312 patents.

**Basis for objection:** DuoTech objects to this proposed conclusion of law because the question

of patent ownership was never properly before the Bankruptcy Court. In its original Complaint,

Plaintiff alleged a complex scheme of transactions initiated to deprive the Compak bankruptcy

estate of pre-petition property. Compl. at ¶¶16-54. Assume, *arguendo*, this to be true. An

action to recover property wrongfully taken from the Compak estate would lie with Sections 547

(preference) or 548 (fraudulent transfer) of the Bankruptcy Code. But, neither BMJ Partners

("BMJ") nor Plaintiff purchased Compak's bankruptcy causes of action. Nor could they since

these causes of action were explicitly excluded from the asset sale. (*see* Mot. for Summ. J.

Mem., Sale Order, Supp. Tab "N", at ¶ 6, Docket No. 143) Therefore, any such action by

Plaintiff is an impermissible collateral attack on the Asset Sale Order and barred by *res judicata*.

(*see* DuoTech's Mot. for Summ. J. Mem. at 7-8, Docket No. 143)

4

Relatedly, neither BMJ nor Plaintiff has standing to bring any action to address the

alleged fraudulent or preferential transfer of the '351, '388, and '312 patents from Compak's

bankruptcy estate. *Id.* Assuming *arguendo,* that grounds existed to bring such an action, the

only party with the requisite standing to bring this suit would be Compak's chapter 7 trustee, or,

prior to the case's conversion, the debtor-in-possession. No such case was ever filed. Further,

pursuant to 11 U.S.C. § 546(a), the last day to commence such a proceeding was June 10, 2004.

(*see* DuoTech's Mot. for Summ. J. Mem. at 7-8, Docket No. 143).

For these reasons, DuoTech respectfully requests that this Court substitute the

Bankruptcy Court's proposed conclusion of law ¶2 under Count II with:

2. At the time of the bankruptcy, Compak owned all rights, title, and interest in the '106 patent while Patpak owned all rights, title, and interest in the '351, '388, and '312 patents.

DuoTech further requests that this Court supplement the proposed conclusions of law

with the following conclusions, as supported by the factual record of the case and reasoning

provided above:

- Compak's bankruptcy causes of actions were excluded from the 363 sale[5].

- Standing to bring any preference or fraudulent transfer action would have been vested in the Compak trustee or debtor-in-possession.

- The statute of limitations for the commencement of any fraudulent or preferential transfer actions expired on June 10, 2004.

---

[5] To the extent a suggested or objected to Conclusion of Law is deemed a Finding of Fact, DuoTech requests that its objection and/or suggestion be deemed a Finding of Fact.

## Objection to Paragraph 3 of Count II

DuoTech objects to the Bankruptcy Court's proposed finding of law, Count II, ¶3, which states:

> 3. All rights, title, and interest in the '351, '388, and '312 patent vested in Compak by operation of law when the patents were issued.

**Basis for objection:** DuoTech restates the basis of its objection to ¶2 of Count II. DuoTech respectfully requests that this Court omit ¶3 under Count II.

## Objection to Paragraph 4 of Count II

DuoTech objects to the Bankruptcy Court's proposed finding of law, Count II, ¶4, which states:

> 4. The purported Patpak license was invalid because Johnson had given up his rights, title, and interest in the patents.

**Basis for objection:** DuoTech restates the basis of its objection to ¶2 of Count II.

Furthermore, through their actions, BMJ and Plaintiff have acknowledged a lack of ownership in the '351, '388, and '312 patents. (*see generally*, Joint Order of Chapter 7 Trustees For Approval of Settlement Agreement, Interpleader Adv. Case No. 03 A 03898, Docket #124). Specifically, after the 2003 Sale Order, Plaintiff and BMJ sought to buy all rights, title and interests in the '351, '388, and '312 patents from the Patpak and Compak chapter 7 trustees but was outbid by DuoTech. *Id.* Trying to buy these assets after the 2003 Sale Order shows that even Plaintiff and BMJ thought they did not own the '351, '388, and '312 patents.

It is uncontested that the only patent expressly identified in the Compak Asset Sale Motion or the Notice of Sale was the '106 patent. The '351, '388, and '312 patents were not

6

referenced and the recent actions of all of the parties actively involved in the case show that the Patpak estate continued to own these patents. The Bankruptcy Court approved and entered the Settlement Agreement which sold the '351, '388, and '312 patents to DuoTech.

But, the Bankruptcy Court never approved, by separate order under Section 365 of the Bankruptcy Code, the assumption and assignment of the DuoTech License by Plaintiff. License agreements are executory contracts within the meaning of Section 365 of the Bankruptcy Code. *See In re Superior Toy & Mfg. Co. Inc.*, 78 F.3d 1169 (7th Cir. 1996) (holding trademark license executory); *Novon Intern.*, 2000 U.S. Dist. LEXIS 5169, 2000 WL 432848 (viewing patent license as executory); *In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999) (recognizing patent license as executory); *In re Kmart Corp.*, 290 B.R. 614, 619 (Bankr. N.D. Ill. 2003). In order for an executory contract to be sold pursuant to 11 U.S.C. § 363, "it must first be assumed, and then assigned" in compliance with 11 U.S.C § 365. *In re Dartmouth Audio, Inc.*, 42 B.R. 871, 877 (Bankr. D.N.H. 1984). Assumption of a contract "commits the estate to full performance under the contract[.]" *United Air Lines, Inc. v. U.S. Bankr. Trust Nat'l Ass'n as Tr. (In re UAL Corp.)*, 346 B.R. 456, 467 (Bankr. N.D. Ill. 2006). Furthermore, "only the court can approve the debtor's proposed assumption." *In re Dehon, Inc.*, 352 B.R. 546, 560 (Bankr. D. Mass. 2006). Accordingly, "[i]t is not possible under Section 365 of the Bankruptcy Code to simply 'sell' a lease or executory contract." *In re Dartmouth Audio, Inc.*, 42 B.R. 871, 877 (Bankr. D.N.H. 1984).

Therefore, the sale of the DuoTech License through the 2003 Sale Order was improper and invalid because the license had not properly been assumed by Compak and subsequently assigned to BMJ with the Bankruptcy Court's approval as required by 11 U.S.C § 365. *See also In re FBI Dist. Corp.*, 330 F.3d 36, 45 (1st Cir. 2003)("the plain text of section 365 requires

express approval by the court"). Accordingly, due to the improper omission of steps explicitly required by the Bankruptcy Code, the DuoTech License remained the property of the Compak bankruptcy estate. Since neither license was assumed by Plaintiff, they remained with the Bankruptcy estate after the 2003 Sale Order. Furthermore, the DuoTech License is for intellectual property and Compak was the licensor in that agreement, Section 365(n) of the Bankruptcy Code allows DuoTech, the licensee, to retain its rights under the DuoTech License. The obligations imposed on the bankruptcy estate for this retention of rights under Section 365(n) was purchased by DuoTech in the Settlement Agreement. By purchasing all of Patpak's assets through the Settlement Agreement, DuoTech has outright ownership of the '351, '388, and '312 patents. Plaintiff's ownership rights to the disputed patents is limited to ownership of the '106 patent. Therefore, any license fee to be paid by DuoTech should be limited to the '106 license.

For these reasons, DuoTech respectfully requests that this Court substitute the Bankruptcy Court's proposed conclusion of law ¶4 under Count II with:

> 4. The Patpak license to Compak for use of the '351, '388, and '312 remains valid, and DuoTech now owns the '351, '388, and '312 patents.

### Objection to Paragraph 8 of Count II

DuoTech objects to the Bankruptcy Court's proposed finding of law, Count II, ¶8, which states:

> 8. That Compak owned all four patents, rather than being a licensee from Patpak for three of them, is not legally significant in light of Compak's clear grant of a license to Holdings regarding all four patents.

8

**Basis for objection:** DuoTech restates the basis of its objections to ¶2 & ¶4 of Count II. For these reasons, DuoTech respectfully requests that this Court substitute the Bankruptcy Court's proposed conclusion of law ¶8 under Count II with:

> 8. It is clear that Compak granted a license to Holdings for all four patents. DuoTech owns, outright, the '351, '388, and '312 patents and by operation of 365(n) of the Bankruptcy retains the right to use the '106 patent. Any royalty payment made to the bankruptcy estate shall be limited to the value of the '106 patent.

### Objection to Paragraphs 18 &19 of Count II

DuoTech objects to the Bankruptcy Court's proposed finding of law, Count II, ¶¶ 18 & 19, which state:

> 18. Accordingly, the DuoTech License was not adversely affected by the Sale Order, and anything in that order to the contrary is void. The 2003 Sale Order is otherwise valid and fully enforceable. See *In re Metzger*, 346 B.R. 806, 819 (Bkrtcy. N.D. Cal. 2006).

> 19. It follows that BMJ Partners acquired Compak's interest in the DuoTech License through its purchase of the debtors' assets and that BMJ assumed the DuoTech License Agreement.

**Basis for objection:** DuoTech restates the basis of its objections to ¶¶2, 4 and 8 of Count II and further objects that each conclusion provides Plaintiff with unsought relief. Throughout its pleadings, Plaintiff has taken the position that the DuoTech License was extinguished by the 2003 Sale Order. Plaintiff nor BMJ requested that the Court enforce or ratify the DuoTech License. To the contrary, the very act of suing DuoTech for patent infringement, on the basis the DuoTech License was invalid from inception, is demonstrative of the Plaintiff's belief that the DuoTech License was not enforceable. (*see* Compl. at ¶44 ("In short, the DuoTech 'license' is a nullity" . . .) . Specifically, in its initial Complaint, Plaintiff argued that "[t]he purported

9

August 29, 2001, Compak license of the Patents to DuoTech was pretextual and void[.]" Compl. at ¶40.    Plaintiff and BMJ continued to demonstrate their collective disinterest in the assumption of the DuoTech License, stating "nothing suggested that the buyer [BMJ] would be assuming any license granted to a third party[.]" (see Plaintiff Resp. to DuoTech's Mot. for Summ. J. at 3, Docket No. 159).

For these reasons, DuoTech respectfully requests that this Court substitute the Bankruptcy Court's proposed conclusion of law ¶18 and ¶19 under Count II with:

18. Not having been properly assumed or assigned, the DuoTech License was not included as an asset transferred by the 2003 Sale Order, and anything in that order to the contrary is void.

19. The DuoTech License was not properly assumed by the Compak Estate and therefore could not be assumed, "sold," or assigned to BMJ.

DuoTech further requests that this Court supplement the proposed conclusions of law with the following conclusions, as supported by the factual record of the case, precedent and reasoning above:

- BMJ attempted to purchase the '351, '388 and '312 patents, but was out bid by DuoTech.

- By Settlement Agreement dated January 3, 2008, the Trustee for the Patpak Bankruptcy estate sold the '351, '388, and '312 patents to DuoTech.

## Objection to Paragraph 20 of Count II

DuoTech objects to the Bankruptcy Court's proposed finding of law, Count II, ¶20, which states:

20. Section 365(d)(1) of the Bankruptcy Code does not apply to these facts because the DuoTech License was not an asset of the chapter 7 estate, having been purchased by BMJ Partners before the conversion to chapter 7.

10

**Basis for objection:**   DuoTech restates the basis of its objection to ¶¶2, 4, 8, 18 &19 of Count II that the DuoTech License was not properly assumed and therefore could not be assigned to BMJ and thus reverted to the Compak chapter 7 estate.  While the Trustee did not assume the license with 60 days, DuoTech continued to operate under the DuoTech License and on its own motion sought a determination from the Bankruptcy Court as to the proper payee of those royalties. (*see generally* DuoTech Compl., Interpleader Adv. Case  No. 03 A 03898, Docket No. 1)  While the Interpleader Action is still pending before the Bankruptcy Court, DuoTech has and will continue to pay royalties into the Interpleader Royalty Fund for the '106 patent.  Thus, in accordance with 11 U.S.C. §§ 365(n)(1)-(2), the DuoTech License remains valid.  Additionally, Section 9d of the DuoTech License gives DuoTech the right to its attorneys' fees and costs in defending its rights to the '106, '351, '388 and '312 patents, and the right to recoup these costs from any royalty payments.

For these reasons, DuoTech respectfully requests that this Court substitute the Bankruptcy Court's proposed conclusion of law ¶20 under Count II with:

20. Pursuant to Sections 365(n)(1)-(2) of the Bankruptcy Code, DuoTech's continued payment of royalties owing for the '106 Patent under the DuoTech License preserves the validity of license.

DuoTech further requests that this Court supplement the proposed conclusions of law with the following conclusions, as supported by the factual record of the case and reasoning above:

- DuoTech, pursuant to the DuoTech License, is entitled to its attorneys' fees and costs incurred in defending or protecting its rights to the '106, '351, '388 and '312 patents.

- DuoTech, upon presentment and approval by this Court of its fees incurred in defending or protecting its rights to the Patents, shall be entitled to recoup these fees against the royalty fees held by this Court.

- If the Funds held by the Clerk of Court are insufficient to pay the Fee award, any such outstanding fees may be recouped against any future royalty fees to be paid by DuoTech.

### Objection to Paragraph 2 of Count I

DuoTech objects to the Bankruptcy Court's proposed finding of law, Count I, ¶2, which states:

2. All rights, title, and interest in the '351, '388, and '312 patent vested in Compak by operation of law when the patents were issued.

**Basis for objection:** DuoTech objects to ¶2 on the basis that ownership of the '351, '388, and '312 patents was never properly before the Bankruptcy Court because the Plaintiff lacks standing to assert any bankruptcy cause of action and restates its basis of objection for ¶2 of Count II. For the reasons already stated above, DuoTech respectfully requests that this Court omit proposed conclusion of law ¶2 under Count II.

### Objection to Paragraph 3 of Count I

DuoTech objects to the Bankruptcy Court's proposed finding of law, Count I, ¶3, which states:

3. The imposition of a constructive trust to transfer legal title to the plaintiff is needless because Compak, had, and continues to have, legal title to the patents.

**Basis for objection:** DuoTech objects to ¶3 on the basis that ownership of the '351, '388, and '312 patents was never properly before the Bankruptcy Court because the Plaintiff lacks standing to assert any bankruptcy cause of action and restates its basis of objection for ¶2 of Count II.

For these reasons, DuoTech respectfully requests that this Court substitute the

Bankruptcy Court proposed conclusion of law ¶3 under Count I with:

3. The imposition of a constructive trust to transfer legal title to the plaintiff is needless because plaintiff continues to have legal title to the '106 patent as did Patpak to the '351, '318, and '312 patent as of the petition date. Any rights of Patpak are now owned by DuoTech.

## CONCLUSION

DuoTech agrees with the ultimate conclusion reached by the Bankruptcy Court that

summary judgment should enter in its favor on Counts I and II of the Complaint. DuoTech,

respectfully, objects to certain proposed conclusions of law rendered by the Bankruptcy Court on

the grounds that the Court granted Plaintiff's unsought relief by proposing that Plaintiff assumed

the DuoTech License and ignored the Plaintiff's lack of standing to pursue bankruptcy causes of

action resulting in the Court's improper determination of the patent ownership issue which was

never properly before it.

DATED: July 7, 2008

DUOTECH HOLDINGS, INC.; DUOTECH PACKAGING, LLC
and BRUCE CARLSON, Defendants

By: /s/ Daniel P. Albers
    One of their Attorneys

Daniel P. Albers (Atty. No. 6185037)
Steven E. Anderson (Atty. No. 6292286)
**BARNES & THORNBURG LLP**
One North Wacker Drive, Suite 4400
Chicago, IL 60606
(312) 357-1313
Fax: (312) 759-5646
Daniel.Albers@btlaw.com
sanderson@btlaw.com

CHDS01 SANDERSON 473121v5

13

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| COMPAK CORPORATION, | ) | Case No. 02 B 22594 |
| | ) | Honorable Bruce W. Black |
| Debtor. | ) | Chapter 7 |
| | ) | |
| COMMUNION PACKAGING | ) | Case No. 02 B 39188 |
| COMPANY, an Illinois corporation, | ) | Chapter 7 |
| | ) | Honorable Bruce W. Black |
| Debtor. | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| THE COMPAK COMPANIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 04 A 04028 |
| | ) | |
| v. | ) | |
| | ) | |
| JIMMIE L. JOHNSON, RON BOWEN, | ) | |
| BRUCE CARLSON, PATPAK, INC., | ) | |
| DUOTECH HOLDINGS, INC., | ) | |
| DUOTECH PACKAGING, LLC, AND | ) | |
| OLMARC PACKAGING COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## JOINDER OF TRUSTEES TO OBJECTIONS TO THE PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO BANKRUPTCY RULE 9033 AND LOCAL RULE 9033-1

David Leibowitz, trustee of the Estates of Compak Corporation and Communion Packaging Company, and Joseph A. Baldi, trustee of the estate of Jim Johnson (herein collectively the "Trustees"), as parties-in-interest in these proceedings, hereby join the Objections to the Proposed Finding of Fact and Conclusions of Law Pursuant to Bankruptcy Rule 9033 and Local Rule 9033-1, docket number 223, filed on July 7, 2008 by DuoTech Holdings, Inc., DuoTech Packaging LLC and Bruce Carlson.

Dated: July 25, 2008

Respectfully submitted,

DAVID P. LEIBOWITZ, not individually or
personally, but solely in his capacity as Trustee
of the Compak and Communion bankruptcy
estates

By:/s/ David P. Leibowitz
David Leibowitz
Leibowitz Law Center
420 Clayton Street
Waukegan, IL 60085
*Counsel to Chapter 7 Trustee*
*David P. Leibowitz*

JOSEPH A. BALDI, not individually or
personally, but solely in his capacity as Trustee
of the Johnson bankruptcy estate

By:/s/ Joseph A. Baldi
Joseph A. Baldi (00100145)
JOSEPH A. BALDI & ASSOCIATES PC
19 South LaSalle Street
Suite 1500
Chicago, Illinois 60603
Telephone: (312) 726-8150
Facsimile: (312) 332-4629
*Counsel to Chapter 7 Trustee*
*Joseph A. Baldi*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILINOIS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 02 B 22594 |
| COMPAK CORPORATON, | ) | Chapter 7 |
| | ) | Honorable Bruce W. Black |
| Debtor. | ) | |
| | ) | |
| | ) | |
| COMMUNION PACKAGING COMPANY, | ) | Case No. 02 B 39188 |
| | ) | Chapter 7 |
| Debtor. | ) | Honorable Bruce W. Black |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | Chapter 7 |
| THE COMPAK COMPANIES, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 04 A 04028 |
| v. | ) | |
| | ) | |
| JIMMIE L. JOHNSON, RON BOWEN, BRUCE | ) | |
| CARLSON, PATPAK, INC., DUOTECH HOLDINGS, | ) | |
| INC., DUOTECH PACKAGING , LLC, and OLMARC | ) | |
| PACKAGING COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

### THE COMPAK COMPANIES, LLC'S OBJECTIONS TO THE BANKRUPTCY COURT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff, The Compak Companies, LLC ("TCC"), by its attorneys, Shaw Gussis Fishman

Glantz Wolfson & Towbin LLC, and pursuant to the Federal Rules of Bankruptcy Procedure

9033(b), object as follows to the Proposed Findings of Fact and Conclusions Of Law:

### Objections to Proposed Findings of Fact

TCC has limited objections to the Bankruptcy Court's Proposed Findings of Fact

("Proposed Findings"). First, TCC objects, in part, to the Proposed Findings at ¶ 13 which

states:

{6069 OBJ A0212451.DOC}

> This latest [DuoTech License Agreement] was dated August 29, 2001, and purported to modify a similar license agreement *draft* circulated among the parties in July 2001.

(emphasis added). The word "draft" should be omitted. There is nothing in the record that would even remotely suggest that the July License Agreement was a "draft." Indeed, even a cursory review of the instrument (which was attached as Exhibit 32 to TCC's Appendix of Exhibits To Its Local Rule 7056(A)(2)(b) Statement of Additional Facts That Preclude the Entry of Summary Judgment (hereinafter, the "Appendix")[1], belies the faintest suggestion that it was a "draft." To the contrary, it was signed by both parties under the recitation" "IN WITNESS WHEREOF, this Agreement becomes a complete and binding Contract upon its acceptance as signified by the signatures below, whether made in person or by facsimile on this date of July 10, 2001." This was, indeed, a finalized contract (not merely a draft).

The is further evidenced by contemporaneous admissions of DuoTech's principle, Bruce Carlson, who shortly thereafter, on August 4, 2001, advised his colleagues of the need to "redo our contract with compak," and explained further:

> The original problem was that [DuoTech ] spent a lot of money and time 'dummying-down' our original license with [Compak], so it would sail right through. now that is coming back to haunt us since other companies need to see real legalese. let me be perfectly clear: *this is not a problem—it is a language issue*.

*See* Appendix Exhibit 33*(emphasis added)(capitalization as in original)*. Similarly, on August 14, 2001, in a memo to a prospective investor in DuoTech who inquired into whether there was a deal in place with Compak, Carlson clarified that "we have always had a contract with compak" and boasted about DuoTech's control over the royalty payments. *See* Appendix Exhibit 34 (capitalized as in original).

---

[1]    Each of the Appendix Exhibits cited in these objections are submitted herewith.
{6069 OBJ A0212451.DOC}

TCC believes that the Bankruptcy Court's use of the term "draft" in the Proposed Findings at ¶ 13 may have been merely an oversight, as the other Proposed Findings of Fact and Conclusions of Law otherwise uniformly reference multiple license agreements between the parties and expressly refer to a July License Agreement. *See* Proposed Findings at ¶¶ 12, 14 and 15 and Proposed Conclusions of Law (Count II) at ¶¶ 5, 6. Indeed, even DuoTech conceded, that the July License Agreement was a contract. *See* DuoTech Defendants' reply in support of motion for summary judgment at p. 10, in which they argue that the August 2001 Agreement replaced "all prior agreements." As such, the term "draft" should be stricken from the Court's findings.

Second, TCC objects to the Proposed Findings at ¶ 19 which states: "The Notice [of the Sale Motion] was not served on any of the DuoTech Defendants." It is undisputed, that the Notice was, in fact served upon Ron Bowen (at two separate addresses) and Dr. Kenneth Binkley. Both Bowen and Dr. Binkley were Members of DuoTech Holdings LLC and DuoTech Sales LLC. *Compare* Notice (Appendix 56) with chart of DuoTech "Ownership." (Appendix 57). Moreover, the Notice was sent to Glenn Johnson, who DuoTech described as a member (together with Bowen and Dr. Binkley) of its "Management Team." *Compare* Notice (Appendix 56) with DuoTech Company Profile (Appendix 59, at p. 25).

As such, to be accurate, the Court's findings should state as follows: "The Notice [of the Sale Motion] was not served directly on any of the DuoTech Defendants, although it was served on three of its Members and/or members of its management team."

TCC reserves its right to respond pursuant to Federal Rules of Bankruptcy Procedure 9033(b) to any objections to the Proposed Findings posited by the DuoTech Defendants or any other party.

## Objections to Proposed Conclusions of Law

TCC has limited objections to the Bankruptcy Court's Proposed Conclusions of Law (the "Proposed Conclusions"). The Proposed Conclusions (Count I) at ¶ 3, state as follows:

> The imposition of a constructive trust to transfer legal title to the plaintiff is needless because Compak, had, **and continues to have**, legal title to the patents.

(emphasis added). The phrase, "and continues to have," should be omitted. As the Bankruptcy Court correctly concluded, "[a]ll rights, title and interest in the '351, '388, and '312 patent vested in Compak by operation of law when the patents were issued." *See id. at* ¶ 2. Thereafter, Compak sold its assets to BMJ, which assigned those assets to TCC. *See* Proposed Findings at ¶ 4.

Plainly, any and all rights in the 351, '388, and '312 patents vested in Compak prior to its bankruptcy by operation of law were included in its sale of assets to BMJ. Indeed, at the outset of the auction process, Compak's counsel expressly acknowledged that the participants were bidding "for all of the assets of Compak Corporation," including its rights "to any intellectual assets." *See* Appendix 60 at pp. 2, 4. After BMJ was the successful bidder, the sweeping nature of the conveyance was memorialized in the Bankruptcy Court's March 25, 2003 Order approving the sale to BMJ of all of Compak's "Business Assets," defined exceedingly broadly to include "all of [the] business real and personal property" and merely excluding "bankruptcy causes of action, and related claims and cash." *See* Appendix Exhibit 62. Thus, to the extent that Compak was vested with actual property rights to the '351, '388, and '312 patents, those rights were plainly transferred to BMJ as part of the sale.

{6069 OBJ A0212451.DOC}

In the alternative, if Compak merely had the right to bring a cause of action against Jimmie Johnson and/or Patpak to compel the formal assignment of the '351, '388, and '312 patents to Compak, that right was also transferred to BMJ as part of the sale. Indeed, the March 26, 2003, Bill of Sale operates to sell, assign, transfer and set over to BMJ "all of the Seller's rights, title and interest in and to all of the personal property of the Seller, *tangible and intangible*, wherever located, including without limitation all of Seller's business as a going concern, goodwill, [and] *choses in action… ."* *See* Appendix Exhibits 66 (emphasis added).

Once again, TCC believes that the Bankruptcy Court's use of the phrase "and continues to have," may have been merely an oversight, as the paragraph ultimately concludes that the imposition of a constructive trust is unnecessary to effectuate the transfer of the patents *"to the Plaintiff"* (TCC). As such, to be accurate, this Court should conclude "The imposition of a constructive trust to transfer legal title to the plaintiff is needless because Compak, had legal title to the patents, which it conveyed to BMJ and are now owned by TCC."

TCC reserves its right to respond pursuant to Federal Rules of Bankruptcy Procedure 9033(b) to any objections to the Proposed Conclusions posited by the DuoTech Defendants or any other party.

Respectfully submitted,

Dated: July 25, 2008

**COMPAK CORPORATON**

By:  ___/s/ George J. Spathis_____
One of its Attorneys

Robert M. Fishman (3124316)
George J. Spathis (6204509)
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, IL 60610
Tel: (312) 541-0151
{6069 OBJ A0212451.DOC}

{6069 OBJ A0212451.DOC}

## CERTIFICATE OF SERVICE

George J. Spathis, an attorney, certifies that service of the above and foregoing pleading was accomplished through the Electronic Notice for Registrants on the attached CM/ECF service list, as well as upon the attached mail service list by first-class U.S. Mail, postage prepaid, on this 25t[h] day of July, 2008. Copies of documents required to be served by Fed. R. Civ. P. 5(a), made applicable by Fed. R. Bankr. P. 7005, have been served.

### CM/ECF Service List

The following is the list of attorneys who are currently on the list to receive e-mail notices for this case:

Donna B. Wallace
dbwallace@ameritech.net

Christopher Combest
ccombest@quarles.com

Faye B. Feinstein
fbf@quarles.com

Charles Sanford Riecke
criecke@seyfarth.com

Ariel Weissberg
ariel@weissberglaw.com

Steven E. Anderson
sanderson@btlaw.com

George J. Spathis
gspathis@shawgussis.com

### Mail Service List

Steven J. Rosenberg
53 West Jackson, Suite 224
Chicago, IL 60604

/s/ George J. Spathis

# Appendix Ex. 32

# Compak and Duo-Tech
## Agreement
### July 9, 2001

**THIS AGREEMENT** is entered into between Compak Corporation ("Compak") and Duo-Tech ("Duo-Tech") and supersedes any previous Agreements between the parties.

## Section 1. DEFINITIONS

Whenever the parties of this Agreement, Compak or Duo-Tech, are named in this Agreement, such a specification designates both parties as themselves, and/or their assigns or successors.

## Section 2. GRANTS OF RIGHTS

For the value received of $1.00, Compak gives non-exclusive rights to Duo-Tech to market, sell, manufacture, and distribute all products ("Stipulated Product") of the Process (the "Process" is collectively known as U.S. Patents 5,246,106; 5,456,351; 5,584,388; 5,746,312; and all derivative works of the patents). Compak is the sole assign of the Process by the inventor, Jimmie L. Johnson.

## Section 3. TERM OF GRANTS

Said rights will endure until the end of each patent's term providing that the Minimum Royalty Fee (see Royalty Schedule) is paid to Compak, by Duo-Tech, for each calendar year. However, all Stipulated Product sold must be accounted for and paid for on a quarterly calendar basis. Failure to pay royalties that are due shall render this Agreement null and void.

## Section 4. ROYALTY SCHEDULE

### Royalty Schedule

| Year | Communion Cup Royalty Rate* | Product "A" Royalty Rate* | Product "B" Royalty Rate* | Minimum Royalty Fee Due Annually** |
|------|------|------|------|------|
| 2001 | 35% of Gross Profit*** | $0.000 | $0.000 | $0.00 |
| 2002 | 30% of Gross Profit*** | $0.030 | $0.050 | $500,000 |
| 2003 | 25% of Gross Profit*** | $0.025 | $0.040 | $750,000 |
| 2004 | 20% of Gross Profit*** | $0.020 | $0.030 | $1,000,000 |
| 2005-through end of patent life | 15% of Gross Profit*** | $0.015 | $0.025 | $1,500,000 |

\* Royalty rate applies to each unit sold.

\** Annual payment must not be less than this amount regardless of units sold.

\*** Gross Profit is the difference between the Cost of Manufacturing and the Net Sale Price.

➤ Product "A" Definition: Food-related products.
  ○ Food-Pak, Nutri-Pak, Outdoor-Pak, etc.

➤ Product "B" Definition: All other products.
  ○ Consumer-Pak, Dental-Pak, Oral Cosmetics, Pharmaceutical-Pak, etc.

➤ Any Exclusive Stipulated Product (see Section 7) will be allowed a 25% Royalty Reduction for its first three years of sales.

## Section 5. QUALIFICATION OF AGREEMENT

A qualification of this Agreement is that no Stipulated Product shall be sold by Duo-Tech to, or for, restricted countries or companies listed here:

| | |
|---|---|
| -China | -Mexico* (Only for sales of the Celebration/Remembrance Cup) |
| -Kellogg's* | -Coca Cola (Only the entity of its joint business venture with P&G)* |
| -Bayer* | -Kraft/Nabisco/Phillip Morris* |

*Restriction shall be removed if no definitive agreement/program is underway with Compak by 12/31/2001.

## Section 6. DESIGNATION AS MANUFACTURING AGENT

This Agreement designates Duo-Tech as a manufacturing agent of Compak for Communion Cups. Such a designation requires that Duo-Tech provide components and pay for manufacturing runs to fill credit-approved customer orders from Compak. Compak will provide the machinery for this manufacturing process. All customer charges (as stipulated by Compak) and the collection of such shall be done by Duo-Tech. Compak shall not stipulate customer charges less than the manufactured cost of such. Upon receipt of payment for such orders, Duo-Tech will pay to Compak the difference between the cost of the manufactured product and the collected charge to the customer. Duo-Tech will charge Compak an administration and inventory transaction fee for this service. Such a fee will not exceed ten percent of the cost of the manufactured product sold. Duo-Tech will have the right to manufacture its own product for sales, using Compak's machinery, but must give priority in the manufacturing schedule to Compak's orders.

## Section 7. EXCLUSIVE RIGHTS

It is agreed that Compak will provide exclusive protection to Duo-Tech for the marketing, selling, manufacturing, and distribution of Stipulated Product that has been solely developed by, or for, Duo-Tech. Such a protection must begin upon the immediate written request of Duo-Tech and shall not terminate until Duo-Tech gives written notification that said Stipulated Product no longer requires such protection. Said protection will consist of the refusal of Compak to allow any person or entity any licensing rights to use its Process to package a similar product to that of the protected product.

## Section 8. MISCELLANEOUS

8.1 Upon written approval from Compak, this Agreement may be assigned to other parties, either in part or in whole, by Duo-Tech.

8.2 If any provision of this Agreement is found or declared to be invalid or unenforceable by any court or other competent authority having jurisdiction, such finding or declaration shall not invalidate any other provision hereof and this Agreement shall thereafter continue in full force and effect.

8.3 This Agreement is being executed in the city of Chicago, Illinois, and shall be interpreted and constructed to be in accord with the laws of the State of Illinois, and there shall be the venue for all issues that may arise.

IN WITNESS WHEREOF, this Agreement becomes a complete and binding Contract upon its acceptance as signified by the signatures below, whether made in person or by facsimile, on this day of July 10, 2001.

Jimmie L. Johnson – Compak                     Bruce Carlson - Duo-Tech

## Section 5. QUALIFICATION OF AGREEMENT

A qualification of this Agreement is that no Stipulated Product shall be sold by Duo-Tech to, or for, restricted countries or companies listed here:

| | |
|---|---|
| -China | -Mexico* (Only for sales of the Celebration/Remembrance Cup) |
| -Kellogg's* | -Coca Cola (Only the entity of its joint business venture with P&G)* |
| -Bayer* | -Kraft/Nabisco/Phillip Morris* |

*Restriction shall be removed if no definitive agreement/program is underway with Compak by 12/31/2001.

## Section 6. DESIGNATION AS MANUFACTURING AGENT

This Agreement designates Duo-Tech as a manufacturing agent of Compak for Communion Cups. Such a designation requires that Duo-Tech provide components and pay for manufacturing runs to fill credit-approved customer orders from Compak. Compak will provide the machinery for this manufacturing process. All customer charges (as stipulated by Compak) and the collection of such shall be done by Duo-Tech. Compak shall not stipulate customer charges less than the manufactured cost of such. Upon receipt of payment for such orders, Duo-Tech will pay to Compak the difference between the cost of the manufactured product and the collected charge to the customer. Duo-Tech will charge Compak an administration and inventory transaction fee for this service. Such a fee will not exceed ten percent of the cost of the manufactured product sold. Duo-Tech will have the right to manufacture its own product for sales, using Compak's machinery, but must give priority in the manufacturing schedule to Compak's orders.

## Section 7. EXCLUSIVE RIGHTS

It is agreed that Compak will provide exclusive protection to Duo-Tech for the marketing, selling, manufacturing, and distribution of Stipulated Product that has been solely developed by, or for, Duo-Tech. Such a protection must begin upon the immediate written request of Duo-Tech and shall not terminate until Duo-Tech gives written notification that said Stipulated Product no longer requires such protection. Said protection will consist of the refusal of Compak to allow any person or entity any licensing rights to use its Process to package a similar product to that of the protected product.

## Section 8. MISCELLANEOUS

8.1 Upon written approval from Compak, this Agreement may be assigned to other parties either in part or in whole, by Duo-Tech.

8.2 If any provision of this Agreement is found or declared to be invalid or unenforceable by any court or other competent authority having jurisdiction, such finding or declaration shall not invalidate any other provision hereof, and this Agreement shall thereafter continue in full force and effect.

8.3 This Agreement is being executed in the city of Chicago, Illinois, and shall be interpreted and constructed to be in accord with the laws of the State of Illinois, and there shall be the venue for all issues that may arise.

IN WITNESS WHEREOF, this Agreement becomes a complete and binding Contract upon its acceptance as signified by the signatures below, whether made in person or by facsimile, on this day of July 9, 2001.

_____          _____
Jimmie L. Johnson – Compak                 Bruce Carlson - Duo-Tech

# Appendix Ex. 33

| From: | Bruce Carlson |
|---|---|
| To: | Arnie Carlstrom; |
| CC: | Rick Alvarado; Rex Rasmussen; Ken Binkley; Joel Shapiro; Jim Blankshain; Glenn Johnson; Ed Greenberg; David Seitelman; den@motb.com; |
| Subject: | this week |
| Date: | Saturday, August 04, 2001 9:18:55 AM |
| Attachments: | |

everything has progressed with oxyfresh. that completion is right around the corner, HOWEVER, they have had us working furiously about protecting their product after we get it and they have wanted us to redo our contract with compak since we are using a patented packaging and that is the company that will see what we're doing. (OKAY, that wasn't the best grammar but you get the point. my vacation ends tomorrow and i need a rest. try keeping up with all of my children in disney for two weeks and see if you're not tired.)

the original problem was that we spent a lot of money and time "dummying-down" our original license with them so that it would sail right through. now that is coming back to haunt us since other companies need to see real legalese. let me be perfectly clear: this is not a problem - it is a language issue. by tuesday or wed, i will present a new license to compak. if they don't accept it: we package our mouthwash differently. i have accenture looking into alternatives for us now. two of their clients have packaging in their arsenals that could do us well as they are (accenture has not approached anyone on our behalf: they're just checking their files for us).

we also have the cost of the product now (the mouthwash itself) and compak is going to have to lower its royalty to us or once again: we take an alternative. the bottom line is that if compak signs up with us, we should be able to rework the oxyfresh license by the end of this week: let's say by a week from this wednesday to know that we are completely finished. i'll take care of it: DON'T WORRY.

i hope david s's meeting is shaping up. my input would be that if everyone can;t make it: we go ahead with those that can. last i heard: there was a bid in for aug. 28.

ed is following up in south america with his person that he sent down there. NOT ONE SINGLE LEAD THAT COMPAK HAS GIVEN US HAS PANNED OUT so ed is doing it himself. kudos. i have worked out an approach with dr. mcelheny (from ed) who owns the largest company in the country that sells church hard goods (pews, altars, etc.). he is in sarasota and i spoke to him extensively this past week so that we could form a strategic partnership. it needs to be developed, but we're on our way.

we have a meeting monday morning (ed, dave s., and me) about aspirin-paks (?) brought from dr. ken. everything else can wait a few days 'til i'm alive again.

bruce

DUO00638

# Appendix Ex. 34

| | |
|---|---|
| **From:** | Bruce Carlson |
| **To:** | David L. Seitelman; |
| **CC:** | |
| **Subject:** | Re: this week |
| **Date:** | Tuesday, August 14, 2001 3:43:46 PM |
| **Attachments:** | |

1. we pay a royalty of 35% of our profit on any product we stipulate as being exclusive and 25% on non-exclusive products. we figure the cost of the product under gaap so we control everything. it can't get any better than that.

2. we have always had a contract with compak. sorry, you were given 30 days and i wouldn't have a problem with other delays but i gave you some extra time on the compak signing. since you are taking legal advice, then this probably won't meet muster until we meet on the 28th and that is not acceptable. we are marketing 24-mouthwash regardless of how we package it so there is a company in place with two corporations already. i have a meeting with marchetti from olmarc tomorrow or the next day (his girl needs to get back to me) and all stock that has not been accounted for to date is on the table for him. should you not want to put any money in (which is fine) then you will get 1-2% without deposit (if you want it) because i want you as part of the team. that is the way things would stand now. i would have called you today anyway to discuss this but your email addressed it.

3. the only offices that will be available are those in the holding company. we have a structure in the llc's where officers and management are chosen a different way. as far as operationally, in the holding company, i don't care who the officers are but they will have to be those who can do this full-time (if the position calls for it) to keep tabs on the entire network. i remember that you can only give 5 hours per week and i don't see your role as being operational - but consultative.

thx, bruce

----- Original Message -----
From: David L. Seitelman

**To:** Bruce Carlson
**Sent:** Tuesday, August 14, 2001 3:52 AM
**Subject:** RE: this week

Bruce:
Three things:

1. I reviewed the proposed Compak agreement. I think that it has the typical legal mumbo-jumbo. However, so I am not surprised as well as everyone else, what is the royalty rate?
2. My check did not make it into the mail after all. My lawyer suggested waiting until the Compak license was signed. Is this a problem for you?
3. In creating the corporate structure, I believe that some form of operating role is the best for me as this would leverage my background and strengths. Perhaps, COO with you as Chairman and CEO. In addition, I believe that we have the S&M piece well covered.

Talk with you soon. I am in the office if you need me.

David L. Seitelman
E-mail: dseitel@megsinet.net
Cell Telephone: 847-274-1534
Daytime Telephone: 847-634-6400 x253

# Appendix Ex. 56

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**EOD** MAR 0 6 2003

IN RE:
    Compak Corp.        )    CASE NO. 02-22594
                    )    CHAPTER 11
            DEBTOR    )    JUDGE BLACK

In re:
    Communion Packaging Co.    )    CASE NO. 02-39188
                    )    CHAPTER 11
            DEBTOR.    )    JUDGE BLACK

## NOTICE OF MOTION

TO:    See attached Service List

Please take notice that on the 13th day of March, 2003 at 2:00 p.m., Michael J. Davis of the firm of Davis & Hands shall appear before the Honorable Judge Black, or any judge sitting in his stead, in Courtroom No. 615 in the United States Bankruptcy Court, for the Northern District of Illinois, Eastern Division, located at 219 South Dearborn, Chicago, Illinois, and present MOTION TO SELL BUSINESS REAL AND PERSONAL PROPERTY AND TO SHORTEN NOTICE PERIOD.

DAVIS & HANDS

By:    *M. J. D*
        One of Debtor's attorneys

Michael Davis
Davis & Hands
1301 W. 22nd St., St. 603
Oak Brook, Ill. 60521
630-574-0123

F I L E D
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

MAR 0 6 2003

KENNETH S. GARDNER, CLERK
PS REP. - DR

## PROOF OF SERVICE

The undersigned, being first duly sworn on oath, deposes and says that she served a copy of the foregoing Notice of Motion and attached Motion by mailing a copy of this document to the above named parties on February 28, 2003.

116

riel Weissberg, Esq.
/eissberg and Associates, Ltd.
01 S. LaSalle St. 403
hicago, IL 60605

Compak Corporation
980 N. Michigan Avenue
Suite 1400
Chicago, IL 60611

Advent Christian General Conf.
P.O. Box 23152
Charlotte, NC 28227-3152

mbassadors for Christ
859 S. Ashland Ave.
hicago, IL 60620-4253

American Express
Suite 0002
Chicago, IL 60679

American Freightways
P.O. Box 910150
Dallas, TX 75391-0105

marican Speedy
930 N. Harlem Ave.
erwood Heights, IL 60706

Ameritech
P.O. Box 4520
Carol Stream, IL 60197-4520

Ameritech
Law Department, Suite 27A
225 W. Randolph Dr.
Chicago, IL 60606

nne Jentry-Green, Esq.
aw Offices of Anne Jentry-Green
01 N. Michigan, Ste. 1300
hicago, IL 60611

Annie Garrett
ATTEMPTED NOT KNOWN
IL

Architectual Impressions
c/o Mr. Thomas Kreis
1730 W. Algonquin Road
Arlington Heights, IL 60005-3405

rlington Tool Inc.
.O. Box 130
ary, IL 60013

Ascher Brother Co., Inc.
3033 W. Fletcher Street
Chicago, IL 60618

AT&T Capital Leasing Services
NOT DELIVERABLE AS ADDRESSED

T&T Louisville
.O. Box 9001309
ouisville, KY 40290-1309

AT&T Phoenix
P.O. Box 78522
Phoenix, AZ 85062-8522

AT&T Wireless Services-Chicago
P.O. Box 8220
Aurora, IL 60572-8220

vaya Financial Scrvices
.O. Box 93000
:hicago, IL 60673-3000

Avery Paper & Office Products
P.O. Box 18453
Chicago, IL 60618-0453

Avis Rent A Car Systems, Inc.
30 Centre Pointe Dr.
Virginia Beach, VA 23462

.M.J. Partnership
/o Russell C. Green
05 W. Madison, Ste. 700
:hicago, IL 60602

Baker & McKenzie
One Prudential Plaza
130 E. Randolph Drive
Chicago, IL 60601

Bank of America
231 South LaSalle Street
Chicago, IL 60697

ank of Hoven
JNDELIVERABLE AS ADDRESSED

Barrington Transportation Co.
315 S. Hager Avenue
Barrington, IL 60010

Bemar Enterprises
NO SUCH NUMBER

litt and Gaines, P.C.
118 W. Adams, Ste. 1600
:hicago, IL 60606

Blue Cross Blue Shield of IL.
P.O. Box 1186
Chicago, IL 60690-1186

Broadman & Holman Publishers
Cust Accounts Center
P.O. Box 134
Nashville, TN 37202-0154

02/28/2003  14:13   3122360678                LOPEZ & HARDING                    PAGE  03/25

siness Development Advisors
0 N. Michigan Ave., Stc 14
icago, IL 60611

Cam Thomas
52 Thomas Road
Underwood, CA 98651

Carter & Sons
FORWARDING ORDER EXPIRED


EDA
8 S. LaSalle St.
ite 1900
icago, IL 60604-1119

Chase Bank Visa
P.O. Box 52195
Phoenix, AZ 85072-2195

Chicago Chiropractic Center
30 South Michigan Ave.
Suite #400
Chicago, IL 60603


ristian Brothers Dist., Inc.
42 Virgil Blvd.
w Orleans, LA 70122

Church Consulting Services
Attn: Billy Melvin
7 Old Trail Road
Englewood, FL 34223

CIT Communications Finance Corp.
1 CIT Drive, Ste. 4104A
Attn: Bankruptcy Dept.
Livingston, NJ 07039


ffice Unlimited
06 S. Clinton
icago, IL 60607

Cohen, Fluhr & Gonzalez, PC
1429 Walnut Street
Suite 1500
Philadelphia, PA 19102-3218

Commonwealth Edison
Bill Payment Center
555 Waters Edge
Chicago, IL 60668


mmunion Packing Corporation
0 N. Michigan Ave., Ste. 1400
icago, IL 60611

Computer Tech Inc.
ATTEMPTED NOT KNOWN

Concierge Unlimited
20 N. Wacker Drive
Chicago, IL 60606


RC
O, Box 13397
iladelphia, PA 19101-3397

Custom Cut Woodwork, Inc.
4447 W. Armitage Ave.
Chicago, IL 60639

Dan Morris
ADDRESS UNKNOWN


rell Robinson
NDELIVERABLE AS ADDRESSED

Daryl Burton
Global Financial Services, Inc.
336 Camdon Ave.
Calumet City, IL 60409

Daryl Huttula
Global Financial Services, Inc.
336 Camdon Ave.
Calumet City, IL 60409


avid Huttula
25 Barrington Drive
est Linn, OR 97068

David LoSan Ho
c/o Compak Corporation
980 N. Michigan Ave., Ste. 1400
Chicago, IL 60611

David Peffer
3919 Mendocino Lane #707
Sheboygan, WI 53083


ellert And Walters
o James H. Walters, Esq.
10 SW Fourth Ave., Ste. 1101
ortland, OR 97204-2304

Deutsche Financial Services
950 Winter St., Ste. 2000
Waltham, MA 02451-1426

DHL Worldwide Express
Accounts Receivable
P.O. Box 78016
Phoenix, AZ 85062-8016


ick Anderson
428 W. Mercer Way
ercer Island, WA 98040

Diversified Paper Co., Inc.
FORWARDING ORDER EXPIRED

Diwu Chen
c/o Compak Corp.
980 N. Michigan Ave., Ste. 1400
Chicago, IL 60611

uglas R. Walega
chitect, P.C.
32 Wesley Ave.
rwyn, IL 60402

Douglas Schiff
4913 Bluebird Lane
Racine, WI 53406-1205

Dr. Patricia Gilleran
UNDELIVERABLE AS ADDRESSED

. Roger M. Burkley
35 E. 87th St.
icago, IL 60619

Dr. Yong G. Cheong
306 Birdie Drive
Warrenton, OR 97146

Drop Ship Express
2725 Wayzata Blvd. West
Long Lake, MN 55356-0847

Sam Jones Distributor, Inc.
perior Lighting
98 S. Atlanta Rd.
yrna, GA 30080

Earthlink Inc.
P.O. Box
Atlanta, GA 30357-0645

Ed Hart
909 West Point Road
Lake Oswego, OR 97034

ward E. Judge & Sons, Inc.
O. Box 866
stminister, MD 21158-0866

Elias Munoz, Jr.
NOT AT THIS ADDRESS

Emily M. Cohen & Associates
1429 Walnut Street
Suite 1500
Philadelphia, PA 19102

eoutive Financial Service
755 Boones Ferry Road
ilsonville, OR 97070

Federal Express Corporation
P.O. Box 1140
Memphis, TN 38101-1140

Fidelity Leasing/EAB Leasing Corp.
c/o Teller Lovit (Attn: A. Raphael)
11 E. Adams, 8th Floor
Chicago, IL 60603

st Church of the Nazarene
n: Debbie Reese
35 Consaul Rd.
enectady, NY 12304

First Portland Corp.
c/o Carol C. Riley, Esq./First Corp
7145 S.W. Varns St.
Portland, OR 97233

Firstcorp
7145 S.W. Varns Street
Portland, OR 97229-8057

rt Dearborn Life INS Co.
0 East Randolph
icago, IL 60601-5099

Francotyp-Postalia
P.O. Box 4272
Carol Stream, IL 60197-4272

Frank J. Kokoszka, Esq.
Kokoszka & Janczur, P.C.
140 S. Dearborn, Ste. 1610
Chicago, IL 60603-5202

Illine Printing Inc.
1 W. Chicago Ave.
icago, IL 60610

GE Capital BAF
P.O. Box 402363
Atlanta, GA 30384-2363

George Frank
39 w. 971 Ridgewood Drive
Saint Charles, IL 60175

en Johnson
Carriage Court
k Brook, IL 60523

Global Com Inc. USA
P.O. Box 809123
Chicago, IL 60680-9123

Global Financial Services Inc.
326 Crandon St.
Calumet City, IL 60409

MAC
O. Box 51014
rol Stream, IL 60125-1014

Gospel Experience Ministries
2131 West 79th Street
Chicago, IL 60620

Gregory Young
3003 Pine Meadows Circle
Carpentersville, IL 60110

02/28/2003  14:13   3122368678          LOPEZ & HARDING          PAGE  05/25

endolyn Calvert Baker
1 East 69th Street
artment 6D
w York, NY 10021

Habitat Co.
555 W. Madison
Chicago, IL 60661

Hassle USA Inc.
1210 Campus Drive West
Morganville, NJ 07751

zsia Verpackungsmaschnen GmbH
Bryan Cermak
5 Coolidge Highway, Ste 107
y, MI 48084

HCM Investments
c/o Winston & Strawn
35 W. Wacker Dr., Ste. 3260
Chicago, IL 60601

Health Plan Services
CLOSED ACCOUNT

ritage Int'l. Trade Assoc.
50 S. Blackstone
icago, IL 60619

Highland Community Bank
c/o Statman Harris Siegel
333 W. Wacker Dr., Ste. 1710
Chicago, IL 60606

Hinckley Spring Water Co.
Attn. Accounts Receivables
P.O. Box 1888
Bedford Park, IL 60449-1888

lland Capital Management, L.P.
Winston & Strawn
West Wacker Drive
icago, IL 60601

HSS Incorporated
c/o IDES
4836 North Elston Ave.
Chicago, IL 60630

Hueck Folls LLC
5304 Bundle Flower Court
Naperville, IL 60564

mana, Inc.
mana/Employees Health
O. Box 3027
lwaukee, WI 53201-3027

ICI Worldwide, Inc.
175 W. Bonita Ave.
P.O. Box 8
San Dimas, CA 91773

Ideal Box Company
Attn: Accounts Receivable
23159 Treasury Center
Chicago, IL 60694-3100

Dept. of Employment Security
nkruptcy Unit; 3rd Floor
1 S. State
icago, IL 60605

IL Dept. of Employment Security
c/o Office of the IL Atty. General
401 S. State., Ste. 700
Chicago, IL 60605

Illinois Department of Revenue
Bankruptcy Section Level 7-425
100 W. Randolph Drive
Chicago, IL 60601

age Bank- Chicago
O. Box 847269
allas, TX 75284-7269

Imperial Premium Finance Inc.
P.O. Box 0570
Carol Stream, IL 60188

Indico Bellum LLC
1200 Shermer Rd., #20A
Northbrook, IL 60062

ifotel Publications
Coton Lane
hamplain, NY 12919

Internal Revenue Service
Mail Stop 5010 CHI
230 S. Dearborn Street
Chicago, IL 60604

Ira Williams
c/o Compak Corporation
980 N. Michigan Ave., Ste. 1400
Chicago, IL 60611

Christopher Kune
02 S. Cook St., Ste. 205
arrington, IL 60010

Jefferson Smurfit Corp.
401 Alton St.
Alton, IL 62002

Jerry N. Oancho
655 Shastle Circle
Houston, TX 77024

im Cornett
4611 S.E. Rivercrest Drive
ancouver, WA 98683

Jimmie L. & Bonnie Johnson
c/o Compak Corporation
980 N. Michigan Ave., Ste. 1400
Chicago, IL 60611

John Phillips
80 Allen Bond Drive
Decatur, IL 62521

02/28/2003  14:13    3122368678                    LOPEZ & HARDING                    PAGE  06/25

n Redmon
Amelita Redmon
 Cleveland St.
anville, MS 38701

Johnson Bag Company
1210 St. Charles St
Elgin, IL 60120-8445

Jones Lang LaSalle Inc
200 E. Randolph Dr.
Chicago, IL 60601

d Granlund
11 SW BayCreek Rd.
e Oswego, OR 97035

Katie Claypool
121 Christiana Circle
Wheaton, IL 60187

Katten Muchin & Zavis
525 W. Monroe St.
Ste. 1600
Chicago, IL 60661-3693

ly Temporary Service
n: Rosemary Prior
) W. Big Bear Road
y, MT 48084

Kelly's Personal Communication
INCORRECT ADDRESS

Ken Floerke
121 Buckelew Street
Sausalito, CA 94965

ndal Container Corporation
), Box 94231
ttle, WA 98124-6531

Kenneth A. Binkley
183 S. Bloomingdale Rd.
Suite 102
Bloomingdale, IL 60108

Klockner Medipak, Inc.
c/o M.E. Gibson Jr.,Tremblay & Smith
P.O. Box 1585
Charlottesville, VA 22902

MG, LLP
 Reginald Read, Partner
; East Wacker Drive
icago, IL 60601-5212

Krystal Press Publishing
70 West Madison
Suite 1401
Chicago, IL 60602

Lakeside Building Maintenance
ATTEMPTED NOT KNOWN
 IL

uis A. Holland
 Winston & Strawn
W, Wacker Dr., Suite 3260
icago, IL 60601
fw. Michael Jones

Lowndes Hill Baptist Church
1516 Lowndes Hill Road
Greenville, SC 29607

Lucent Technologies
600 Mountain Ave.
New Providence, NJ 07974-0636

sent Technologies Inc.
0 Mountain Ave.
w Providence, NJ 07974-0636

Manola Support Inc.
333 E. Center St.
P.O. Box 485
Marion, OH 43301-0485

Malvern Systems, Inc.
Attn: Accounts Receivable
2) Lancaster Ave., Ste 216
Malvern, PA 19355

rk J. Rose, Esq.
w Offices of Mark J. Rose
0 W. Adams St., Ste. 2850
icago, IL 60606

Marketing Support, Inc.
200 E. Randolph Drive
Suite 5000
Chicago, IL 60601

Marsh, Inc.
Attn: Susan E. Bailey-Sills
1166 Ave. of the Americas
New York, NY 10036

arsh, USA
0 W. Monroe St.
icago, IL 60606

Marshall Fields
P.O. Box 59228
Minneapolis, MN 55459-0228

Marshall Fields
c/o Retailers National Bank
P.O. Box 59226
Minneapolis, MN 55459-0226

ax Weingarten
:67 N. Pheasant Ln.
ilwaukee, WI 53217

McDermott Will & Emery
600 13th Street NW
12th Floor
Washington, DC 20005-3096

Medical Products Laboratories
9990 Global Road
Box 14366
Philadelphia, PA 19115

02/28/2003  14:13   3122358578          LOPEZ & HARDING          PAGE   07/25

lical Products Laboratories
Mr. Mark Braverman
0 Global Road
adelphia, PA 19115

Metropolitan Collection Bureau, Inc
853 Sanders Rd., #227
Northbrook, IL 60062

Michael J. Davis, Esq.
Davis & Hands
1301 W. 22nd St., Ste. 603
Oak Brook, IL 60523

hael Lerich Productions, Inc.
N. Michigan Avenue
cago, IL 60611

Mike Dois DBA Hallmark Seating
1510 NW Worden Circle
Corvallis, OR 97330-9505

NACA LTD Partnership
P.O. Box 75130
Chicago, IL 60675-5130

E Resource Center
DELIVERABLE - NO ONE AT BY
IS NAME AT THIS ADDRESS

National Baptist Convention
3485 26th Ave. SO.
Saint Petersburg, FL 33711

New Hope Community Church
NO SUCH STREET

w Mount Mariah M.B. Church
W. Walton Blvd.
tiac, MI 48340

Nicor
Attn: Accounts Receivable
P.O. Box 310
Aurora, IL 60507-0310

Nicor
Attn: Bankruptcy
1844 Ferry Road
Aurora, IL 60507

el Flynn
3 County Commons Drive
e Oswego, OR 97034

Office Depot
FORWARDING ORDER EXPIRED

Olmarc Packaging Company
Attn: Joe Hatch
165 West Lake St.
Melrose Park, IL 60164

agon Department of Revenue
venue Building
5 Center Street NE
lem, OR 97301-2555

Oregon Department of Revenue
925 Center Street, NE
Salem, OR 97310

Pacific Life & Annuity
17350 Brookhurst St.
Fountain Valley, CA 92708

3CC
tney Bowes Credit Corp.
O. Box 85460
uisville, KY 40285-5460

Premium Ingredients, Ltd.
Attn: Accounts Receivables
1081 Sesame Street
Franklin Park, IL 60131

Randall Bookstore
114 Bush Rd.
Nashville, TN 37217

andall House Publications
O. Box 17306
ashville, TN 37217

Regency Thermographers
Illinois Division
727 Clayton Ave.
Waynesboro, PA 17268

Rena Winslow
305 Holly Berry St.
Woodland, WA 98674

euben Daniel Jr.
7 Pearsall St.
I 48241

Reuben Daniel, Jr.
547 Pearsall St.
Pontiac, MI 48341

Rich Bonus & Associates
FORWARDING ORDER EXPIRED

ichard Anderson
428 West Mercer Way
ercer Island, WA 98040

Richard C. Friedman, Esq.
Office of the U.S. Trustee
227 W. Monroe, Ste. 3350
Chicago, IL 60606

Richard P. Reichstein, Ltd.
1227 N. Honore
Chicago, IL 60622

bert Bumb
323 451 SE Ave.
rth Bend, WA 98045

Robert C. Laskowski
NOT AT THIS ADDRESS

Rock of Ages Baptist Church
c/o Rev. Marvin E. Wiley, Sr.
1309 Madison Street
Maywood, IL 60153

lsud Shen
Marian S.K. Ming, Esq.
e North LaSalle St., Ste 2205
hcago, IL 60602

Ron Bowen
2155 Fairway Ct.
Saint Charles, IL 60174

Ron Schiff
NOT AT THIS ADDRESS

nco Industrial Supply
0 Frontier Way
neanville, IL 60106

RPS, INC.
Dept. Ch 10472
Palatine, IL 60055-0472

RSM McGladrey, Inc.
1699 E. Woodfield Rd.
Suite 300
Schaumburg, IL 60173

idnick & Wolfe
m: Mr. Ronald S. Hollida
1 E. Kennedy Blvd., Ste 2000
mpa, FL 33602

SAIF Corporation
400 High Street S.E.
Salem, OR 97312

Schwartz & Freeman
401 N. Michigan Ave.
Suite 1900
Chicago, IL 60611

nnenschein, Nath & Rosenthal
00 Sears Tower
hcago, IL 60606-6406

Specialty Nut Co.
152 Railroad Ave.
Northlake, IL 60164-1607

State of Oregon
Public Service Building
255 Capitol St. N.E., Ste 151
Salem, OR 97310-1327

oven J. Rosenberg, P.C.
West Jackson St.
ite 224
hcago, IL 60604-3607

Steven Steele
9010 Tuscany Way
Colorado Springs, CO 80920

Stu Rudo
1730 Skyline Blvd., Ste 207
Portland, OR 97221

/American
W8718
.O. Box 1480
linneapolis, MN 55485-8718

Telegroup Network Account
First Star Bank
P.O. Box 3013
Cedar Rapids, IA 52406-9123

Textron Financial
P.O. Box 6687
Providence, RI 02940-6667

he Hartford
.O. Box 7983
hiladelphia, PA 19101-7983

The Old Original Missionary Baptist
3007 West Harrison
Chicago, IL 60612

The Potter's House
6777 W. Kiest Blvd.
Dallas, TX 75236

horuas E. Freeman
.O. Box 1811
ashon, WA 98070

Timothy Donohoe
4717 North Beacon Street # 1N
Chicago, IL 60640

Touch Transportation, Inc.
Dept 77-7956
Chicago, IL 60678-7956

rinity Fellowship
00 Hollywood Dr.
marillo, TX 79110

Tunstall Consulting
13153 N. Dale Mabry
Tampa, FL 33618

United Parcel Service
P.O. Box 505820
The Lakes, NV 88905-5820

ed States Postal Service
RS-PB
Box 0566
ıl Stream, IL 60132-0566

. Faulkner
:ln Court
met City, IL 60409

ow Pages, Inc.
Box 60007
heim, CA 92812-6007

Urban Ministries Inc.
Attn: Accounting Department
1551 Regency Court
Calumet City, IL 60409

W. Kern Hendricks
P.O. Box 100
Kent, WA 98035

Video Jet Systems International
1500 Mittel Blvd.
Wood Dale, IL 60191-1073

Wanda Sullivan
NO SUCH STREET

W. Lopez
PEZ & HARDING
N. LaSalle St.
e 1107
cago, IL 60602

Compek Corporation
980 N. Michigan Ave., Ste. 1400
Chicago, IL 60611

A.J. Crushing, Inc.
Attn: Alton Sullivan
P.O. Box 2690
Albany, OR 97321

um W. Dray
Michael Plumb
00 Avenue of the Arts #B419
ita Mesa, CA 92626

Advantage International, Inc.
Attn: Thomas Ross
900 North Point
San Francisco, CA 94109

Alena Shirley
727 Alpine Road
Mount Shasta, CA 96067

u Scholz
1 S.W. Grant Street #101
tland, OR 97201

Albert & Vyola Fortier
1170 24th Avenue S.W.
Albany, OR 97321

Albert Brenneman
P.O. Box 179
Corbett, OR 97019

bert R. & Kathy L. Boulanger
412 S.E. 78th Place
rth Bend, WA 98045

Altaon Thien
8300 16th Street #101
Silver Spring, MD 20910

All Nations Church of God in Christ
Attn: Catherine Wells
503 S. Water Street
Joliet, IL 60436

en Chick
276 S.W. Riverwood Lane
gard, OR 97224

Ambassadors For Christ
Apostle Joseph Stanford
7859 South Ashland Avenue
Chicago, IL 60620

Ambrose Calcagno
12965 N.W. Creekview Drive
Portland, OR 97229

ny Howe
200 Autumn Lane
agon City, OR 97045

Andrew & Cecelia Rietveld
8309 Meadow Lane
Saint John, IN 46373

Andrew Rietveld
The Bible League
1681 Van Dam Road
South Holland, IL 60473

nka Anderson
126 S.E. Scotts True Way
ackamas, OR 97015

Annie Garrett
442 Flora Creek Court
Lake Mary, FL 32746

Anthony & Katharine Poling
4010 105th Street Court N.W.
Gig Harbor, WA 98332

nthony Tate, III
.O. Box 152
lymer, PA 15728

Ardella Helms
9105 South Parnell Ave.
Chicago, IL 60620

Arlen Griffin
1016 S.E. 132nd Avenue
Vancouver, WA 98684

rthur & Coral Bergsong
325 S.E 141st Avenue
ortland, OR 97236

Arthur Clayton
2012 Tuskegee Dr.
Marrero, LA 70072

Arthur Resnick
15151 NE Clackamas St.
Portland, OR 97230

rvoll & Gertrude Rae
325 N.E. 23rd Avenue
ortland, OR 97212

Ashley Miller Ellmont
354 Paseo de Arena
Torrance, CA 90505

Barbara Couture
14790 S. Quail Grove Circle
Oregon City, OR 97045

xara J. Anderson
8 West Garfield
:ago, IL 60609

Barbara Petrick
15435 Meadowlark Court
Lake Oswego, OR 97035

Heskie Dennis
16200 Pacific Highway #7
Lake Oswego, OR 97034

jamin & Tawana Samuels, Jr.
1 Cove Court
in, IL 60123

Beverly Morgan
Chrystal Cathedral Ministries
P.O. Box 100
Garden Grove, CA 92842

Beverly Morgan
159 Quiet Bay Lane #1
Costa Mesa, CA 92627

& Carol McDonald
5 S.E. Aldercrest Road
tland, OR 97222

Bill & Dea Martin
16355 S.E. Sterling Circle
Milwaukie, OR 97267

Bishop Cody & Mrs. Marshall
8050 Rovell Court
Orland Park, IL 60462

hop Floyd Eugene Perry, Jr.
.6 Rollington Road
ker Heights, OH 44170

Bishop Robert Sanders
13213 South Rhodes
Chicago, IL 60627

Bishop Sheppard Little Memorial
Attn: Pastor Robert East
5230 South Halster Street
Chicago, IL 60609

o & Colleen Lawpaugh
132 N.E. Fargo Court
tland, OR 97220

Bob & June Luna
413 Palo Verde Drive
Leesburg, FL 34748

Bonnie & Clyde Trucking
Earl Bolliger
1441 S.W. Stephenson Street
Portland, OR 97219

onia Hiaka & Darell Robinson
753 Everest Court
erwood, OR 97140

Brad Wolverton
5103 S.W. Scholls Ferry Road
Portland, OR 97225

Brenda Turnbull
3902 Tamarack Lane
Lake Oswego, OR 97035

on & Juanita Williams
987 Rook Bluff Circle
nd, OR 97707

Brian & Alma Rivers
672 East Madison Avenue
El Cajon, CA 92020

Brian & Linda Karpstein
1979 S.W. 24th Court
Gresham, OR 97080

Ross & Ella Jean Metzker
802 S.E. Purdue
rtland, OR 97266

Cam Thomas
52 Thomas Road
Underwood, CA 98651

Carita Berkley
8930 S. Leavitt St.
Chicago, IL 60620

ri & Jean Anderson
1505 Rustic Road
issoula, MT 59802

Carl & Kary Fuller
537 Redlands Avenue
Newport Beach, CA 92663

Carlton Crowther
12901 SW 26th Court
Albany, OR 97321

atherine Williams
133 S.E. Terrace Drive
lackamas, OR 97015

Catholic Bishop of Chicago
St. Elizabeth Catholic School
4025 South Wabash
Chicago, IL 60653

Celeste Davis
601 East 32nd Street
Apt. 901
Chicago, IL 60616

arles & Mariene Ford
932 S. Parnell Ave.
Icago, IL 60628

Charles Sharpley
c/o Candice Villalobos
6382 Caminito Del Cervato
San Diego, CA 92111

Cheri S. Drougas
P.O. Box 1596
Sun Valley, ID 83353

arie Lambie
003 47th Avenue S.W.
deral Way, WA 98023

Christian Roller
1484 King Fisher Way
Sunnyvale, CA 94087

Christine Abunassar
10236 Scaggsville Road
Laurel, MD 20723

ristine Pinda-Allen
305 Hilltop Road
ke Oswego, OR 97034

Christopher Duncan
1265 Sterling Creek Road
Jacksonville, OR 97530

Christopher Sanders
8300 Carribbean Way
Sacramento, CA 95826

ndy Winslow
2920 East Cliff #6
nta Cruz, CA 95062

Claire Mercer
314 Oak Tree Circle
Murphys, CA 95247

Clarence & Amanda Campbell
8722 South Desite Avenue
Chicago, IL 60619

arence & Mary Falls, Sr.
12 South Cornell Street
hicago, IL 60649

Clifford Friesen
1849 Brush College Rd. N.W.
Salem, OR 97304

Colette Currier
9966 West Bowles
Littleton, CO 80123

olin & Nellie Smith
63 159th Place
uth Holland, IL 60473

Covenant Group Enterprises, Inc.
Attn: John Jackson
107 West Van Buren
Chicago, IL 60605

Craig LaCross
1701 S.E. 111th Court
Vancouver, WA 98664

urtis & LaVona Staggs
521 Wilson
urant, OK 74701

Cynthia DeAnn Stout
656 South Yale
Wichita, KS 67218

Daniel & Pamiela Armstrong
7000 Krono Road N.E.
Yamhill, OR 97148

arren Ford
550 N.W. Eastman Pkwy
uite 175
resham, OR 97030

Darryl & Brenda Hickman
6103 Dunmoor Valley Court
Charlotte, NC 28226

Daryl Nixon
10445 SE Cook Court #303
Portland, OR 97222

avid & Cheryl Chamberlin
8604 Springwater Road
stacada, OR 97023

David & Doris Huttula
3325 Barrington Drive
West Linn, OR 97068

David & Jackie Urell
3375 Olive
Eugene, OR 97405

avid & Kay Larson
149 Potomac Avenue
lexandria, VA 22107

David & Kristin Skooh
5904 North Haight
Portland, OR 97217

David & Lori Michl
3554 Rowley Drive
San Jose, CA 95132

avid Herring
1 Tesoro
islon Viejo, CA 92692

David Hrabal
2552 N.W. Mikired Street
Portland, OR 97210

David Peffer
3919 Mendocino Lane #108
Sheboygan, WI 53083

avid Silver
JB Sunnyhills Road
akland, CA 94610

David Woodman
10973 S.W. 118th Court
Tigard, OR 97223

Dawn 2000 Ministries
Steven Stoole, CEO
5775 North Union Blvd,
Colorado Springs, CO 80918

ean Hergesheimer
104 N.E. 174th Street
ancouver, WA 98686

Dean Lackey
38 Fox Tail Lane
Dove Canyon, CA 92679

Deborah Newsome-Smith
1507 East 53rd Street #306
Chicago, IL 60615

ennis & Linda Seymour
370 N.E. 17th
resham, OR 97030

Dennis & Patricia Brown
19746 Schaefer Drive
Oregon City, OR 97045

Dennis & Rhonda Finck
Pmb 271 5303 Pacific Highway E.
Tacoma, WA 98424

ental Referral Service
homas O. & Sally J. Miller
0 Via Castas
mtall, CA 92003

Derek Weber
4532 Bayou des Families
Marrero, LA 70072

Diana Graham
15530 N.E. Knott Street #33
Portland, OR 97230

onald & Dianne Pergande
725 Shagbark Court
rookfield, WI 53005

Donald & Lalah Ramsthel
4079 Orchard Drive
Lake Oswego, OR 97035

Donald & LaNova Dilts
10807 Road 102
Guffey, CO 80820

onald & Lee Nelson
.O. Box 348
ahome, CA 96142

Donald Heaton
8930 South Ridgeland
Chicago, IL 60617

Donald Hoyt
4919 N.E. 73rd
Portland, OR 97218

onald Ritthaler
lenda Buchler
59065 Heritage Lane
Saint Helens, OR 97051

Donald Ritthaler
59065 Heritage Lane
Saint Helens, OR 97051

Donna Buckingham
7238 S.E. 32nd Street
Mercer Island, WA 98040

Donna J. Harning
Kenneth A. Binkley
25W 260 Plamondon Road
Wheaton, IL 60187

Donna LoPiparo
14202 S.E. Princeton Village Way
Clackamas, OR 97015

Donna Riedlinger
113 Telford
Oregon City, OR 97045

Douglas & Cynthia Oja
14690 S.E. Territory Drive
Clackamas, OR 97015

Douglas Hoyt
1574 Justice Court
Livermore, CA 94550

Douglas Muncker
2519 S.W. Sheffield Avenue
Portland, OR 97201

ouglas Schiff
113 Bluebird Lane
acine, WI 53406-1205

Dr. Siamak Khalili
916 Whispering Hills Drive
Naperville, IL 60540

Drs. Herbert & Mildred Harris
7246 South Luella Avenue
Chicago, IL 60649

irnest A. Head
12 Locust Drive # 1H
eepy Hollow, IL 60118

Ed & Jill Jory
5135 S.E. Salmon
Portland, OR 97215

Ed Hart
909 West Point Road
Lake Oswego, OR 97034

dmund & Sharon Cravinho
121 Lakeshore Court North
alem, OR 97303

Edward & Heidi Kcovins
18 Oxford Drive
Lincolnshire, IL 60015

Edward & Judith Charles
9540 N.E. Skidmore
Portland, OR 97220

dward & Peggy Jolliff
.O. Box 1641
arvey, IL 60426

Elizabeth A. Dray
Michael Plumb
2411 Burlington Street
Oakland, CA 94602

Elizabeth A. Dray
Michael Plumb
3400 Ave. of the Arts # E419
Costa Mesa, CA 92626

lizabeth Richards
1051 Bank Mill Lane
aratoga, CA 95070

Embra & Leticia Patterson
1514 Virginia Avenue
Peoria, IL 61604

Bolar Brown
7847 S. Cregier Ave.
Chicago, IL 60649

oler Brown & Creoler Hoover
847 S. Creiger Avenue
hicago, IL 60649

Erika Binkley
25 W 260 Plemondon Road
Wheaton, IL 60187

Eugene & Terri Zuichas
2214 S.E. 30th Avenue
Portland, OR 97214

ugene Morris
555 South Everett Avenue
hicago, IL 60637

Eugenie Watson
296 La Cuesta
Los Altos, CA 94024

Everlee Easton
3445 West Franklin Blvd.
Chicago, IL 60624

ven & Cheryl Giscombe
743 South Creiger
hicago, IL 60649

Frank & Beth Burns
600 West Vincyard Drive
Pasco, WA 99301

Frank Larsson
108 Bryant Street #31
Mountain View, CA 94041

rank T. & Shirley K. Ell
821 N.E. 78th Place
ortland, OR 97218

Fred & Holly Minniti
1018 North 7th
Tacoma, WA 98403

Fred Segar & Debbie Parigan
17060 Chapin Road
Lake Oswego, OR 97034

Fred, Judy & David Anderson
7818 Wendy Ridge Lane
Annandale, VA 23003

Frederick Davis
23850 S.E. Tillamom Road
Gresham, OR 97080

Gale Culmsee
12901 SW Beagle Cout
Tigard, OR 97224

02/28/2008  14:13    3122360578              LOPEZ & HARDING                    PAGE  15/25

ary & Sharon Brinkman
041 S.E. Parkview Terrace
ilwaukie, OR 97222

ary & Pamela Roberts
906 S.E. Madrona
ilwaukie, OR 97222

lona & Clark Zimmerman
416 S.E. 30th Avenue
ortland, OR 97202

George & Marian Frank
16 W 971 Ridgewood Drive
aint Charles, IL 60175

Gerald D. Gauche Trust B
ean Marie Raabe, TTR
1018 Kistler Lane
ugene, OR 97402

Gloria Johnson-Rodgers
P.O. Box 5449
Columbus, GA 31906

Gregory & Joyce Parfitt
1810 Woodland Avenue
Woodburn, OR 97071

Hallie & Eloise Evans
RR 1 Box 70
Pond Creek, OK 73766

Henry & Cheryl Emery
3645 Van Buren Street
Gary, IN 46408

Hermene Hartman
5555 S. Everett Avenue, Apt 6D
Chicago, IL 60617

Gary & Doreen Williams
7714 Filly Court S.E.
Tumwater, WA 98501

Gary Carter, Jr.
745 Grant Circle
Hanover Park, IL 60103

George & Jennifer Gisel
5163 Winsteria Drive
Oceanside, CA 92056

George Favors
1942 West Wolfram
Chicago, IL 60657

Geraldine Payton
7815 S.E. 119th Drive
Portland, OR 97266

Greater St. James Temple COGIC
Pastor Torrence Markham
P.O. Box 1083 / 2131 Wright Ave.
North Chicago, IL 60064

Grover, Mueller, Hall & Swunk, P.C.
P.O. Box 2122
Salem, OR 97308

Hanna Czajka
505 North Lake Shore Drive #1814
Chicago, IL 60611

Henry & Paulette Henderson
7637 South King Drive
Chicago, IL 60619

Holland Capital Management, L.P.
c/o Winston & Strawn
35 West Wacker Drive
Chicago, IL 60601
Attn. Michael Jones

Gary & Gloria Carter
9571 97th Place North
Maple Grove, MN 55369

Garylee & Mary Brown
13526 S.E. Bybee Drive
Portland, OR 97236

George & Joanne Boulanger
P.O. Box 1255
North Bend, WA 98045

George Gaines, Jr.
2207 Orrington
Evanston, IL 60201

Glenn & Debbie Johnson
19 Carriage Court
Oak Brook, IL 60523

Green & Gwendolyn Moore, Jr.
22712 Jamie Court
Richton Park, IL 60471

Guy & Barbara Powers
1106 Juropa
Kennewick, WA 99336

Harriet Lebby
108 Regatta Drive
Jupiter, FL 33477

Herman Marshall, Jr.
6401 Allison Drive
Flint, MI 48504

Homer Johnson, Jr.
3708 Gresham Court
Virginia Beach, VA 23452

Homer L. Winslow Family Trust
c/o Rena Jean Winslow
105 Hollyberry Street
Woodland, WA 98674

ICI Worldwide, Inc., Ko Yamaguchi
175 W. Bonita Ave.
P.O. Box 8
San Dimas, CA 91773

Illyna Schuldt
2118 S.W. Jenny Lane #35
West Linn, OR 97068

Inner City Impact
William Dillion
1704 West North Avenue
Chicago, IL 60647

Ira Williams
Business Development Advisors
980 North Michigan Avenue, Ste 1400
Chicago, IL 60611

Isell Family Trust
c/o Lorraine Isell
247 Sterling Drive
Eugene, OR 97404

Issachar Investment Club
c/o Carleton Nolan
9019 South Clairemont
Chicago, IL 60620

Issachar Investment Club
Bishop Ed Peacher
9019 South Clairemont
Chicago, IL 60620

J. Steven & Marilyn Harrison
14474 S.E. Creekside Drive
Milwaukie, OR 97267

J.K. Tsujimura Profit Sharing Trust
James Tsujimura, M.D.
4747 S.E. 33rd Avenue
Portland, OR 97202

Jack & Janice Dennison
2835 Helmsdale Drive
Colorado Springs, CO 80920

Jacquelyn Gandy
3538 North Troy
Chicago, IL 60618

James & Judith Hinners
0N460 Peter Road
Winfield, IL 60190

James & Kimberly Stattin
3109-73rd Avenue Court N.W.
Gig Harbor, WA 98335

James & Michelle McClinton
1127 North Milwaukee Avenue
Chicago, IL 60622

James & Pamela Velasquez
1645 Edgewater Court
West Linn, OR 97068

James & Stephanie Hunt
5810 Sky High Court
Milwaukie, OR 97267

James Goode
9073 Cedar Ridge Dr.
Granite Bay, CA 95746

James Hart
14474 S.E. Creekside Drive
Milwaukie, OR 97267

James Ivory
5075 Lake Circle West
Columbia, MD 21044

James Richards
850 Koona Drive
Albany, OR 97321

James Siddons
15867 Twin Fir Road
Lake Oswego, OR 97035

Janet Jones
2025 S. Magic Way # 150
Henderson, NV 89015

Janet Peterson
1317 S.W. Laurel
Lake Oswego, OR 97034

Janice Sommer
37 Deep Well Lane
Los Altos, CA 94022

Jarman Associates
Attn: David Jarman
P.O. Box 2408
Lake Oswego, OR 97035

Jason Behlar
407 Trano View Road
Madison, MS 39110

Jasper & Ruth Overton
R.R.1 Box 194
Sharon, OK 73857

Jeanie E. Lorenz &
John D. Harris, Sr.
1207 N.W. 138th Way
Vancouver, WA 98665

Jeff & Iris Metzker
16171 S. Clackamas River Drive
Oregon City, OR 97045

Jeff & Julie Crosgrove
7205 S.E. 30th
Portland, OR 97202

Jeff Bohmilt
10490 S.W. Melner Drive
Tualatin, OR 97062

Jeffory Dulcich
P.O. Box 1416
Clackamas, OR 97015

Jeffery Hoyt
1574 Justine Court
Livermore, CA 94550

Jeffrey Rude
26614 Crow Road
Eugene, OR 97402

Jennifer Steedly Duncan
1265 Sterling Creek Road
Jacksonville, OR 97530

Jerry Dragovich, MD
P.O. Box 33917
Seattle, WA 98133

Jerry Gauche
655 Shartle Circle
Houston, TX 77024

Jerry Stubblefield
1850 North Shore Road
Lake Oswego, OR 97034

Jim & Judy Cometti
14611 S.E. Rivercrest Drive
Vancouver, WA 98683

Joan Collins
9242 South Luella
Chicago, IL 60617

Joe Ann McClandun
16223 Bridgewater
Heathrow, FL 32746

John & Debra McMurtrey
4985 Casa Del Rey Drive
Milwaukie, OR 97222

John & Jolene Burns
17331 S. Overlook Road
Oregon City, OR 97045

John & Karri Malafouris
14695 S.W. 136th Place
Tigard, OR 97224

John & Launa Jeffery
13391 Streamside Court
Lake Oswego, OR 97035

John Berlin
796 Fifteen Mile Drive
Roseville, CA 95678-5527

John Budiaich
8700 6th Avenue S.W.
Seattle, WA 98106

John Clarke
97 S.W. Kingsgate Bldg. H-31
Lake Oswego, OR 97035

John Peffer
Art Dept., Smith College
Northampton, MA 01063

John Phillips
80 Allan Bend Drive
Decatur, IL 62521

John Pickett, Trustee-Short Term
Jennifer MacGregor
27503 N.E. 14th Court
Ridgefield, WA 98642

John Sayre
101 Maroboro Avenue #11 Box 198
Easton, MD 21601 .

John Schwartz
1809 Pepper Tree Court
Sugar Land, TX 77479

John Wilson
605 East Palmyra
Orange, CA 92866

Jon Woodson
5222 S.W. Hewett Blvd.
Portland, OR 97221

Jonnie Carde
1404 North Lawler Avenue
Chicago, IL 60651

Joseph & Joanne Sisco
3544 South Spencer Blvd.
Sioux Falls, SD 57103

Joseph & Linda Chesney
13995 S.W. Mistletoe Drive
Tigard, OR 97224

Joseph & Sara Novy
8514 S.W. 54th Avenue
Portland, OR 97219

Judith Hanneman
1241 Eureka Avenue
Los Altos, CA 94024

Judy & Scott Lamble
8812 N.E. 58th Street
Vancouver, WA 98662

Julie Maunialy
9243 Twin Oaks Lane
Des Plaines, IL 60016

Karen Harms
411 Canterbury Drive
Plover, WI 54467

Karen Wolverton
513 N.W. 17th
Corvallis, OR 97330

Karl Granlund
5351 SW BayCreek Rd.
Lake Oswego, OR 97035

Kathryn Calcagno
12965 N.W. Creekview Drive
Portland, OR 97229

Kathryn Kitzhing
385 Arboleda
Los Altos, CA 94024

Kelly Shawn O'Halloran
4625 S.W. Arnold Street
Portland, OR 97219

Ken & Chris Floerke
2024 Falcon Ridge Drive
Petaluma, CA 94954

Kenneth & Jane Galiuzzo
15277 S.W. Ashley Drive
Tigard, OR 97224

Kenneth & Winnie Robertson
P.O. Box 190
Salem, OR 97308

Kenneth Eshelby
281 24th Street N.E.
Salem, OR 97301

Kent Spencer
7296 South Mark Road
Canby, OR 97013

Kieran & Elena Rohan
4014 S.E. Howe
Milwaukie, OR 97222

Kim Henry
8750 South Blackstone
Chicago, IL 60619

Kirk Jordan
135 Hermosa Avenue
Long Beach, CA 90802

Ko Yamaguchi, Unit 412/413
Hung Hom Commercial Centre
37-39 Matauwei Road, Hung Hom
Kowloon, HK

Kristi Kirkpatrick
6011/2 Larkspur
Corona Del Mar, CA 92625

Kurtis & Robin Bid
3530 Emerson Drive
Roseville, CA 95661

Lance Williams
7923 S.E. 105th Avenue
Portland, OR 97266

Larry & Cheryl Elstrom
7617 58th Avenue N.W
Gig Harbor, WA 98335

Larry & JoAnne Smith
4526 S.E. Concord Avenue
Milwaukie, OR 97267

Larry & Naomi Joy
10835 S.E. Jason Court
Portland, OR 97236

Larry Clayton
1737 Montbatten Dr.
Marrero, LA 70072

Laura Crooked
525 N.E. Edison Street
Hillsboro, OR 97124

Lawrence Velasquez
1723 E. 1400 S
Gooding, ID 83330

Leo & Joanne Sjothun
7031 Fir Grove Lane N.
Kieser, OR 97303-R104

Lee & Sue Frantz
29177 Oceanridge Drive
Rancho Palos Verdes, CA 90275

Leo & Susan Klimaitis
55 Brinker Road
Barrington, IL 60010

Leona Thomas
10973 S.W. 118th Court
Tigard, OR 97223

Linda Dunlap
3216 N.E. Skidmore
Portland, OR 97211

Lisa Peffer
1077 Cliffdale Ave.
Lakewood, OH 44107-1201

Lord Hunt
2424 West 69th Street
Chicago, IL 60629

Lynn Page
13210 SW Iron Mountain Blvd.
Portland, OR 97219

Malcolm & JoAnne MacGregor
13817 S.E. 35th Street
Vancouver, WA 98663

Marcia Lloyd
40740 Mattole Road
Petrolia. CA 95558

Marion Bracey
3742 Virgil Blvd.
New Orleans, LA 70122

Mark & Eileen Lindley
1850 Egan Way
Lake Oswego, OR 97034

Martha Campbell
P.O. Box 260264
Woodside, CA 94062

Liberty Temple COGIC
Attn: Pastor Robert East
5230 South Halsted Street
Chicago, IL 60609

Lionel & Dorothy Stevenson
14366 Highway 23
Belle Chasse, LA 70037

Living Word Christian Center
Pastor William Winston
7309 W. Madison Street
Forest Park, IL 60130

Lorina Reaves
700 East 91st Place
Chicago, IL 60619

M.D. Brandenburg
15908 S. Freshair Court
Oregon City, OR 97045

Malinda Dixon
10355 SE Bell Avenue 15-6
Milwaukee, OR 97222

Marianne Itkin
909 S.E. 72nd Avenue
Portland, OR 97215

Marlon Johnson
275 Calliope Drive
Henderson, NV 89014

Mark & Marie Avery
7 Mandarley Lane
Ormond Beach, FL 32174

Mary Cox
200 Park Avenue #722
Calumet City, IL 60409

Linda Arth
419 Jolina Way
Encinitas, CA 92024

Lisa & Matt Moss
8003 Laguna Circle
Houston, TX 77095

Loahn Williams
6939 South East End
Chicago, IL 60649

Loverta Jackson
9436 South St. Lawrence
Chicago, IL 60619

Malachi Favors
820 East 48th Street
Chicago, IL 60615

Marc & Pauline Mueller
6733 S.W. Raleighwood Lane
Portland, OR 97225

Marie Switzer
10020 School House Road
Grand Bay, AL 36541

Marjorie Boyd
15990 S.E. 78th Place
North Bend, WA 98045

Mark & Michelle Highland
14845 S.W. 150th
Tigard, OR 97224

Matt & Terri Robertson
41378 Westfield Circle
Canton, MI 48188

Matthew Silver
20252 Hood View Avenue
West Linn, OR 97068

Michael & Christina White
4639 S.E. 118th
Portland, OR 97266

Michael & Keely Jund
911 N.E. 3rd Avenue
Hillsboro, OR 97124

Michael L. & Loretta L. Burton
12853 Velp Avenue
Green Bay, WI 54313

Mirzet & Chris Bizar
1129 North State Street
Apt. 4B
Chicago, IL 60610

Mr. & Mrs. Thomas Miller, Jr.
5572 West Magill Avenue
Fresno, CA 93722

Naomi Whitcomb
18050 S.E. Tibbetts
Portland, OR 97236

New Hope Community Church
c/o Ray Cotton
11731 S.E. Stevens Road
Carol Stream, IL 60188

Nicola Dixon
7272 A Nebraska Avenue
Fairchild Air Force Base, WA 99011

Norune Quam
121-A Leonard Street
Lake Oswego, OR 97034

Maxine Poller
108 Regatta Drive
Jupiter, FL 33477

Michael & Christine Steele
24736 Percheron Way
Calhan, CO 80808

Michael & Mardwella Woods
434 North Roberts Drive
Apt. 2P
Glenwood, IL 60425

Michael Newton
c/o Darell Robinson
23753 Everest Court
Sherwood, OR 97140

Monte Brown
375 Park Lane
Harrisburg, OR 97446

Myrtle Weber
1156 Candlelight Drive
Marrero, LA 70072

Neil & Ethel Hoyt
9 McLane Road
Gulf Breeze, FL 32561

Nicholas Gabbard
1336 N. Highway 150
Lexington, NC 27292

Nina Rollow
Scott Thayer
1333 S.E. Nehalem Street
Portland, OR 97202

Norman Solwold
3968 N.E. 12th
Portland, OR 97212

Michael & Amy Palmatly
6557 Camelia Drive
San Jose, CA 95120

Michael & Deborah Eshelby
14164 S.W. Cobble Court
Sherwood, OR 97140

Michael & Susy Staropoli
5250 S.W. Cherry Avenue
Beaverton, OR 97005

Mike & Lynn Noussalue
6321 South Highlands Circle
Harrisburg, PA 17111

Monument of Faith Evangelical Ch.
c/o Dr. Richard Columbus
2750 West Columbus
Chicago, IL 60652

Nancy Cole
1201 Sycamore Terrace
Space 214
Sunnyvale, CA 94086

New Holy Ghost Tabernacle COGIC
Attn: Pastor Joseph Kyles
5649 S. Artesian Street
Chicago, IL 60629

Nick & Cathy Lawpaugh
8418 N.E. Thompson
Portland, OR 97220

Noel Flynn
1361 County Commons Drive
Lake Oswego, OR 97034

Northwest Building Pension Plan
c/o Ted Sebastian
1672 S.W. Willamette Drive
West Linn, OR 97068

Orlando & Tommie Barnett
7007 Ashbury Drive
Springfield, VA 22152

Pastor Luis Palau
P.O. Box 1173
Portland, OR 97207

Pat Gerhardt
29272 Big Range Road
Kenyon Lake, CA 92587

Patrick W.& Gwen B. Kirwan
1940 S.R. Palmquist Road #14
Gresham, OR 97080

Paul & Patricia Huvane
204 Monte Carlo Way
Danville, CA 94506

Paul & Paula Brawn
932 Kouns Drive N.W.
Albany, OR 97321

Peoples Church of God in Christ
Attn: Pastor William Eaddy
3570 West 5th Avenue
Chicago, IL 60624

Peter & Alisha Nielson
299 Cypress Street
Brookline, MA 02445

Philippi Evangelistic COGIC
c/o Supt. George Albert, Jr.
6324 N/ Claiborne Ave.
New Orleans, LA 70117

Phillip Martin
8634 S.W. 90th Avenue
Portland, OR 97223

Pilgrim Baptist Church
c/o Dr. Hycel Taylor
3301 S. Indiana
Chicago, IL 60616

Prayer Mission Church of God
c/o Elder Clarence Falls, Sr.
7712 South Cornell Street
Chicago, IL 60649

Ralph Brown, Jr.
4824 N.E. 23rd Avenue
Apt. 1
Fort Lauderdale, FL 33308

Ralph Lee Overton
1256 South Ainsworth Avenue
Tacoma, WA 98405

Ramona Louden
7017 Pineberry Road
Dallas, TX 75249

Ray & Deloris Thomas
7 Picnic Court
Bolingbrook, IL 60490

Ray & Jacqueline Gentile
6853 S.W. 11th Drive
Portland, OR 97219

Ray & Jeanetta Townsend
4975 S.E. Meldrum
Milwaukie, OR 97267

Raymond & Janet Cotton
12102 S.E. Deerfield Drive
Portland, OR 97236

Raymond & Clara Thomas
3706 Kantrel Place
Valrico, FL 33594

Raymond Dattloff
4722 East Winter Way
Phoenix, AZ 85044

Raymond J. & Tillie H. Holzman
12658 N.E. Weidler
Portland, OR 97230

Renaissance Development Corp.
c/o Randy Sebastian
1672 S.W. Willamette Drive
West Linn, OR 97068

Retirement Plan Trust
c/o Lynn Griffith, D.D.S.
P.O. Box 273
Gladstone, OR 97027

Rev. Charles & Willie Emery
4132 Pennsylvania Street
Gary, IN 46409

Rev. Curtis & Rev. Mary Rodgers
Chetwyn Rodgers Faith Memorial
P.O. Box 440487
Chicago, IL 60644

Rev. E.L. Thomas
4474 North 58th Street
Milwaukee, WI 53218

Rev. Joseph Felker, Jr.
17149 Kenwood Avenue
South Holland, IL 60473

Rhonda Stewart
N. 2624 Ferrall
Spokane, WA 99207

Rich & Cheryl Elardo
2100 S.E. Harrison
Portland, OR 97214

Richard & Betty Weissenhuh
17541 N. Thornberry Drive
Surprise, AZ 85374-2982

Richard & Janet Anderson
2428 West Mercer Way
Mercer Island, WA 98040

Richard & Mary Anne Conk
28742 S.W. Pete's Mountain Road
West Linn, OR 97068

Richard Haak
P.O. Box 511
Tavernier, FL 33070

Richard Maughan
1731 N.W. Towle Court
Gresham, OR 97030

Rita Laxton
676 S.E. Cedar Street
Hillsboro, OR 97123

Robbyn & Pamela Matiko
18390 N.E. 192nd Street
Woodinville, WA 98072

Robert & Judith Belville
1297 Kennubec Court
Canton, MI 48187

Robert & Karen Morris
9300 S.W. Inez Street
Tigard, OR 97224

Robert & Lynotte Sandgren
14750 South Megan Way
Clackamas, OR 97015

Robert & Maggie Booker
8222 South Winchester Avenue
Chicago, IL 60620

Robert & Michau Lauritzen
15621 N.E. Freemont Street
Portland, OR 97230

Robert & Peggy Balk
7865 S.W. 136th Avenue
Beaverton, OR 97008

Robert Buckley
2625 S.E. 17th Street
Portland, OR 97202

Robert Farnes
29000 S.E. Knox Road
Boring, OR 97009

Robert Grove
7511 Twin Fair Lane South
Salem, OR 97306

Robert Hartsing
P.O. Box 399
Tavernier, FL 33070

Robert Maldonado
2348 West Division Street
Chicago, IL 60622

Robert Taylor
6613 South Whipple
Chicago, IL 60629

Robert Turnbull
322 Albemarle Avenue
Richmond, VA 23226

Rock of Ages Baptist Church
Pastor Marvin Wiley
1309 Madison Street
Maywood, IL 60153

Rodney & Angela Hartsing
P.O. Box 399
Tavernier, FL 33070

Rodney & Patricia Hartsing
P.O. Box 399
Tavernier, FL 33070

Rodney Dixon
250 West St. Charles Road
Elmhurst, IL 60126

Rodney Friesen
6857 S.W. Wampanoag Drive
Tualatin, OR 97062

Roger & Jane Drive
1515 Killarney Drive
West Linn, OR 97068

Roger Nelson
10734 38th Avenue N.E.
Seattle, WA 98125

Roger Plant
252 Pearl Street
Eugene, OR 97401

Ron Bowen
2155 Fairway Ct.
Saint Charles, IL 60174

Ron Daniels & Mary Jo Eshelby
868 North Diamond
Burns, OR 97720

Ron Schiff
87827 Pawn Way
Springfield, OR 97478

Ronald & Kathy Schmitt
1234 Big Fir Road
West Linn, OR 97068

Ronald Behelby
300 N.W. Gleneagle Drive
Sherwood, OR 97140

Ronnie Lee Jessie
8026 S.E. Aspen Summit Dr., # 259
Portland, OR 97266

Roosevelt & Vivian McCorvey
3088 Rosa L. Parks Avenue
Montgomery, AL 36108

Roosevelt Witherspoon
7422 South Prairie
Chicago, IL 60619

Rosemary Remington
255 N.E. 104th
Portland, OR 97220

Ryan & Madeline Dettloff
1318 S. Cherry St.
Casper, WY 82604

Samuel & Virginia Spicher
16825 N.W. Sandelle Court
Beaverton, OR 97006

Samuel D. & Geralyn C. Alexander
913 Duxbury Lane
Schaumburg, IL 60193

Schuyler & Kari Lee Wallace
19875 S.W. 49th Avenue
Tualatin, OR 97062

Scott & Gloria Peterson
12497 SE Imperial Crest Street
Clackamas, OR 97015

Scott & Heather Hockert
12967 La Tortola Street
San Diego, CA 92129

Scott & Laura Larsen
7237 N. Olcott Avenue
Chicago, IL 60631

Scott & Stacie Owen
13917 Briar Dr.
Overland Park, KS 66224-3596

Scott Rude
1560 Horn Lane
Eugene, OR 97404

Sean Robinson
8400 N.E. 15th Street
Vancouver, WA 98664

Sharon Voaller Davis
2019 23rd Avenue East
Seattle, WA 98112

Sheldon Baker
2904 Rawhide
West Linn, OR 97068

Shirley Hughes
1702 71st Street
Darien, IL 60561

Stefan Zwald
Imfeldstr 95
8037 Zurich Switzerland

Stephen & Rachelle Steele
2575 Wimbelton Court
Colorado Springs, CO 80920

Steve Alan
1711 Boxwood Way
Oceanside, CA 92054

Steven & Beth Pierson
11876 S. Partlow Road
Oregon City, OR 97045

Steven & Jill Winslow
1295 Yorkshire Loop
Tracy, CA 95376

Steven & Rhonda Seguin
8403 S.W. Eighth Avenue
Portland, OR 97219

Steven Lawpaugh
1139 N.E. 133rd Avenue
Portland, OR 97230

Stu Rude
1202 N.W. 122nd
Portland, OR 97229

System Three
Attn: WM. Kem Hendricks
3500 West Valley Highway North
Auburn, WA 98001

Tabernacle Ministries
Bishop Ocie Booker
1233 West 109th Place
Chicago, IL 60643

Ted & Bonnie Rollins
9221 S.E. Idelman Road
Portland, OR 97266

Ted & Marie Lawpaugh
4526 S.E. Ogden
Portland, OR 97206

Thaddeus & Crystal Cooper
3210 Emory Lane
Robbins, IL 60472

The Joseph Center
Pastor William Winston
7309 W. Madison Street
Forest Park, IL 60130

The Vincent Anku Foundation
c/o Dr. V. Anku/The Cancer Institut
19250 E. Bagley Rd., Ste 107
Middleburg, OH 44130

The Voeller Family
Paul & Sharon Voeller
17064 S.E. Wiley Way
Milwaukie, OR 97267

Thomas & Diana Troll
799 Willow Court
Itasca, IL 60143

Thomas & JoAnne Wilson
109 Bremmer Street
Richland, WA 99352

Thomas & Joy Trozera
437 Pine Needles Drive
Del Mar, CA 92014

Thomas & Kori Montpas
14377 Camden Lane
Lake Oswego, OR 97035

Thomas & Marilyn Kason
43451 S.E. Kleinsmith Road
Sandy, OR 97055

Thomas & Ruth Lane
c/o Trunnel & Assoc.
642 Charnelton, Ste. 200
Eugene, OR 97401

Thomas Freeman
1942 Westlake Ave., # 1904
Seattle, WA 98101

Thomas Kreis
1730 W. Algonquin Road
Arlington Heights, IL 60005

Thomas Larmore
1250 6th Street Suite 300
Santa Monica, CA 90401

Todd & Andrea Sames
4538 Somerset Drive S.E.
Bellevue, WA 98006

Todd LoPiparo
3904 N.W. 27th Avenue
Camas, WA 98607

Tom & Monika Germer
16340 S.E. Sterling Circle
Milwaukie, OR 97267

Tom & Tamara Poeschi
1829 Manchester Court
West Linn, OR 97068

Touch of Love Ministries
Attn: Brian Walker, Sr.
637 Azalea Drive
Waggaman, LA 70094

Tracey Stadick
20739 S.W. Settlement Drive
Sherwood, OR 97140

Tracy Turney-Smith & Darrell Smith
12182 Deer Chase Drive
Cincinnati, OH 45204

Una Vey Stout
R.R. 2 Box 135
Udall, KS 67146

Valerie Hoyt
3264 N.E. Couch
Portland, OR 97232

Vensuse Chitlim
P.O. Box 2209
Cave Junction, OR 97523

Villalobos Family Trust
Candice Villalobos
6382 Caminito Del Cervato
San Diego, CA 92111

Vision of Restoration
Pastor Marvin Wiley
902 W. Madison Street
Maywood, IL 60153

Walter & Linda Hart
35391 Tennesse Road
Albany, OR 97321

Walter & Reba n Blalark
506 Mill Street
Elgin, IL 60123

Warren & Leslie Lovett
150 Arvida Parkway
Coral Gables, FL 33156

Wayne Stater
P.O. Box 374
Dundas, OR 97115

Willard & Gloria Payton
10727 South Wallace
Chicago, IL 60636

William & Diana Ferguson
Pmb 271 5303 Pacific Highway E.
Tigard, OR 97224

William & Kathleen Waller
4031 Hampstead Road
La Canada Flintridge, CA 91011

William & Nancy Post
P.O. Box 431
Fox Island, WA 98333

William & Veronica Winston
11274 Wildridge
Westchester, IL 60154

William & Willa Balfrey
2934 Nighthawk Lane
Weed, CA 96094

William Adams
7889 S.W. Birdshell Court
Portland, OR 97223

William Davis
8854 South Cregier Avenue
Chicago, IL 60617

William Watson
7809 S.E. Theissen Road
Portland, OR 97267

William Wolverton
5102 S.W. Scholls Ferry Road
Portland, OR 97225

World Evangelical Fellowship
c/o Dwight Gibson, N. American Drtct
P.O. Box WBF
Wheaton, IL 60189

Ya Lin Lin
515 Mediana Ave. #502
Waukegan, IL 60085

Yong Cheong, DDS
90507 Birdie Drive
Warrenton, OR 97146

Younger Trust
Larry & Elaine Younger
1130 Old Salem Road N.E.
Albany, OR 97321

# Appendix Ex. 57

## Holding Company Ownership

| | |
|---|---|
| Allen Alvarado | 2% |
| Rick Alvarado | 3% |
| Wendy Alvarado | 3% |
| Ken Binkley | 10% |
| Jim Blankshain | 1% |
| Ron Bowen | 5% |
| Bruce Carlson | 25% |
| *Held by Bruce | 8% (in my name – to be kept or sold to other parties entering) |
| Shaun, Julie, Mandy, Melissa Carlson | 2% |
| George & Celia Carlson | 1% |
| Arnie Carlstrom | 8% |
| Rexene Carlstrom | 8% |
| Andrew J. Cohen | 5% |
| Michel Halbaut | possibly 1% when he comes from Minnesota (from Bruce) |
| Gene & Lisa Haring | 1% |
| Mike & Norma Jeanne Oester | 5% |
| Rex Rasmussen | 8% |
| David Seitelman | 5% |
| *Accountant | possibly 2% (from Bruce) |

## The LLC (based on the above stockholders) should be set up like this:

| | |
|---|---|
| **The Holding Company owns** | **40%** |
| Rick & Wendy Alvarado | 1% – All Web needs (sites, sales, marketing) |
| Ken Binkley | 5% – Brought idea, worked formula |
| Ron Bowen | 1.5% – President |
| Bruce Carlson | 6% |
| Rexene Carlstrom | 3% – Mgr of LLC |
| Andrew J. Cohen | 1% |
| Mike & Norma Jeanne Oester | 1.5% – Formula Development & QC |
| David Seitelman | 1% – Delivered Oxyfresh |
| **For Sale** | **40%** |

My thoughts are somewhere between $1250-2500 per 1% until the end of April for HC (a purchase: not a loan). Cost to be voted on. We limit purchase of shares per individual to some percentage. No sales after that unless an outsider is needed. A separate LLC could be set up for the Tablet Product. One is definitely needed for International Sales.

# from the desk of bruce carlson

DUO03367

# Appendix Ex. 59

# Duo-Tech
## August, 2001

### Bruce Carlson

**888.371.8500**

Loftus & O'Meara
Customer Focused Solutions Staffing
(312) 944-2102

Bruce's home #

847-549-6501

# Table Of Contents

1.0  Executive Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    1.1  Objectives . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    1.2  Mission . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    1.3  Keys to Success . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

2.0  Company Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    2.1  Company Ownership . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    2.2  Start-up Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    2.3  Company Locations and Facilities . . . . . . . . . . . . . . . . . . . . . 6

3.0  Products . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    3.1  Product Description . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    3.2  Competitive Comparison . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    3.3  Sales Literature . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    3.4  Sourcing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    3.5  Technology . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    3.6  Future Products . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

4.0  Market Analysis Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    4.1  Market Segmentation . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    4.2  Target Market Segment Strategy . . . . . . . . . . . . . . . . . . . . . 15
    4.3  Industry Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

5.0  Strategy and Implementation Summary . . . . . . . . . . . . . . . . . . . 16
    5.1  Strategy Pyramids . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    5.2  Competitive Edge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    5.3  Marketing Strategy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        5.3.1  Positioning Statements . . . . . . . . . . . . . . . . . . 18
        5.3.2  Pricing Strategy . . . . . . . . . . . . . . . . . . . . . . . 18
        5.3.3  Promotion Strategy . . . . . . . . . . . . . . . . . . . . 19
        5.3.4  Marketing Programs . . . . . . . . . . . . . . . . . . . 20
    5.4  Sales Strategy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        5.4.1  Sales Forecast . . . . . . . . . . . . . . . . . . . . . . . . 22
        5.4.2  Sales & Distribution Programs . . . . . . . . . . . 22
    5.5  Strategic Alliances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    5.6  Milestones . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

6.0  Management Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    6.1  Organizational Structure . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    6.2  Management Team . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    6.3  Management Team Gaps . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    6.4  Personnel Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**7.0   Financial Plan** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    7.1   Important Assumptions . . . . . . . . . . . . . . . . . . . . . . . 26
    7.2   Key Financial Indicators . . . . . . . . . . . . . . . . . . . . . . 27
    7.3   Break-even Analysis . . . . . . . . . . . . . . . . . . . . . . . . . 28
    7.4   Projected Profit and Loss . . . . . . . . . . . . . . . . . . . . . . 29
    7.5   Projected Cash Flow . . . . . . . . . . . . . . . . . . . . . . . . . 29
    7.6   Projected Balance Sheet . . . . . . . . . . . . . . . . . . . . . . 30
    7.7   Business Ratios . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Duo-Tech

## 1.0  Executive Summary

Duo-Tech is a start-up company that has opportunities that abound just as the world population grows. Not only does every person become a market target for our products, but they may very well have the desire, or the need, to use our products on a regular basis. Not just one segment of the population, but every segment may be touched by our products. The word "unlimited" does not fully quantify the needs we may fill. Money is not a barrier to our potential. If one segment of the world population does not have the money to buy our products . . . others will buy our products for them. "Unique" is our opportunity, "unlimited" begins the process by which we may succeed, and "profit" is a foregone conclusion.

Duo-Tech has the opportunity to become a manufacturing and distribution designate of Compak Corporation, which through a unique and patented packaging technology has developed multiple product offerings possessing explosive growth potential. These products are designed around easy-to-use, patented, two compartment packages which may be filled with both a liquid and a solid under separate seals. Due to the inherent proprietary design and manufacturing characteristics of the package, it boasts multiple advantages over traditional packaging methodologies. The initial news of their packaging concepts has brought interest from around the world.

Duo-Tech has the same limits imposed on its growth that Compak did: its own ability to properly build upon its capabilities. Compak Corporation came out with its first product in 1993 and, unfortunately, has been unable to capitalize on the overwhelming demand for its unique products because of its exhaustive R&D, financial needs, and manufacturing start-up. But what has been critical for Compak -- to set up its potential for unlimited success -- also allows Duo-Tech to enter into this relationship with immediate opportunities to take advantage of Compak's unrelenting drive to help people from all walks of life. During its last five years, Compak has readied products in the nutrition, medical, spiritual, and cosmetic fields. Each product fills desired and, in many cases, life-assisted needs which will become standards of importance in the world. In order for Compak to fill the needs of all who have come forth requesting opportunities to buy products from them, Compak has found it necessary to carve out various marketplaces for others to take over these sales.

The most significant area of growth and sales opportunities that Duo-Tech will have will be its Internet presence. As effective that Compak was in its worldwide exposure, it did so without the use of modern communication tools. Duo-Tech will be working through its own staff with its strategic partners, who are rooted so deeply in the packaging industries, that our reach is already significantly greater that traditional packaging manufacturers. Duo-Tech will be built around the technology of its communication expertise to handle the needs of design, development, sales efforts, distribution, and customer support over its web areas. Opportunities will also soon be recognized through the founder of Compak as he and our company co-develop a world relief web organization.

Compak's Mission Statement asserts that they exist "to package quality products that enhance life for people." We, at Duo-Tech, have those same desires, and our expert strategic partners will join us in making sure that we deliver the dream of Compak to the excited, waiting world.

## 1.1 Objectives

1. Procure manufacturing and distribution rights for patented processes from Compak Corporation and others.

2. Establish alliances for manufacturing and distribution to fulfill production needs.

3. Develop a world class Internet presence for information, marketing, and e-commerce.

4. Investigate Strategic Relationships that will be able to R&D new product ideas for our processes.

## 1.2 Mission

Every human has nutrition and medical needs and most choose spiritual and cosmetic needs. The packaging processes that we have rights to allow us to provide for all of those needs with new and affordable products. Although, we control the manufacturing and distribution of these products, we are not in the business of providing hard goods. We are in the business of providing for human prosperity and life itself. We seek a fair and responsible profit to reward ourselves, but more importantly: enough profit to keep our company healthy to answer the needs of all people that are touched by the changes that our products make in their lives.

## 1.3 Keys to Success

The technical and marketing partners that we have assembled as our team is experienced in years and successes so that we may organize, develop, and implement our plans to reach our near-unlimited marketplaces with our proprietary products.

1. Proceed with only one opportunity at a time to make sure our full attention and efforts allow for its success.

2. Work through each strategic partner to make sure each product is brought to the marketplace with the highest standards possible.

3. Be aware of the fact that we offer unique solutions to many life situations so it is our responsibility to investigate options that are brought to us to help others.

4. Continue to believe in the philosophy that if we are doing good for people, it is imperative to make the profit necessary to keep doing so or we not only hurt ourselves, but all who count on us.

## 2.0 Company Summary

Duo-Tech is a company that is being formed because of the inability of another to capitalize on all of the opportunities it had available to it. Compak Corporation holds unique patented packaging technology and has developed multiple products around this technology. Since Compak has concentrated most of its efforts in China (where the population exceeds one billion persons), it has been unable to grow fast enough to handle the requests for its technology and products from the rest of the world. Our Chief Operating Officer and Manager is a major investor in Compak and has realized the need (and opportunity) to provide Compak technology to those who want it. Duo-Tech is being formed to do just that.

## 2.1 Company Ownership

Duo-Tech is an entity that is yet unformed. Its principals are investigating various legal options and discussing potential principal partners that will aid in making the final decisions in this matter.

## 2.2 Start-up Summary

Our initial financial needs are displayed in the accompanying table and chart. Each of the line items for these assumptions are explained below.

**Legal & Accounting -** Outside firms will handle these tasks and prepare contracts for our relationship with Compak, for our sales and distributor relationships, and our personnel obligations. Our internal accounting structure will also be setup to comply with our reporting requirements to Compak.
**Stationery, Office Supplies, etc.** - Normal initial needs.
**Marketing Materials -** Normal initial literature needs.
**Website Development -** Information, broadcasting, e-commerce, contact, and a world communication site (design, publishing, hosting, and support with unlimited updating).
**Insurance -** Standard office and contract policy.
**Rent -** Home office security and rent prepayment.
**Office Computers & Equipment -** Desktops, printers, scanner, copier, fax machine, and phones.
**Other -** Miscellaneous office expenses and initial utility setups.

**Cash Requirements -** This fund will be used for travel, necessary supplies to manufacture small runs of product, and costs associated with making sample products.
**Start-up inventory -** This inventory will be used for marketing and sales needs.

**Long-term Assets -** Purchase of used, low capacity Form, Fill, & Seal machine to make sample products and manufacture small runs of sold products.

**Investor -** An individual to take a debt and equity position to cover first two years of expenses. Although it is not anticipated that our needs will come anywhere close to this

Duo-Tech

investor's cash input: it would allow our company to concentrate on running its business instead of looking for ways to finance its start-up.

**Long-term Liabilities -** Loan to buy used Form, Fill, & Seal machine.



Start-up

**Table 2.2: Start-up**

| Start-up Plan | |
|---|---|
| **Start-up Expenses** | |
| Legal & Accounting | $15,000 |
| Stationery, Office Supplies, etc. | $1,000 |
| Marketing Materials | $1,500 |
| Website Development | $15,000 |
| Insurance | $2,500 |
| Rent | $1,500 |
| Office Computers & Equipment | $10,000 |
| Other | $1,000 |
| Total Start-up Expense | $47,500 |
| | |
| **Start-up Assets Needed** | |
| Cash Requirements | $15,000 |
| Start-up Inventory | $5,000 |
| Other Short-term Assets | $0 |
| Total Short-term Assets | $20,000 |
| | |
| Long-term Assets | $100,000 |
| Total Assets | $120,000 |
| | |
| Total Start-up Requirements: | $167,500 |
| Left to finance: | $0 |
| | |
| **Start-up Funding Plan** | |
| | |
| **Investment** | |
| Investor | $500,000 |
| Other | $0 |
| Total Investment | $500,000 |
| | |
| **Short-term Liabilities** | |
| Unpaid Expenses | $0 |
| Short-term Loans | $100,000 |
| Interest-free Short-term Loans | $0 |
| Subtotal Short-term Liabilities | $100,000 |
| Long-term Liabilities | $100,000 |
| Total Liabilities | $200,000 |
| | |
| Loss at Start-up | ($580,000) |
| Total Capital | ($80,000) |
| Total Capital and Liabilities | $120,000 |
| Checkline | $0 |

## 2.3 Company Locations and Facilities

The nature of our company allows us to maintain a single office location for organization purposes. Such an office will be small to concentrate project efforts. The need to meet with others for planning and presentation purposes will also be addressed. Currently office space is being considered in Bloomingdale, IL, which is in the Chicago area, and such office needs will be filled to maintain a close proximity to our strategic partners.

All of our strategic partners have facilities that are available to us for detailed needs which will encompass the marketing, manufacturing, and distribution of each product we sell. The facilities available to us at this time through these partners are located in the Chicago suburbs of Bensenville, Buffalo Grove, and Northlake, and are all in close proximity to each other.

## 3.0 Products

Compak Corporation has focused on marrying its core packaging competence with unique functionality, directing it towards new and unexplored competitive space. Initial results from this continuing effort include the following: (1) a revolutionary new product for the safe and efficient religious sacrament of Communion (Celebration Cup), (2) a nutritional supplement (biscuit and drink) tailored to specific environmental conditions (Nutri-Pak), and (3) a revolutionary dental hygiene product (Dental-Pak). Significant market analyses and acquisition of key industry relationships and contracts have allowed Duo-Tech to attend to the world desire for these products while Compak concentrates its efforts in China. Our own research has allowed us to begin developing an opportunity with a firm holding the patent for an FDA approved 12-Hour Mouthwash.

Since our strategic partners are already well entrenched in their marketplaces (medical, food, and retail distribution), we have the ability to solidify our foothold in new markets of entry and immediately create competitive barriers. Our strategic partners, along with our new and exciting products, will allow us to gain access to what may be perceived as closed markets and/or establish strong foundations in newly entered markets.

## 3.1 Product Description

### (1) Celebration Cup
Through an application of our unique double-lid packaging technology, the issues of both contamination and convenience are effectively addressed. This product has reduced concerns of infection control by combining the juice/wine and host under separate seals in one package. An alternative for Roman Catholics is to package this with Holy Water instead of wine to address certain Church rules. The hygienic manufacturing and packaging process utilized minimizes the risk of contamination and the pre-packaged, extended-life nature of the product provides for maximum convenience. The Celebration Cup is cost-effective, convenient, portable and ideal for use in virtually any environment.

### (2) 12-Hour Mouthwash
Because of the nature of this product, it can only be effective if used within minutes after it is mixed. Although the packaging necessary to distribute this product can vary (and are certainly not a deterrent to someone wanting to receive the benefits of using it), some mixing of materials will be necessary. This can be burdensome or maybe even impossible at times. Our packaging allows us to crystallize one of the reactive agents into a tablet and then store it in our top compartment, allowing the second agent to stay in liquid form in the bottom compartment. Our patented pressure sensitive mixing seal would allow the user to then press the tablet top so it falls into, and mixes with the liquid reactive within seconds. One would then just have to peel the top seal off and drink the mixture. Convenience is enhanced and waste is negligible from this marriage of technology.

### (3) Dental-Pak
Utilizing the Company's patented packaging technology, Dental-Pak combines gum disease fighting agents and cavity fighting supplements in a single package. In a convenient, easy to

use, easy to inventory and easy to distribute mouth rinse product, a safe 0.05% fluoride mouth rinse to fight cavities is sealed in a container under the first lid, on top of which sits a gum disease fighting tablet under the second lid. The tablet or mint under the second lid is made with Super Oxide Dismutase (S.O.D). S.O.D. has been shown in international studies to fight off the free radicals that are associated with inflammation in Periodontal Disease.

### (4) Nutri-Pak

Nutri-Pak is a nutritional supplement manufactured using the our proprietary double-lid system. That technology has resulted in this revolutionary product consisting of a nutritionally fortified soy biscuit and soy drink, cost-effectively packaged under separate seals in one unit. The biscuit and soy drink are fortified with high protein and micro-nutrient levels and packaged aseptically, thereby creating a pure product possessing an extended, non-refrigerated shelf life. Additionally, since different customers will exhibit different nutritional needs, we can nutritionally customize the Nutri-Pak. We will vary the levels of protein, vitamin A, iron, iodine, additional micro-nutrients, and taste to develop a formula specifically tailored to the needs of individual customer groups.

## 3.2 Competitive Comparison

### Celebration Cup

This product significantly reduces the time involved in Communion preparation and offers a reduction in the waste that is generated through conventional Communion practices. Furthermore, any concern about germs from handling during the preparation has been removed because the Communion is sealed until it is opened by the recipient.

### 12-Hour Mouthwash

Virtually every human suffers from bad breath. Approximately 90% of bad breath is caused by a certain type of bacteria that naturally occurs in the mouth (not in the stomach as believed by many). Although there are numerous washes on sale throughout the world that address this issue, they work for only twenty to thirty minutes. Our patented product can eliminate this problem for a period of twelve hours -- tested, proven, FDA approved, and guaranteed.

### Dental-Pak

Marketing and distribution channels for Dental-Pak include school systems in developing countries as well as retail markets. The product's portability, appeal to children as well as adults, ease of use and convenience produce advantageous selling points for it. The Dental-Pak differentiates itself through the use of the double lid technology which creates a product unlike any other on the market.

### Nutri-Pak

Relative to other nutritional supplements, this product will deliver a superior nutritional supplement possessing many characteristics far superior to other current product offerings. The goal was to create a nutrition snack possessing both a liquid and a solid, with an extended shelf life, capable of being tailored to the exact nutritional requirements of a given target market. There is no product available that comes packaged as such.

**Consumer-Pak** (from 3.6. Future Products)

Capitalizing on the convenience and portability of the our proprietary packaging technology, we have identified significant opportunity in the over-the-counter medication market. The Consumer-Pak will make it possible for medication to be taken where drinking water is unavailable or inconvenient. For the vacationer or business traveler, problems associated with the availability or, more importantly safety, of drinking water are eliminated by this product. Additionally, the convenience of simply combining pure water with medication eliminates a great deal of the difficulty in administering medicine.

**Pharmaceutical-Pak** (from 3.6. Future Products)

Unlike current methods of injection-ready drug storage, our injection system allows the medical community to administer injections without the added risk of exposure to airborne bacteria and other contaminants. It also avoids the danger of the health professional being cut while breaking the ampules used for current injections. Additionally, the Pharmaceutical-Pak is extremely portable and easy to store.

**Food-Pak** (from 3.6. Future Products)

Besides allowing for current foodstuffs to be showcased in a completely new way (e.g., fresh fruit packaged above a yogurt), there are many items that have yet to be developed because this packaging has yet to be revealed. We have interest with three new foodstuffs and beverages: (1) a drink mix that allows for it to be blended with the water in the bottom, (2) a line of soups that have add-ins above (crackers, matzoballs, etc.), and (3) mixed drinks for airline service. Our packaging allows for an excitement and cost-saving in food preparation, impulse sales, and convenience.

## 3.3 Sales Literature

We will begin to work on a line of brochures and sales materials to assist in our marketing. Our strategic partner, X-ugiss, will publish an extensive website with product descriptions and graphics, as well as, press, manufacturing, and mission statement videos. Celebration Cup literature (which has already been prepared by Compak) is attached as an appendix.

## 3.4 Sourcing

We do not need to look outside of our strategic partners for anything to start manufacturing and selling. These partners come from the fields of food contract manufacturing, medical contract manufacturing, packaged goods sales, national and international distribution, exporting, marketing, and web development. The alliances we build through them utilize each of the areas we need to become successful, without qualification. Each of our partners have a vested interest in the profit of their area of responsibility and therefore guard against any wastes of hard costs or time.

Although, on rare occassions, we may need to obtain an item for production from outside of

our geographical area, those times will be infrequent and costs for such will be controlled. Since our products are manufactured in such high numbers, we are fortunate to be able to buy in quantities that allow us maximum savings.

Listed here are our initial product offerings and who will be responsible for manufacturing them.

**Christians (Celebration Cup)** - Compak is manufacturing and selling this product in the U.S. to controlled markets. We can use their same production facilities to add to this market and approach Compak contacts in Central and South America that they have not had the ability to follow up on. Should we need to begin our own manufacturing, we can utilize our partner, Olmarc, and use all of the technology of Compak.

**Nutritionally Deprived (Nutri-Pak)** - Compak will be manufacturing and selling this product in China to their school children. They will export to our needs until we are ready to begin manufacturing through our partner, Olmarc. Compak will provide us with the technology to begin that manufacturing.

**U.S. Outdoor (Nutri-Pak)** - Compak will be manufacturing and selling this product in China to their school children. They will export to our needs until we are ready to begin manufacturing through our partner, Olmarc. Compak will provide us with the technology to begin that manufacturing.

**Dental Needy (Dental-Pak)** - Compak will be manufacturing and selling this product in China to their school children. They will export to our needs until we are ready to begin manufacturing ourselves. Since this is more of a medical than food product, we have the option of manufacturing through our partner, Virotek. However, we may be able to use the same Pak size as the Celebration Cup and would therefore use the production capabilities of our partner, Olmarc. Compak will provide us with the technology to begin that manufacturing.

**Oral Cosmetics (12-Hr Mouthwash)** - The top-sealing unit of the machine making this product will need to be retooled from the Dental-Pak. Providing for the initial amounts of this product, we will be able to use our development machine (capacity is approximately 12 M Paks a year) or buy a used machine with our partner Virotek on which we could quintuple production. This machine could then be used to manufacture other products from our medical groupings. We may also have the opportunity to use a third party, who is buying products, to pay for the larger machine. If that were the case, we would still use Virotek for medical production. We would be responsible for the final sealing technology.

**Convenience Med (Consumer Pak)** - None of the current machinery use on other products has been tooled to make prototypes of this product yet. This product has yet to be sold and its final technology and machinery will be developed with funds from the purchasing party in a joint venture or through financing from purchase orders. Our partner, Virotek, will be used for the manufacturing process.

**Antibiotics (Pharmaceutical Pak)** - None of the current machinery use on other products has been tooled to make prototypes of this product yet. This product has yet to be sold and its

final technology and machinery will be developed with funds from the purchasing party in a joint venture or through financing from purchase orders. Our partner, Virotek, will be used for the manufacturing process.

**Showcase Foods (Food-Pak)** - These products have not been chosen yet so it has not been decided yet if any of the technology is available without retooling. The Nutri-Pak technology may be the used without change. In any case, any costs associated with these products will come from a joint venture or through financing from purchase orders. Our partner, Olmarc, will be used for the manufacturing process.

## 3.5  Technology

We have acquired the rights to manufacture safe, easy-to-use, patented, two compartment packages which may be filled with both a liquid and a solid under separate seals. Due to the inherent proprietary design and manufacturing characteristics of the package, it boasts multiple advantages over traditional packaging design methodologies. Where, traditionally, two separate packages (consisting individually of a solid and a liquid) may have been required to bring these two types of products together, we have eliminated that dilemma. This patented design allows single serving quantities of both a solid and a liquid to be sealed together in the same package. Compak Corporation had successfully developed its first patent for the use of its package for a Communion product in September of 1993. The exclusive use of three additional patents to date, protecting the package design against any unspecified use applicable to any size, have been acquired. Additionally, Compak has secured international patents. Significant advantages inherent in the this packaging technology include:

**Cost Advantage** - Due to the proprietary nature of the one piece, dual lid system, the packing process is completed in one step by a single piece of packaging machinery resulting in reduced labor and machine costs relative to competitors who are forced to utilize a two step (or even a two company) process. This process also consumes less packaging materials than the two step, two package approach -- further increasing the cost advantage.

**Extended Shelf Life** - To insure maximum sanitation, products are packaged in either a hygienic and/or aseptic environment (sealed against the escape or entry of air or contaminants) using a form, fill, and seal machine resulting in an extended, non-refrigerated shelf life.

**Convenience** - The unique dual lid system allows a solid and a liquid to be conveniently packaged together. The need for two separate containers is eliminated.

**Reduced Waste & Disposal** - The unitary package approach creates less waste to be disposed of versus the two package approach.

## 3.6  Future Products

### Consumer-Pak

Utilizing the double-lid system, pure water under the first seal will be combined with various medications (i.e., pain relievers, antacids, etc.) under the second. The Consumer-Pak will make it possible for medication to be taken where drinking water is unavailable or inconvenient. For the vacationer or business traveler, problems associated with the availability or, more importantly, safety of drinking water, are eliminated by this product. Additionally, the convenience of simply combining pure water with medication eliminates a great deal of the difficulty in administering medicine. This product will be released with partners that already have components that will fit the profile we need to manufacture and distribute for maximum success potential.

### Pharmaceutical-Pak

The instability of antibiotic solutions such as penicillin and tetracillin require freeze-dried drugs which must be packed separately with a liquid solvent. The current method of packaging is an ampule (glass vial) which contains the liquid and a small bottle containing the powder. This makes the process of giving injections very complex. First, a health professional must score the neck of the ampule and clean it with a sterilizing agent such as a 70 percent alcohol solution. They must then break the ampule and again clean the newly exposed edge. The solution can then be drawn into the syringe. The health professional must then clean the metal top of the small bottle containing the freeze dried medicine. The liquid is injected into this small bottle and shaken to complete the mixture. Then the medication is finally drawn into the syringe. The "Pharmaceutical-Pak" is a proprietary development that allows the user, by simply pressing the package lid, to combine freeze-dried drugs with a liquid based solvent. The drug, upon entering the water, activates and quickly dissolves. A syringe may then be inserted into the cup in order to extract the mixture.

### Food-Pak

Allowing our strategic partners to approach the major food manufacturers, there have already been a number of ideas and requests for more information. Some of the ideas that have been presented are in mixed liquid items, cross-promotional solid food products, and joint industry products (e.g., toy and drink). A special team of members from major food corporations has been put together to brainstorm ideas for products, and explore marketing and manufacturing aspects of bringing these new products to the marketplace. This team is under development and confidentiality agreements with Duo-Tech and have a vested interest in its success. Any arrangements for manufacturing of such ideas would come from manufacturing financed operations.



## 4.0 Market Analysis Summary

As a whole, our company is reflected as a marketer of packaged goods for the good of human use. There are many ways that we can market each of our products. Even though our products are unique and proprietary, that does not mean that they will be readily accepted. In some cases, we will have to present each of them to a new market: a market that does not understand the product itself -- or the benefit of such. However, our strategic partners are so well entrenched in the fields that we are entering, we are well ahead of the sales cycle to make each of our products a successful commodity.

Since we are providing the overall organization and management of our company to interface all of our partners and bring an identity for our technology to the world, we have planned for our partners to use their experience to market their particular products under our guidelines. Thus, our sales will reflect the expertise, less the financial outlay, to maximize potential. Our contracts with our partners will reflect their need to reach certain sales milestones and to bear the burden for such. Their profit structure is predicated on their success. Our profit structure is predicated on us keeping our needs in focus and conveying that focus to each of them.

### 4.1 Market Segmentation

Our initial market research and projections are displayed in the accompanying table and chart. Each of the line items for these assumptions are explained below.

**Christians (Celebration Cup)** - Although there are literally billions of religious members who could respectfully use our product, these numbers reflect the current protestant members in the U.S. [87 M], and the potential orders in Central and South America [60 M and 90 M] that are being pursued. These numbers reflect members only: not multiple usage of the product during the year. Growth is from the normal increase in Christians over the past eight years.

**Nutritionally Deprived (Nutri-Pak)** - The initial sales of the Nutri-Pak (by Compak) are being sold to the school children of China through a contract with the Shanghai Education Board for the delivery of thirty million Nutri-Paks per year and has received letters of intent with four additional education districts to finalize twenty year contracts to provide Nutri-Pak on an exclusive "in-school" basis . Together, these four school districts comprise over twenty million children, yet represent only ten percent of the Chinese school market. In these school districts, Nutri-Pak will be the only product made available by the school to the students at break time. Besides having the option to create similar relationships with other countries, Duo-Tech will initially focus on various relief organizations [11.2 M children, age five and under die each year from hunger related diseases]. This number reflects children's death only: not daily, life-sustaining usage. Figures come from the Feeding Children International and the World Emergency Relief organizations.

**U.S. Outdoor (Nutri-Pak)** - Through a different nutrient formula (already developed) than

the children's Nutri-Pak (above), the U.S. campers market [42 M] would be our first entry for a U.S. consumer product. This number reflects campers only: not multiple purchases for camping trips. Figures come from the Sporting Goods Manufacturers Association.



**Dental Needy (Dental-Pak)** - In a similar co-venture as listed in the Nutritionally Deprived section above, Compak will provide school children with Dental-Paks to be distributed through the same network being utilized for the Nutri-Pak product. Duo-Tech will market a specific formula for the elderly in this country who are in hospitals, nursing homes, and those who are self-sufficient. These persons may find it necessary to use a mix of our Dental-Pak to prevent gum disease thus preventing the loss of their teeth. This number reflects the elderly over the age of seventy-five [15 M]. This number reflects the elderly population only: not daily usage. Figures come from the U.S. Census Bureau.



**Oral Cosmetics (12-Hr Mouthwash)** - One of the most cosmetically exciting products needing our technology (because of the half-life of the reactive agents) is this product that we will aim at the U.S. market for adults aged 25-45 [80 M]. This product will be sold through an international pharmaceutical company and also private labeled. This number reflects age demographics only: not daily or bi-daily usage. Figures come from the U.S. Census Bureau.

**Convenience Med (Consumer Pak)** - The international traveller from the U.S. [137 M] may desire to travel with self-contained remedies. Our double-lid system, allowing pure water under the first seal to be combined with various medications (i.e., pain relievers, antacids, etc.) under the second, give this traveller the most convenient method to protect themselves. Number of passengers do not account for their desire to pack more than one medication or multiples of a single medication. Figures come from the U.S. Department of Transportation.

**Antibiotics (Pharmaceutical Pak)** - Annual sub-Saharan deaths in Africa [29.7 M] can oftentimes be denied with antibiotics. Unlike current methods of injectionable drug storage, our injection system allows the medical community to administer injections without the added risk of exposure to airborne bacteria and other contaminants. It also avoids the danger of the health professionals being cut while breaking glass ampules that are currently used. This number reflects the dying population only: not multiple necessary usages. Figures come from the U.S. Department of Commerce.

**Showcase Foods (Food-Pak)** - Although this marketplace has not been explored by Compak yet, that is only because they did not have a strategic partner to do so. Duo-Tech's partners are well entrenched in the U.S. food industry and are exploring many ideas for co-developed products. Demographics may allow us to enter this market in the age group of 5-19 [61 M] so as to eliminate the need for cost constraints. This number represents U.S. population in that age group only: not purchases of the many products can be sold to this demographic. Figures come from the U.S. Census Bureau.

## Market Analysis (Pie)



- ■ Christians (Celebration Cup)
- ■ Nutritionally Deprived (Nutri-Pak)
- ■ U.S. Outdoor (Nutri-Pak)
- ☐ Dental Needy (Dental-Pak)
- ■ Oral Cosmetics (12-Hr Mouthwash)
- ▦ Convenience Med (Consumer Pak)
- ■ Antibiotics (Pharmaceutical Pak)
- ■ Showcase Foods (Food-Pak)

**Table 4.1: Market Analysis**

Market Analysis

| Potential Customers | Growth | 2001 | 2002 | 2003 | 2004 | 2005 | CAGR |
|---|---|---|---|---|---|---|---|
| Christians (Celebration Cup) | 6% | 237,000,000 | 251,943,000 | 267,802,653 | 284,674,220 | 302,608,696 | 6.30% |
| Nutritionally Deprived (Nutri-Pak) | 0% | 11,200,000 | 11,244,800 | 11,289,779 | 11,334,938 | 11,380,278 | 0.40% |
| U.S. Outdoor (Nutri-Pak) | 4% | 42,000,000 | 43,470,000 | 44,991,450 | 46,566,151 | 48,195,966 | 3.50% |
| Dental Needy (Dental-Pak) | 3% | 15,000,000 | 15,450,000 | 15,913,500 | 16,390,905 | 16,882,632 | 3.00% |
| Oral Cosmetics (12-Hr Mouthwash) | 2% | 80,000,000 | 81,200,000 | 82,418,000 | 83,654,270 | 84,909,084 | 1.50% |
| Convenience Med (Consumer Pak) | 7% | 137,000,000 | 146,453,000 | 156,558,257 | 167,360,777 | 178,908,671 | 6.90% |
| Antibiotics (Pharmaceutical Pak) | 10% | 29,700,000 | 32,670,000 | 35,937,000 | 39,530,700 | 43,483,770 | 10.00% |
| Showcase Foods (Food-Pak) | 2% | 61,000,000 | 62,220,000 | 63,963,136 | 65,498,251 | 67,070,209 | 2.40% |
| Total | 5.30% | 612,900,000 | 644,882,800 | 678,873,775 | 715,010,212 | 753,439,306 | 5.30% |

## 4.2  Target Market Segment Strategy

Except for the Celebration Cup, we will need to present each of our products to their
marketplaces as new ideas. This would be a daunting task for any company regardless of the
excitement generated pre-release. Fortunately, our company does not have to deal with that
complication. Not only is the research and development of our initial products complete, but
our strategic partners know each of their marketplaces and have numerous products already
deeply entrenched in them. It is through these partnerships that we have identified specific
entry points.

Each of our products address societal needs in the areas of usefulness and cost. The growth of
each marketplace is healthy and because of our unique product lines, we anticipate the trend
to use them will rise as society learns more about them.

## 4.3 Industry Analysis

In the packaging industry, innovation is not an option. When leading companies and brands fail to innovate, someone else steps in to do it for them. But when companies do innovate, they can successfully strengthen brand values among existing customers and extend them to new ones. Because of the R&D that Compak has already done, our strategic partners will be able to go to their clients to give them something new for their product categories. We can help them increase sales and profits and reach new consumers because a new package design will give them an incremental advantage over their competitors.

We will never have an uninterested client because breakthrough technology generally takes longer, costs more and brings higher risks -- and there's no guarantee of marketplace success. Unlike incremental improvements, at the beginning of the project, there's often no road map to the final destination. Once again, our strategic partners walk into open doors with technology that brings things that opens the marketing imagination.

As if these issues were not challenging enough, successful new technology also requires a near-perfect sense of timing, of being an idea whose time has come. It takes a strong shared commitment by players across the package value spectrum, often led, or driven, by a visionary company. Compak has been that company and has given us an unprecedented role in its success to be able to sell, and sell more, for our own success.

Besides our packaging opportunities in the industry, we also have our own line of products that are paramount in troubled financial times and places because of their shelf life, raw material savings, and shipping features. Not only do specialty items always capture the essence of the marketed public, but our line of health and medical products that are able to be produced because of the mixing capability of our process, allow us to extend our ideas into new marketplaces. We will be flexible enough to examine all opportunities brought to us to strengthen the packaging industry with new products, and do so using the same machinery that is readily available for other packaging processes.

## 5.0  Strategy and Implementation Summary

Duo-Tech is focused on exploiting our proprietary packaging technology through market expansion for current products and identification of new product applications. Through each of our strategic partners, existing and developmental products bring to bear significant advantages over existing products. Whether a new market is being created or competition may or may not exist, our management team and our partners will perform extensive analyses toward precisely documenting the logic supporting a product's potential for success. However, underlying all of our efforts is an overwhelming desire to better the human condition and create value for our customers.

## 5.1  Strategy Pyramids

Since Compak was unable to finish its cycle from inception to sales, we have been allowed an easy learning curve. Instead of trying to handle all of the sales ourselves, we have strategically chosen partners that allow the deepest -- yet widest -- penetration into the product placement areas that we seek.

Duo-Tech will act as the organizational body for our sales efforts with our first level of market integration being our strategic partners. Each of these partners are well entrenched in their fields.

Each of our strategic partners then will work with their clients, the largest and most respected companies in medical product production, foodstuffs, and retail distribution.

Our clients have already formed individual teams that are comprised of executives from leading companies in this field to allow for expert input and open approaches to all types of opportunities.

## 5.2  Competitive Edge

Our patents allow our strategic partners and their clients the competitive edge to be the first with new packaging concepts. Not only does that allow for showcasing certain product, but it allows for new product to be developed where it is advantageous (or necessary) to keep a liquid from a solid until use time. Certainly, in the fields of medicine (injectables) and health (solid and liquid nutrition), our products are one-of-a-kind -- and may be perceived as necessary by the world community. It is because of our technology that we have a number of years in which to develop a strong base of recognition and sales. It is important that we recognize the needs and uses for our technology and build relationships that will allow this growth.

## 5.3 Marketing Strategy

We have chosen our first opportunities into various marketplaces because our strategic partners are well entrenched in the industries for those products. This partnering allows us to concentrate on regulating the company actions and staying focused on our business plan.

### 5.3.1 Positioning Statements

We are positioning our products in the following marketplaces:

**Celebration Cup** is for Christians who practice their religion, allowing them to receive Communion safely through the cleanliness and convenience of the packaging without on-site preparation and waste.

**12-Hour Mouthwash** is for virtually anyone who needs the best protection available for relationship reasons. Initially, we will target the middle age U.S. population who gets 25 times the protection of any competing product.

**Dental-Pak** is for those who need primary gum protection and cannot brush properly to protect their mouths. This product may be taken to kill germs, build resistance, and it is convenient to handle and use. Most specifically, in this country, we would make it available to the elderly.

**Nutri-Pak** is for the nutritionally-deprived and dying who cannot cook mainstays provided them. Dual packaged items control costs and are less expensive to deliver. Complete nutritional requirements can be met using the proper mixtures and solids per targeted recipients.

**Consumer-Pak** allows for the person needing medication to know that what they take is going to be only that. We will market this product to the international traveller leaving the U.S. who may be concerned about water supplies. This package will allow for medications to be taken as they are supposed to be.

**Pharmaceutical-Pak** should be used in any remote area when an injection is needed. Health care professionals avoid the danger of the being cut while breaking the ampules currently being used. They must also go through a double sterilization process which requires more effort and time.

**Food-Pak** gives the consumer of all ages an opportunity to get foodstuffs that were not available before our packaging. Besides tremendous potential to market new products to

youth, our product allows mixing processes that were never available before so that previous food mix restrictions are lifted.

### 5.3.2 Pricing Strategy

Remember that our cost advantages, extended shelf life, convenience, and reduced waste & disposal make our products attractive and sensible. The consumer has always been willing to pay for those features. However, in many cases, we bring products to the consumer that they have never thought of.

Fortunately, our products are unique enough so that they will not have a comparative barrier. It is not just that these products are packaged differently to create new markets for old products. In most cases, our products fill voids with products that were not available before our process. If our product line is put together properly, then we will be allowed to make a substantial entry into very profitable product lines.

### 5.3.3 Promotion Strategy

Our web technology will be unique and interactive. Our technology will allow potential clients to virtually see, design, and use our products to their advantage. Our strategic partners, whether it be from a church base or a cosmetic need, already have lines of distribution. Our product line, as described, has already been accepted and our promotion comes from the manufacturer, distributor, consumer sale company, and the retailer.

We have our own artists and our partners have technical writers and advertising departments. All costs are determined in the price of the product from its manufacturing cost structure. Initial literature will get created by our in-house design department and our marketing department will take advantage of every technologically developed communication tool available.

### 5.3.4  Marketing Programs

**Celebration Cup**

Compak has successfully proven acceptance for its Celebration Cup within the religious community and has established solid distribution channels for the Celebration Cup and created significant industry alliances. Sales relationships and endorsements have been developed with a multitude of large religious organizations and key distributors who are well connected throughout the Christian community, including Lifeway Christian Resources (the largest international distributor of religious supplies). Glenn Johnson, who was the director of the Communion Cup division of Compak for two years, will follow up on all international leads and begin our U.S. sales efforts by placing this product in a church's "curriculum." This is a regular quarterly rotation of products used in worship services. Costs for this type of marketing and order taking are inconsequential and will start immediately -- generating immediate profit.

**12-Hour Mouthwash**

This product is already being sold in a mixed form with 6-hour half-life. Because of our packaging, this can now be marketed in its 12-hour form. Walgreen's and Wal-Mart desire to private label this after the company holding the patent releases it through us.

**Dental-Pak**

We have teamed with the company holding the patent on the 12-Hour Mouthwash, who already has a distribution network throughout the country for dental products. Their distribution partner has lines open to hospitals and nursing homes. Our marketing and distribution will be a part of each of their sales staffs.

**Nutri-Pak**

We have been working with a world relief organization and a major religious organization to provide these nutrition meals to various parts of the world. We will import our first needs from Compak in China and we will begin setup of our own machinery here in the U.S. so that we can reformulate the cup to more of an energy base and sell it to the camping market. Our sales partner has already started to formulate the marketing with its client who is interested in providing this product.

**Future Products**

Our teams are in discussion to schedule release dates for these products and to assess the best way to do so.

Duo-Tech

## 5.4 Sales Strategy

Our website will offer complete public relations events, press releases, and network news stories, product roll-outs, both regular mail and e-mail contacts, animated details and descriptions, seminars, industry trade exchanges, and public education. We will use our interactivity to perform the tasks of many so that no idea, contact, or sale will get less than our full attention. Our company is being built on a team concept and communication is the strength of that base.

### 5.4.1 Sales Forecast

Our sales are not projected on the amount that we and our partners can sell. Our projections are based more on the amount of product that we can deliver. We are taking into account that Compak had many opportunities to sell in markets other than China and they were unable to capitalize on the requests they received.

We have eliminated any possibility of not capturing sales by (1) partnering with very strong, deeply entrenched companies in the fields we want to enter, (2) only developing products that have already been accepted by the clients of our partners as viable sales items, (3) bringing experts into our teams to handle everything from the books to the distribution. We realize that sales are made with good products, but we are well aware of the fact that product must be delivered in spec, on time, and customer service must be available to deal with every inevitable problem that will arise.

We are fortunate to have been given sales opportunities after extensive and expensive R&D has given us products that are unique and profitable. We will now meet our challenges by organizing our manufacturing and delivery needs to become a profitable and respected company: meeting our goals and living by our mission statement.

## Duo-Tech

**Sales Monthly**



Duo-Tech

Table 5.4.1: Sales Forecast

**Sales Forecast**

| Unit Sales | FY2002 | FY2003 | FY2004 |
|---|---|---|---|
| Celebration Cup | 22,000,000 | 40,000,000 | 80,000,000 |
| 12-Hour Mouthwash | 4,000,000 | 6,000,000 | 8,000,000 |
| Dental-Pak | 1,200,000 | 1,800,000 | 2,400,000 |
| Nutri-Pak | 9,000,000 | 18,000,000 | 36,000,000 |
| Future Products | 0 | 12,000,000 | 24,000,000 |
| Total Unit Sales | 36,200,000 | 77,800,000 | 150,400,000 |

| Unit Prices | FY2002 | FY2003 | FY2004 |
|---|---|---|---|
| Celebration Cup | $0.10 | $0.10 | $0.10 |
| 12-Hour Mouthwash | $0.24 | $0.24 | $0.24 |
| Dental-Pak | $0.22 | $0.22 | $0.22 |
| Nutri-Pak | $0.30 | $0.30 | $0.30 |
| Future Products | $0.00 | $0.35 | $0.35 |

| Sales | | | |
|---|---|---|---|
| Celebration Cup | $2,200,000 | $4,000,000 | $8,000,000 |
| 12-Hour Mouthwash | $960,000 | $1,440,000 | $1,920,000 |
| Dental-Pak | $264,000 | $396,000 | $528,000 |
| Nutri-Pak | $2,700,000 | $5,400,000 | $10,800,000 |
| Future Products | $0 | $4,200,000 | $8,400,000 |
| Total Sales | $6,124,000 | $15,436,000 | $29,648,000 |

| Direct Unit Costs | FY2002 | FY2003 | FY2004 |
|---|---|---|---|
| Celebration Cup | $0.07 | $0.06 | $0.06 |
| 12-Hour Mouthwash | $0.14 | $0.13 | $0.13 |
| Dental-Pak | $0.12 | $0.11 | $0.11 |
| Nutri-Pak | $0.22 | $0.22 | $0.22 |
| Future Products | $0.00 | $0.24 | $0.24 |

| Direct Cost of Sales | FY2002 | FY2003 | FY2004 |
|---|---|---|---|
| Celebration Cup | $1,540,000 | $2,400,000 | $4,800,000 |
| 12-Hour Mouthwash | $560,000 | $780,000 | $1,040,000 |
| Dental-Pak | $144,000 | $198,000 | $264,000 |
| Nutri-Pak | $1,980,000 | $3,960,000 | $7,920,000 |
| Future Products | $0 | $2,880,000 | $5,760,000 |
| Subtotal Direct Cost of Sales | $4,224,000 | $10,218,000 | $19,784,000 |

## 5.4.2  Sales & Distribution Programs

Our sales programs are built through our strategic partners and their clients, who are in the fields of medical and foodstuffs products. Our distributor partner already has distribution channels that cover the nation and extend to the Far East and Central and South America.

## 5.5  Strategic Alliances

### E. Greenberg Corporation
E. Greenberg Corporation is a packaging sales and marketing company. They have been in business for fourteen years. They offer services to supermarkets, fast food chains, industrial distributors, and the retail trade. They represent market leaders, as well as, specialty manufacturers in the packaging industry. As project members, they have been involved in all stages of the design, implementation, and marketing into local, regional, and national accounts. E. Greenburg has the ability and respect to put expert teams together to handle any new product and packaging ideas.

### Olmarc Packaging

Olmarc has two full service plants with ample room to set up production lines for all food items. Their production capabilities include everything from canning, pouching, cartoning, shrinking and overwrapping, blending and bottling, as well as, labeling, multi-packing and thermoforming. They provide a complete Technical Services department with online testing and production line monitoring capabilities. They have a full service test kitchen and a full complement of chemists. Their Engineering Services Department can design, build, and modify equipment, machinery, processes, and systems. If there is a company that needs to package a food item in this country, they know who Olmarc is.

## Star Promotions

Star is an established mass marketing distribution company. Their expertise in product selection and distribution has proven to enable its retail clients a receive a substantially higher return on their investment. They deal with many Fortune 500 firms and they have extensive relations with the major sports authorities, including the NFL, MLB, NBA, and NHL. They have an extensive fund raising division and are affiliated with various church groups and national enrollment organizations. Over the years, Star has cultivated many dependable and trusted importing and exporting channels. Their network of sales representatives encompass thirty states. Star specializes in "hot" markets across the country and regularly are able to call on every major retailer. They have proved over the years that when something needs to get into the hands of a consumer, they can answer the call.

## Virotek

Virotek is a new and unique rapid diagnostic manufacturing facility for medical technology products. They offer a host of contract R&D and manufacturing services, including: Injection Molding, Strip Manufacturing, Reagent Application, Lab Services, Cleanroom Assembly and Packaging. Their office staff can provide Distribution and Billing services. They maintain a full complement of scientists, engineers, mechanics, and electricians. their turnaround time for prototype parts is remarkably fast -- well below industry lead times. They maintain a complete machine shop and are constantly in development of faster processes for new, better, and more efficient solutions to their clients' needs. Efoora (Virotek's parent) is a business in Chicago's 50 To Watch.

## X-ugiss

X-ugiss has staff throughout the country who work together, bringing expertise from many fields of web development. Using the most current tools available, there is no website need that this company cannot handle. They can provide a client with static or dynamic designs, animation in the forms of GIF's, Flash, or Shockwave material, and videos from different formats, to place no restrictions on any of the information that a company needs to disseminate. Websites can be designed to allow for public viewing and/or password secured areas. And, if e-commerce is needed, X-ugiss has developed a proprietary, secure system with full flexibility to handle any number of products in any selling environment.

## 5.6  Milestones

The accompanying table shows specific milestones, with responsibilities assigned, dates, and (in most cases) budgets. We are focusing, in this plan, on milestones that can be accomplished to grow solidly and credibly.

**Table 5.6:  Milestones**

| Milestones Milestone | Start Date | End Date | Budget | Manager | Department |
|---|---|---|---|---|---|
| Contracts and Accounting | 6/1/01 | | $15,000 | Binkley | |
| Purchase/Lease Klockner CP-8 | 9/1/01 | | $100,000 | Johnson | |
| Rent Office Space | 7/1/01 | | $1,500 | Binkley | |
| Purchase Office Needs | 7/1/01 | | $1,000 | Management | |
| Computerize Office | 7/1/01 | | $10,000 | Carlson | |
| Begin Sample Production | 11/1/01 | | $5,000 | Johnson | |
| Begin Sales Efforts | 8/1/01 | | | Greenberg | |
| Begin Production | 12/1/01 | | | Partners | |
| Finish Website | 10/1/01 | | $15,000 | Carlson | |
| Extend Sales Efforts | 12/1/01 | | | Carlstrom | |
| Totals | | | $147,500 | | |

## 6.0  Management Summary

Dr. Kenneth Binkley will act as Chief Operating Officer and Bruce Carlson will act as the company manager handling daily activities. A triumvirate will present all growth and production issues to Bruce Carlson in order to allow for maximum information processing and planning before final decisions are needed. Dr. Binkley and Bruce Carlson will make final decisions that will be in the best interest of the company and in accordance with the company's business practices. The members of the triumvirate will be Ed Greenberg (representing sales), Glenn Johnson (representing production), and Arnold Carlstrom (representing distribution). Each management unit (as defined in 6.1 Organizational Structure) will have autonomous power to reach its goals and fulfill its responsibilities.

## 6.1  Organizational Structure

Our company is divided into the following areas of need and expertise.

**Triumvirate** - Ed Greenberg, Glenn Johnson, Arnold Carlstrom

**Financial Development** - Dr. Kenneth Binkley
**Legal** - Outside attorneys with interface through Dr. Kenneth Binkley
**Accounting** - Outside accountants with interface through Dr. Kenneth Binkley

**Internet Technology** - Bruce Carlson and X-ugiss
**Market Research** - Team of industry consultants with Triumvirate
**Marketing** - Bruce Carlson, Ed Greenberg

**Sales** - Bruce Carlson, Ed Greenberg, Arnold Carlstrom and Star Promotions

**Product Feasibility** - Triumvirate

## Duo-Tech

**Project Management** - Glenn Johnson, Arnold Carlstrom
**Product Development** - Ed Greenberg, Ken Marchetti and Olmarc, David Seitelman and Virotek
**Foodstuffs Manufacturing** - Ken Marchetti and Olmarc
**Medical Products Manufacturing** - David Seitelman and Virotek

## 6.2 Management Team

**Dr. Kenneth Binkley** [COO], Orthodontist, private practice, fluoride expert, teacher, lecturer, author.

**Bruce Carlson** [Manager], computer expert, entrepreneur for thirty years, four successful start-ups, two national.

**Arnold Carlstrom** [Distribution], officer/owner of Star Promotions, twelve years manufacturing management before Star.

**Ed Greenberg** [Sales], CEO of E. Greenberg Corporation, Hollywood productions, relationship builder, packaging expert.

**Glenn Johnson** [Production], five years with Compak, Director of Communion Division for two, process expert.

## 6.3 Management Team Gaps

At this time, through its strategic relationships, we see no gaps in our management team. It is imperative to understand, though, that acceptance of the status quo may sometimes stymie allowed growth -- or more importantly -- allow for lack of reaction in current product lines. Therefore, each member of the Triumvirate will be responsible for a certain number of the teams in the organizational structure. Each member of the Triumvirate and its teams will reap financial reward for the consequences of their success. It is this structure that allows us to invite industry leaders to build our growth. This control and ability to bring in the best team members at any time allow us to stay at our most productive and profitable level.

# Duo-Tech

## 6.4  Personnel Plan

The payroll and lead commissions will be as follows:

### Salaried
Dr. Kenneth Binkley - will draw against company percentage of profit. Benefits begin second fiscal year.
Bruce Carlson - will draw against company percentage of profit. Benefits begin immediately.
Glenn Johnson - will draw against company percentage of profit. Benefits begin immediately.

### Commissioned
Arnold Carlstrom - will receive payroll from Star Promotions.
Ed Greenberg - will receive a commission from sales on products and accounts that are assigned.

Table 6.4: Personnel

| Personnel Plan | | | |
|---|---|---|---|
| Personnel | FY2002 | FY2003 | FY2004 |
| Dr. Kenneth Binkley | $95,000 | $180,000 | $180,000 |
| Bruce Carlson | $180,000 | $180,000 | $180,000 |
| Glenn Johnson | $90,000 | $90,000 | $90,000 |
| Total Payroll | $365,000 | $450,000 | $450,000 |
| | | | |
| Total Headcount | 3 | 3 | 3 |
| Payroll Burden | $40,850 | $67,500 | $67,500 |
| Total Payroll Expenditures | $405,850 | $517,500 | $517,500 |

## 7.0  Financial Plan

Because of the unique opportunity to begin a company that is free of debt and has had all of its R&D done for it (through Compak Corporation), we stand an excellent chance of being a successful start-up company. We are inevitably drawn into more of a management role than trailblazing one, allowing for execution of our planning (based on other trials) and success based on solid, controlled principals.

## 7.1  Important Assumptions

Our financial plan depends on important assumptions, most of which are shown in the following table. The key underlying assumptions are:

*    We will regulate our own growth rate based on fulfillment of product deliveries into new marketplaces.
*    We assume, of course, that there are no unforeseen changes in technology to make products immediately obsolete.
*    We assume access to equity capital and financing sufficient to maintain our financial plan as shown in the tables.

Duo-Tech

**Table 7.1: General Assumptions**

General Assumptions

|  | FY2002 | FY2003 | FY2004 |
|---|---|---|---|
| Short-term Interest Rate % | 6.00% | 6.00% | 6.00% |
| Long-term Interest Rate % | 0.00% | 0.00% | 0.00% |
| Payment Days Estimator | 30 | 30 | 30 |
| Collection Days Estimator | 30 | 30 | 30 |
| Inventory Turnover Estimator | 0.00 | 0.00 | 0.00 |
| Tax Rate % | 25.00% | 25.00% | 25.00% |
| Expenses in Cash % | 5.00% | 5.00% | 5.00% |
| Sales on Credit % | 75.00% | 75.00% | 75.00% |
| Personnel Burden % | 11.17% | 15.00% | 15.00% |

## 7.2  Key Financial Indicators

The most important factor of our company is making sure that we start without financial need to manage properly. The orders currently available to us are well beyond our current production capability, but well within the productive capability of our strategic partners. Our growth in sales will be very hard to manage and it will to be done using the experience of each of our key managers. As such, the management of the company cannot be encumbered with worrying about start-up expenses. Although our strategic partners are arranging unique and cost-efficient options for us to begin manufacturing, all of the phases of our company must be able to run without qualification to build on the sales volume that will immediately be available to us.

Our margins will continue to rise as our buying for raw products continues to increase, allowing us to become as successful as other firms who are packaging with many years of experience.

### Benchmarks



## Duo-Tech

### 7.3 Break-even Analysis

Our break-even analysis is based on delivery of product. Since our costs are accumulated internally, we have the option of controlling such after startup. Between payroll, rent, utilities, and basic marketing costs, we think $40,000 is a good estimate of fixed costs.

Our assumptions on average unit sales and average per unit costs depend on averaging. The essential insight here is that our sales level seems to be running comfortably above break-even.

**Break-even Analysis**



**Monthly break-even point**

Break-even point = where line intersects with 0

Table 7.3: Break-even Analysis

| Break-even Analysis: | |
|---|---|
| Monthly Units Break-even | 769,231 |
| Monthly Sales Break-even | $130,000 |
| | |
| Assumptions: | |
| Average Per-Unit Revenue | $0.17 |
| Average Per-Unit Variable Cost | $0.12 |
| Estimated Monthly Fixed Cost | $40,000 |

## 7.4 Projected Profit and Loss

We expect income to hit $1,000,000 for our first full year, on a no cost vs. sale basis. Our company is solely profitable on its pass-through margins. It should increase to more than five million dollars by the third year of this plan, as four products should be in distribution to world markets by that time.

Table 7.4: Profit and Loss

Profit and Loss (Income Statement)

|  | FY2002 | FY2003 | FY2004 |
|---|---|---|---|
| Sales | $6,124,000 | $15,436,000 | $29,648,000 |
| Direct Cost of Sales | $4,224,000 | $10,218,000 | $19,784,000 |
| Other | $60,000 | $75,000 | $90,000 |
| Total Cost of Sales | $4,284,000 | $10,293,000 | $19,874,000 |
| Gross Margin | $1,840,000 | $5,143,000 | $9,774,000 |
| Gross Margin % | 30.05% | 33.32% | 32.97% |
| Operating expenses: |  |  |  |
| Advertising/Promotion | $0 | $0 | $0 |
| Travel | $0 | $0 | $0 |
| Miscellaneous | $0 | $0 | $0 |
| Payroll Expense | $365,000 | $450,000 | $450,000 |
| Payroll Burden | $40,573 | $67,500 | $67,500 |
| Depreciation | $27,900 | $27,900 | $20,400 |
| Leased Equipment | $0 | $0 | $0 |
| Utilities | $6,000 | $0 | $0 |
| Insurance | $2,500 | $0 | $0 |
| Rent | $9,000 | $9,000 | $12,000 |
| Contract/Consultants | $0 | $0 | $0 |
| Total Operating Expenses | $450,973 | $554,400 | $549,900 |
| Profit Before Interest and Taxes | $1,389,028 | $4,588,600 | $9,224,100 |
| Interest Expense Short-term | $7,268 | $8,340 | $8,340 |
| Interest Expense Long-term | $0 | $0 | $0 |
| Taxes Incurred | $345,440 | $1,145,065 | $2,303,940 |
| Extraordinary Items | $0 | $0 | $0 |
| Net Profit | $1,036,320 | $3,435,195 | $6,911,820 |
| Net Profit/Sales | 16.92% | 22.25% | 23.31% |

## 7.5 Projected Cash Flow

We expect to manage cash flow within the first two years with $500,000 of investment as initial equity investment. We will also borrow an additional $100,000 in the our first year to buy a small production and sample-making machine. The additional financing resources are required to finance the working capital of a growing business.

Duo-Tech

## Cash



Table 7.5: Cash Flow

Pro-Forma Cash Flow

|  | FY2002 | FY2003 | FY2004 |
|---|---|---|---|
| Net Profit | $1,036,320 | $3,435,195 | $6,911,820 |
| Plus: |  |  |  |
| Depreciation | $27,900 | $27,900 | $20,400 |
| Change in Accounts Payable | $147,537 | $775,027 | $818,042 |
| Current Borrowing (repayment) | $39,000 | $0 | $0 |
| Increase (decrease) Other Liabilities | $0 | $0 | $0 |
| Long-term Borrowing (repayment) | $0 | $0 | $0 |
| Capital Input | $0 | $0 | $0 |
| Subtotal | $1,250,757 | $4,238,122 | $7,750,262 |
| Less: | FY2002 | FY2003 | FY2004 |
| Change in Accounts Receivable | $180,000 | $273,703 | $417,757 |
| Change in Inventory | ($5,000) | $0 | $0 |
| Change in Other Short-term Assets | $0 | $0 | $0 |
| Capital Expenditure | $0 | $0 | $0 |
| Dividends | $750,000 | $2,500,000 | $5,000,000 |
| Subtotal | $925,000 | $2,773,703 | $5,417,727 |
| Net Cash Flow | $325,757 | $1,464,418 | $2,332,535 |
| Cash Balance | $340,757 | $1,805,175 | $4,137,711 |

## 7.6  Projected Balance Sheet

As shown in the balance sheet in the following table, we expect little change in our assets over the years since our company grows as a sales organization more than an asset-based entity.

## Duo-Tech

**Table 7.6: Balance Sheet**

**Pro-forma Balance Sheet**

| Assets | | | |
|---|---|---|---|
| Short-term Assets | FY2002 | FY2003 | FY2004 |
| Cash | $543,757 | $1,805,175 | $4,137,711 |
| Accounts Receivable | $19,000 | $453,703 | $871,430 |
| Inventory | $0 | $0 | $0 |
| Other Short-term Assets | $0 | $0 | $0 |
| Total Short-term Assets | $523,757 | $2,258,879 | $5,009,141 |
| Long-term Assets | | | |
| Capital Assets | $100,000 | $100,000 | $100,000 |
| Accumulated Depreciation | $27,900 | $55,800 | $76,200 |
| Total Long-term Assets | $72,100 | $44,200 | $23,800 |
| Total Assets | $552,857 | $2,303,079 | $5,032,941 |

| Liabilities and Capital | | | |
|---|---|---|---|
| | FY2002 | FY2003 | FY2004 |
| Accounts Payable | $147,537 | $922,564 | $1,740,606 |
| Short-term Notes | $139,000 | $139,000 | $139,000 |
| Other Short-term Liabilities | $0 | $0 | $0 |
| Subtotal Short-term Liabilities | $286,537 | $1,061,564 | $1,879,606 |
| Long-term Liabilities | $100,000 | $100,000 | $100,000 |
| Total Liabilities | $345,537 | $1,161,564 | $1,979,606 |
| Paid in Capital | $500,000 | $500,000 | $500,000 |
| Retained Earnings | ($133,000) | ($2,793,680) | ($4,358,485) |
| Earnings | $186,320 | $3,435,195 | $6,911,820 |
| Total Capital | $206,320 | $1,141,515 | $3,053,335 |
| Total Liabilities and Capital | $552,857 | $2,303,079 | $5,032,941 |
| Net Worth | $206,320 | $1,141,515 | $3,053,335 |

## 7.7  Business Ratios

Our ratios look healthy and solid. Gross margin is projected to stay at 30% and our net margin should level in at 22%. The ratios show a plan for balanced, healthy growth. Our return on sales and return on assets remain as strong as ever, actually increasing in percentage terms as volume increases.

# Duo-Tech

**Table 7.7: Ratios**

**Ratio Analysis**

| | FY2002 | FY2003 | FY2004 | Industry Profile |
|---|---|---|---|---|
| Sales Growth | 0.00% | 252.06% | 192.07% | 1.60% |

| Percent of Total Assets | FY2002 | FY2003 | FY2004 | Industry Profile |
|---|---|---|---|---|
| Accounts Receivable | 30.36% | 19.70% | 17.31% | 20.40% |
| Inventory | 0.00% | 0.00% | 0.00% | 20.80% |
| Other Short-term Assets | 0.00% | 0.00% | 0.00% | 22.60% |
| Total Short-term Assets | 87.84% | 98.08% | 99.53% | 63.80% |
| Long-term Assets | 12.16% | 1.92% | 0.47% | 36.20% |
| Total Assets | 100.00% | 100.00% | 100.00% | 100.00% |
| | | | | |
| Other Short-term Liabilities | 0.00% | 0.00% | 0.00% | 33.80% |
| Subtotal Short-term Liabilities | 48.33% | 46.09% | 37.35% | 32.20% |
| Long-term Liabilities | 16.87% | 4.34% | 1.99% | 22.00% |
| Total Liabilities | 65.20% | 50.44% | 39.33% | 55.80% |
| Net Worth | 34.80% | 49.56% | 60.67% | 44.20% |

| Percent of Sales | FY2002 | FY2003 | FY2004 | Industry Profile |
|---|---|---|---|---|
| Sales | 100.00% | 100.00% | 100.00% | 100.00% |
| Gross Margin | 30.05% | 33.32% | 32.97% | 29.30% |
| Selling, General & Administrative Expenses | 13.12% | 11.06% | 9.65% | 17.30% |
| Advertising Expenses | 0.00% | 0.00% | 0.00% | 0.30% |
| Profit Before Interest and Taxes | 22.68% | 29.73% | 31.11% | 3.70% |

| Ratios | FY2002 | FY2003 | FY2004 | Industry Profile |
|---|---|---|---|---|
| Current | 1.82 | 2.13 | 2.66 | 1.81 |
| Quick | 1.82 | 2.13 | 2.66 | 1.05 |
| Total Debt to Total Assets | 65.20% | 50.44% | 39.33% | 55.80% |
| Pre-Tax Return on Net Worth | 676.76% | 402.71% | 302.37% | 7.60% |
| Pre-Tax Return on Assets | 235.52% | 199.60% | 183.44% | 17.30% |

# Appendix: Duo-Tech

**Table 5.41 Sales Forecast**

| Sales Forecast | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | FY2002 | FY2003 | FY2004 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Unit Sales** | | | | | | | | | | | | | | | |
| Celebration Cup | 1,000,000 | | | | | | | | | | | 1,000,000 | 40,000,000 | 80,000,000 |
| 12-Hour Mouthwash | | 300,000 | 1,000,000 | 3,000,000 | | | 300,000 | 1,000,000 | 12,000,000 | | | | 430,000,000 | 8,000,000 |
| Dental-Pak | | | | 300,000 | 3,000,000 | 6,000,000 | | | | | 300,000 | 6,100,000 | 2,400,000 |
| Nutri-Pak | | | | | 3,000,000 | | | | | 6,000,000 | | 9,000,000 | 18,000,000 | 36,000,000 |
| Future Products | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 12,000,000 | 24,000,000 |
| **Total Unit Sales** | 1,000,000 | 300,000 | 1,000,000 | 3,000,000 | 3,300,000 | 6,000,000 | 300,000 | 1,000,000 | 12,000,000 | 6,300,000 | 1,000,000 | 36,300,000 | 77,800,000 | 156,400,000 |

| Unit Prices | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | FY2002 | FY2003 | FY2004 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Celebration Cup | $0.10 | $0.10 | $0.10 | $0.10 | $0.10 | $0.10 | $0.10 | $0.10 | $0.10 | $0.10 | $0.10 | $0.10 | $0.10 | $0.10 | $0.10 |
| 12-Hour Mouthwash | $0.24 | $0.24 | $0.24 | $0.24 | $0.24 | $0.24 | $0.24 | $0.24 | $0.24 | $0.24 | $0.24 | $0.24 | $0.24 | $0.24 | $0.24 |
| Dental-Pak | $0.22 | $0.22 | $0.22 | $0.22 | $0.22 | $0.22 | $0.22 | $0.22 | $0.22 | $0.22 | $0.22 | $0.22 | $0.22 | $0.22 | $0.22 |
| Nutri-Pak | $0.30 | $0.30 | $0.30 | $0.30 | $0.30 | $0.30 | $0.30 | $0.30 | $0.30 | $0.30 | $0.30 | $0.30 | $0.30 | $0.30 | $0.30 |
| Future Products | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.30 | $0.35 | $0.35 |

| Sales | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | FY2002 | FY2003 | FY2004 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Celebration Cup | $100,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $100,000 | $4,000,000 | $8,000,000 |
| 12-Hour Mouthwash | $0 | $0 | $240,000 | $240,000 | $0 | $0 | $0 | $0 | $240,000 | $0 | $0 | $240,000 | $1,440,000 | $1,920,000 |
| Dental-Pak | $0 | $66,000 | $0 | $0 | $66,000 | $66,000 | $0 | $0 | $0 | $66,000 | $0 | $0 | $396,000 | $528,000 |
| Nutri-Pak | $0 | $0 | $0 | $0 | $900,000 | $0 | $0 | $0 | $0 | $1,800,000 | $0 | $0 | $2,700,000 | $5,400,000 |
| Future Products | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $3,600,000 | $8,400,000 |
| **Total Sales** | $100,000 | $66,000 | $240,000 | $240,000 | $966,000 | $66,000 | $0 | $0 | $240,000 | $1,866,000 | $0 | $240,000 | $6,124,000 | $15,435,000 |

| Direct Unit Costs | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | FY2002 | FY2003 | FY2004 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Celebration Cup | $0.07 | $0.07 | $0.07 | $0.07 | $0.07 | $0.07 | $0.07 | $0.07 | $0.07 | $0.07 | $0.07 | $0.07 | $0.07 | $0.06 | $0.06 |
| 12-Hour Mouthwash | $0.14 | $0.14 | $0.14 | $0.14 | $0.14 | $0.14 | $0.14 | $0.14 | $0.14 | $0.14 | $0.14 | $0.14 | $0.14 | $0.13 | $0.13 |
| Dental-Pak | $0.12 | $0.12 | $0.12 | $0.12 | $0.12 | $0.12 | $0.12 | $0.12 | $0.12 | $0.12 | $0.12 | $0.12 | $0.12 | $0.11 | $0.11 |
| Nutri-Pak | $0.22 | $0.22 | $0.22 | $0.22 | $0.22 | $0.22 | $0.22 | $0.22 | $0.22 | $0.22 | $0.22 | $0.22 | $0.22 | $0.22 | $0.22 |
| Future Products | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.24 | $0.24 |

| Direct Cost of Sales | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | FY2002 | FY2003 | FY2004 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Celebration Cup | $70,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $70,000 | $2,400,000 | $4,800,000 |
| 12-Hour Mouthwash | $0 | $0 | $140,000 | $140,000 | $0 | $140,000 | $0 | $0 | $140,000 | $0 | $0 | $140,000 | $560,000 | $1,080,000 |
| Dental-Pak | $0 | $36,000 | $0 | $0 | $36,000 | $0 | $0 | $36,000 | $0 | $36,000 | $0 | $0 | $144,000 | $264,000 |
| Nutri-Pak | $0 | $0 | $0 | $0 | $660,000 | $0 | $0 | $0 | $0 | $1,320,000 | $0 | $0 | $1,980,000 | $3,960,000 |
| Future Products | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $3,360,000 | $5,760,000 |
| **Subtotal Direct Cost of Sales** | $70,000 | $36,000 | $140,000 | $140,000 | $210,000 | $140,000 | $0 | $0 | $140,000 | $1,356,000 | $0 | $140,000 | $4,354,000 | $10,728,000 |

Appendix: Duo-Tech

**Table 6.4 Personnel**

| Personnel Plan | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | FY2002 | FY2003 | FY2004 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Personnel | | | | | | | | | | | | | | | |
| Dr. Kenneth Binkley | $5,000 | $5,000 | $5,000 | $5,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $95,000 | $180,000 | $180,000 |
| Bruce Carlson | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $180,000 | $180,000 | $180,000 |
| Glenn Johnson | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $90,000 | $90,000 | $90,000 |
| Total Payroll | $27,500 | $27,500 | $27,500 | $27,500 | $32,500 | $32,500 | $32,500 | $32,500 | $32,500 | $32,500 | $32,500 | $32,500 | $365,000 | $450,000 | $450,000 |
| | | | | | | | | | | | | | | | |
| Total Headcount | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 |
| Payroll Burden | $3,383 | $3,383 | $3,383 | $3,383 | $3,380 | $3,380 | $3,380 | $3,380 | $3,380 | $3,380 | $3,380 | $3,380 | $40,150 | $67,500 | $67,500 |
| Total Payroll Expenditures | $30,883 | $30,883 | $30,883 | $30,883 | $35,880 | $35,880 | $35,880 | $35,880 | $35,880 | $35,880 | $35,880 | $35,880 | $405,150 | $517,500 | $517,500 |

Appendix: Duo-Tech

Table 7.1 General Assumptions

| General Assumptions | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | FY2002 | FY2003 | FY2004 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Short-term Interest Rate % | 6.00% | 6.00% | 6.00% | 6.00% | 6.00% | 6.00% | 6.00% | 6.00% | 6.00% | 6.00% | 6.00% | 6.00% | 6.00% | 6.00% | 6.00% |
| Long-term Interest Rate % | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Payment Days Estimator | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 |
| Collection Days Estimator | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 |
| Inventory Turnover Estimator | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Tax Rate % | 25.00% | 25.00% | 25.00% | 25.00% | 25.00% | 25.00% | 25.00% | 25.00% | 25.00% | 25.00% | 25.00% | 25.00% | 25.00% | 25.00% | 25.00% |
| Expenses in Cash % | 5.00% | 5.00% | 5.00% | 5.00% | 5.00% | 5.00% | 5.00% | 5.00% | 5.00% | 5.00% | 5.00% | 5.00% | 5.00% | 5.00% | 5.00% |
| Sales on Credit % | 75.00% | 75.00% | 75.00% | 75.00% | 75.00% | 75.00% | 75.00% | 75.00% | 75.00% | 75.00% | 75.00% | 75.00% | 75.00% | 75.00% | 75.00% |
| Personnel Burden % | 12.30% | 13.30% | 12.30% | 12.30% | 12.30% | 10.40% | 10.40% | 10.40% | 10.40% | 10.40% | 10.40% | 10.40% | 11.15% | 13.10% | 13.00% |

# Appendix Ex. 60

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In Re:

COMPAK CORPORATION,                    )   No. 02B22594


TRANSCRIPT OF PROCEEDINGS OF 363 SALE held
in the above—entitled matter in the Courtroom of the
HONORABLE JOHN H. SQUIRES, 219 South Dearborn, Chicago,
Illinois, on the 19th day of March, 2003, at the hour of
2:00 o'clock p.m.

2

1        MR. DAVIS:  If I could have your attention,

2  please, my name is Mike Davis.  I'm the attorney for

3  Compak Corporation.  I originally began this as the

4  attorney for Communion Packaging.  I was hired, by leave

5  of Bankruptcy Court, for the purpose of assisting Compak

6  Corporation in conducting the sale.

7        This sale is -- let's talk about a few

8  elements of the sale.  First of all, this sale is being

9  conducted pursuant to Section 363 of the Bankruptcy Code

10  and is being conducted pursuant to a motion that was

11  sent out on notice to all creditors and all parties in

12  interest.  In that motion, there was an asset purchase

13  agreement that was attached to that.  That asset

14  purchase agreement represented a bid for all of the

15  assets of Compak Corporation.  That was sent out as a

16  representative sample and the bid procedures were

17  approved by the Bankruptcy Court before the motion to

18  sell pursuant to Section 363 was sent out on notice.

19        There are several issues that we need

20  to discuss, I believe, before the bidding begins.  The

21  first issue is that this sale being conducted today is

22  being recorded by a court reporter.  So when you stand

23  and when you have any comments, if you would please

24  precede the comments that you make by introducing

25  yourself so that the court reporter can tell who it is

3

1   that's talking.  Also if you would speak audibly and

2   loudly and remember that the court reporter can't take

3   down any nods of the head or assent, anything along

4   those lines, that the court reporter needs to be able to

5   take down a verbal comment.  Okay?

6                   I'd like to begin by addressing two

7   particular issues.  There are two pieces of information

8   which I have been given in the last 15 minutes.  The

9   first piece of information was a statement that

10  Mr. Johnson made pursuant, as we were dealing with the

11  objections of Mr. Green in relation to the ownership of

12  the patent.  And seeing as I've had a conversation with

13  Mr. Johnson and he has explained what the purpose of his

14  statement was, I believe in the essence of, in the

15  spirit of full disclosure that he needs to clarify those

16  statements.  That's number one.

17                  Number two is I have been informed in

18  the last five minutes that Mr. Johnson is represented by

19  Mr. Ariel Weissberg; that Mr. Weissberg is his personal

20  attorney.  In addition, Mr. Johnson filed with the court

21  yesterday a statement in reference to the sale of the

22  assets which indicated that I, Jim Johnson, make no

23  representations or warranties in reference to the sale

24  of the assets scheduled for March 20th in this court,

25  including the rights of Compak Corporation, or Communion

4

1   Packaging Company, to any intellectual assets.

2           Obviously, that was the subject of the

3   discussion that we were having prior to this, prior to

4   conducting the sale with Judge Squires.  And because I

5   was not aware that Mr. Johnson had filed that with the

6   court yesterday and because this is the first time that

7   I have seen this document, it is necessary that document

8   be made known to any potential bidder in the room at

9   this particular point in time.  I think in light of

10  Judge Squires' comments that this sale can be conducted

11  and, buyers beware.  As long as there is a level playing

12  field that statement needs to be taken into

13  consideration in relation to any debt.

14          Yes, sir?

15          MR. GREEN:  I have not seen the document.

16          MR. DAVIS:  Could you please state your name.

17          MR. GREEN:  Russell Green, attorney for BMJ

18  Partners.  I have not seen the document in which those

19  statements were contained.  My question is is he making

20  those in his individual capacity as Jimmy Johnson, or is

21  he making them as an officer and agent of Compak

22  Corporation that has already represented and warranted

23  that it owns good title to that patent.

24          MR. DAVIS:  Well, it indicates that I, Jim

25  Johnson, makes no representations or warranties in

5

1   reference to the sale of the assets.  Now certainly the

2   bankruptcy estate and the debtor would have a claim in

3   the event that he was making those representations and

4   warranties as a corporate officer because there are

5   representations and warranties on file at this

6   particular point in time.  However, it may be again in

7   the interest of the bidders today and, in the interest

8   of full disclosure, I would welcome any potential bidder

9   that has questions about Mr. Johnson's statement in the

10  prior hearing or in relation to the statement that he

11  filed with the Bankruptcy Court yesterday to be free to

12  ask those questions.

13              Again, I would like to reiterate that

14  Ms. Lopez and myself, as attorneys for the debtor, heard

15  those statements the first time when Mr. Johnson made

16  them, and this is the first time that I have seen the

17  statement made by Mr. Johnson.  So with that in mind,

18  the floor is open for questions.

19              MR. JONES:  Michael Jones, attorney on behalf

20  of Louis A. Holland and Holland Capital Management.  Is

21  Nationwide Trucking still a stalking horse bidder in

22  this auction?

23              MR. DAVIS:  No.  They have withdrawn their

24  bid.

25              MR. JONES:  So Mr. Weissberg no longer

6

1  represents Nationwide Trucking?

2          MR. DAVIS:  I do not know that.

3          MR. JONES:  And he now represents

4  Mr. Johnson?

5          MR. DAVIS:  He'd indicated to me about four

6  minutes ago that he is Mr. Johnson's personal attorney.

7          MR. JONES:  Okay.  I just wanted to make that

8  clear.

9          MR. DAVIS:  Mr. Green?

10          MR. GREEN:  Russell Green, again.  The

11  record, of course, will be what it is with respect to

12  what Mr. Johnson said verbally earlier.  I understood

13  him to say that the patent being sold, number 5246106,

14  may not be the patent under which manufacturing is

15  occurring.

16                  My question to you, and I think it is a

17  legitimate question to ask, are there other patents

18  being used by Compak or Communion to manufacture

19  communion cups?  And, if so, what is the nature of the

20  agreement pursuant to which they're being used?  That is

21  a corporate activity of the debtor-in-possession.  And

22  if there is either a written assignment; or a written

23  and contractual agreement; or a verbal agreement, we're

24  entitled to know that and what the terms and conditions

25  are.

7

1    MR. DAVIS: That's correct. Let me explain

2 what Mr. Johnson explained to me. Mr. Johnson can

3 supplement this, if necessary, but what he explained is

4 that the communion cup is currently being produced on

5 the CP-11 machine. In order for the CP-11 machine to

6 produce the communion cup that is the patent being sold,

7 it would have to be adapted for that purpose. The

8 communion cup that is currently being produced by the

9 CP-11 machine has been altered and is not the product

10 represented in the patent that's being sold. It does

11 not mean that the CP-11 machine cannot produce the

12 patent that is being sold. And, in fact, the communion

13 cup that is now being manufactured is a communion cup

14 that is not covered by the patent that's being sold.

15    Again, in order for the CP-11 to

16 produce the patented, in order for it to produce the

17 communion cup represented by the patent that is being

18 sold today, that machine has to be modified. It

19 requires some adapters in order to be able to

20 manufacture it. There is a communion cup patent that is

21 being sold that the debtor has the rights to and that is

22 the communion cup patent that is being sold today.

23    MR. GREEN: What rights does it have to the

24 patent that is actually being used?

25    MR. DAVIS: The product that's being

8

1   manufactured is not subject to a patent because it's

2   been modified because the machine wouldn't produce the

3   patented cup without the adapters.

4           MR. JOHNSON:  Basically, yes.

5           MR. DAVIS:  In addition, let me say one other

6   thing.  The reason why Mr. Johnson brought that up is

7   because yesterday, last night, he had a conversation

8   with his patent attorney.  And the patent attorney

9   indicated that he felt in the interest of full

10  disclosure that he should reveal that the product being

11  manufactured by the CP-11 was not covered by the patent

12  but that the CP-11 could manufacture the patented

13  product with adapters.

14           Any other questions?

15          MR. GREEN:  I have another one, Russell

16  Green.  I had a conversation earlier with Ms. Lopez

17  about the monthly operating statements.  I noticed from

18  an examination of them for a period of several months

19  they have scheduled inventory, I'll say $62,000 in round

20  numbers, which appears to have been inconsistent with

21  verbal representations made by Ira Williams to me.  And

22  they were not made on the record, but I believe they

23  need some clarification.  Is there $62,000 in inventory

24  being sold today?

25          MR. JOHNSON:  Jim Johnson,

9

1  debtor-in-possession.  The way it worked and the reason

2  I want to be very clear, it wasn't to be adverse, it was

3  to let everybody know what you are really buying and the

4  same for your question.

5          MR. GREEN:  You're not responding to my

6  question.

7          MR. DAVIS:  Jim, the question is about the

8  inventory.

9          MR. JOHNSON:  Okay.  Restate it, please.

10          MR. GREEN:  Is the $62,000 of inventory

11  reported for the last three months on operating

12  statements sworn to by the debtor-in-possession being

13  sold today?

14          MR. JOHNSON:  No, it's not being sold.

15          MR. GREEN:  Does that mean those statements

16  are false?

17          MR. JOHNSON:  You're saying are they being

18  sold today?

19          MR. GREEN:  Yes.

20          MR. JOHNSON:  I don't think we have a sale at

21  $62,000 today.

22          MR. DAVIS:  Well, Jim, let me ask you this,

23  the monthly operating reports represented that there's

24  $62,000 worth of inventory.

25          MR. JOHNSON:  Right.

10

1    MR. DAVIS:  Is there $62,000 worth of

2  inventory?

3    MR. JOHNSON:  As of what day?

4    MR. DAVIS:  As of the end of the month of

5  February?

6    MR. GREEN:  And January 31st and December

7  31st.

8    MR. JOHNSON:  Could I explain it, or do I

9  have to answer yes or no?

10    MR. DAVIS:  Well, I think the question is

11  does the debtor own inventory?

12    MR. JOHNSON:  No.

13    MR. DAVIS:  Where does that number come from?

14    MR. JOHNSON:  It's purchase orders or

15  potential sales.  We never owned inventory.  We ship it

16  the day we make it.

17    MR. DAVIS:  Okay.  So you characterize that

18  on your monthly operating report as inventory, right?

19    MR. JOHNSON:  Work in process.

20    MR. DAVIS:  Work in process?

21    MR. JOHNSON:  I guess it would be called work

22  in process.

23    MR. DAVIS:  Okay.  And so today any work in

24  process that you have is being sold?

25    MR. JOHNSON:  Right, absolutely.

11

1        MR. GREEN:  The number didn't change for
2  three months.  Is it different today?
3        MR. JOHNSON:  I don't know.  The number
4  didn't change for three months?
5        MR. GREEN:  You signed those statements,
6  Mr. Johnson.  Your signature appears on those
7  statements.
8        MR. JOHNSON:  I don't know.
9        MR. GREEN:  Take a look at it.
10        MR. JOHNSON:  I don't know to be honest with
11  you.
12        MR. DAVIS:  But the question is I think
13  whatever work in process exists today, did you
14  characterize on the monthly operating report that is
15  being sold?
16        MR. JOHNSON:  That is being sold, right.
17        MR. DAVIS:  Okay.  Are there any other
18  questions?
19                  Yes?
20        MR. ROSE:  My name is Mark J. Rose.  I
21  represent Arlington Tool, Incorporated.  Did the debtor
22  ever prepare an itemization of the assets to be offered
23  for sale of the individual lots?
24        MR. DAVIS:  The debtor prepared itemization
25  of certain assets that were sent around to interested

12

1  parties, the receivables level; the cash, although the

2  cash isn't being sold; the receivables level; the cash,

3  those were sent around.

4          MR. ROSE:  Is there any machinery or

5  equipment besides the CP-11 machine that's being offered

6  for sale this afternoon?

7          MR. DAVIS:  There is no other machinery or

8  equipment that the debtor owns.

9                    Yes?

10         MR. GREEN:  Russell Green, again.  Does that

11 mean on the Compak Corporation list of assets to be sold

12 that we can remove items D and H?

13         MR. DAVIS:  Which are?

14         MR. GREEN:  D is all rights as they exist in

15 the CP-11; and H is all rights as they exist in the Case

16 Packer equipment.

17         MR. DAVIS:  Say that again.

18         MR. GREEN:  You just said there's no

19 equipment being sold, correct?  So my question was does

20 that mean we can remove from this list item D and item

21 H?

22         MR. DAVIS:  Well, first of all, it doesn't

23 say that we are selling the machine.  It says that we're

24 selling all rights that we may have in the machine.  So

25 to the extent that we have a lease, to the extent that

13

1  we have that, we, the debtor, will sell their interest

2  to whoever the buyer is.

3          MR. GREEN:  Well --

4          MR. DAVIS:  Whatever that interest is.

5          MR. GREEN:  For the sake of clarity, I think

6  we both know that the debtor has no rights whatsoever in

7  the CP-11.

8          MR. DAVIS:  Well, we cleared that up.

9          MR. GREEN:  Right?

10         MR. DAVIS:  That was the subject of an

11 objection.

12         MR. GREEN:  That was taken off the list

13 altogether.

14         MR. DAVIS:  So I think it's safe to say that

15 you can withdraw I-D.  That was the subject of the

16 objection that we heard the last time we were before

17 Judge Black.

18         MR. GREEN:  You're saying theoretically there

19 may still be some rights existing in the Case Packer

20 equipment?

21         MR. DAVIS:  That's correct, whatever rights

22 the debtor has.

23         MR. GREEN:  Are you in a position to tell us,

24 or Mr. Johnson, to tell us what those rights are?

25         MR. DAVIS:  Jim, is the Case Packer equipment

14

1   located in St. Charles, does the debtor own that
2   equipment?
3               MR. JOHNSON:  It was part of the original
4   lease.  It was part of the CP-11 and all the other
5   equipment that came with it.
6               MR. DAVIS:  Okay, is the debtor current -- so
7   was that equipment leased?
8               MR. JOHNSON:  It was part of the whole
9   package.  When they leased the CP-11, the Case Packer
10  was part of it.
11              MR. DAVIS:  So the equipment was leased?
12              MR. JOHNSON:  Right.
13              MR. DAVIS:  Okay.  Is the debtor current on
14  their lease payments?
15              MR. JOHNSON:  No.  The whole payment covered
16  the Case Packer.  We just never hooked it up.
17              MR. DAVIS:  So that is part of the CP-11
18  machinery?
19              MR. JOHNSON:  Right.
20              MR. DAVIS:  Or part of the CP-8 machinery?
21              MR. JOHNSON:  CP-11.
22              MR. DAVIS:  The CP-11 machinery, okay.  So it
23  would appear that the debtor doesn't have any right in
24  that either.  Thank you.
25                      Any other questions?  Yes?

1         MR. ROSE:  Mark J. Rose on behalf of

2 Arlington Tool, Incorporated.  Other than the patent for

3 the CP-11 machine is there any more intellectual

4 property of any kind that is being offered for sale this

5 afternoon?

6         MR. DAVIS:  When you say the patent for the

7 CP-11 machine --

8         MR. ROSE:  Yes?

9         MR. DAVIS:  The communion cup patent number

10 5246106?

11         MR. ROSE:  Yes.

12         MR. DAVIS:  That is -- that would appear to

13 be the only intellectual property that the debtor owns

14 that is being offered for sale.

15         MR. ROSE:  The debtor's name, telephone

16 number?

17         MR. DAVIS:  No.  Well, again, it depends on

18 the bids.  You know, we also have a category here that

19 says "any and all other identifiable assets."  That

20 would include name, phone number, anything else that the

21 debtor owns.  All of the assets means all of the assets.

22 Now when you say "intellectual property" you mean name,

23 trademarks, copyrights, et cetera, right?

24         MR. ROSE:  Yes.

25         MR. DAVIS:  Those are being sold and offered

16

1  today.

2          MR. ROSE:  In the general category of other

3  assets?

4          MR. DAVIS:  That's right.

5               Mr. Green?

6          MR. GREEN:  Just for clarity, I would have

7  assumed that the licensing agreement was intellectual

8  property.  Is that not also --

9          MR. DAVIS:  Well, I don't know --

10          MR. GREEN:  I don't know whether it's a

11  contract or --

12          MR. DAVIS:  It's a contract.

13          MR. GREEN:  Okay.

14          MR. DAVIS:  Yeah.  It's not intellectual

15  property.

16               Are there any other questions?

17               (No response.)

18          MR. DAVIS:  Okay.  What I'd like to do is the

19  way we're going to do this is we're going to conduct the

20  auction for the sale of the assets in two parts.  First

21  of all, what I would like to do is solicit any bids for

22  all of the assets.  Then we will solicit bids for lots.

23  We will then take a brief break during that time, at

24  which time I would warn all bidders that they are not to

25  engage in any collusive bargaining, and we will come

17

1  back in and at that point in time give an assessment and

2  subsequent follow-up bids.

3              Mr. Green?

4        MR. GREEN:  I have to say in prior

5  discussions with you, you indicated to me you were going

6  to do it the other way around, the individual bids

7  first.  Is there a reason why you're changing the format

8  now?

9        MR. DAVIS:  I could do it individual bids

10  first.  You know what?  I will do it individual bids

11  first.  Okay?  If you will turn, attached to the motion

12  to sell there was an order authorizing bid procedure for

13  sale of property.  Exhibit A indicated list of assets to

14  be sold at public sale.  What we will do is we will go

15  through each one of these assets on an individual basis.

16  If you want to bid on that asset, please indicate your

17  name and what the bid is.  If there are no bids, we will

18  move on to the next.

19              The first asset would be under Roman

20  Numeral I, Compak Corporation, it would be, A, the name

21  Compak Corporation.  Are there any bids for the name

22  Compak Corporation?  Any bids for the name Compak

23  Corporation?

24              Ira Williams?

25        MR. WILLIAMS:  $500.

1          MR. DAVIS:  And what entity are you bidding

2  for?

3          MR. WILLIAMS:  Business Development Advisors.

4          MR. DAVIS:  In addition, I need to let all

5  the bidders know that the bids are subject to proof of

6  the ability to close the bids as well as a 10-percent

7  deposit.  So we have one bid for the name Compak

8  Corporation.

9             Are there any other bids for that?

10         MR. GREEN:  Excuse me.  Where did that

11  10-percent deposit come from?

12         MR. DAVIS:  I believe it's in the asset

13  purchase agreement.

14         MR. GREEN:  It's not in the order.

15         MR. DAVIS:  The asset purchase agreement is

16  attached to the order.

17         MR. GREEN:  Nothing you've said or anywhere

18  else was there had to be a deposit.

19     A    MR. DAVIS:  You know what, let's hold that

20  issue until we get done with this, all right?  And then

21  we'll talk about it.  B, Compak Corporation, I-B, Compak

22  BVI equity securities and, by virtue of ownership of

23  these equity securities, ownership of a 95-percent stake

24  in Shanghai Health Products Company Limited.  Are there

25  any bidders on I-B?  Any bidders on I-B?

19

1          MR. WILLIAMS:  $500.

2          MR. DAVIS:  And you're bidding for?

3          MR. WILLIAMS:  Business Development Advisors.

4          MR. DAVIS:  Are there any other bids for I-B?

5   Compak Corporation I-C, furniture, fixtures and

6   equipment, mostly office furniture.  Are there any bids

7   for furniture, fixtures and equipment?

8          MR. WILLIAMS:  $500, Business Development

9   Advisors.

10         MR. DAVIS:  $500 for Business Development

11  Advisors.  Are there any other bids for I-C, furniture,

12  fixtures and equipment?

13              Compak Corporation, I-D, all rights

14  that may exist in the CP-11 machinery.  That has been

15  withdrawn by agreement pursuant to the objection of

16  Klockner.  It's not property of the estate.

17              Compak Corporation, I-E, accounts

18  receivable.  Are there any bids for accounts receivable?

19         MR. JONES:  A thousand bucks.

20         MR. DAVIS:  $1,000?  Who do you represent?

21         MR. JONES:  Louis A. Holland.

22         MR. DAVIS:  Louis A. Holland.

23         MR. WILLIAMS:  According to the -- increase

24  the bids.

25         MR. DAVIS:  I'm sorry.  Say that again.

20

1          MR. JONES:  10,000.

2          MR. WILLIAMS:  $11,000.

3          MR. DAVIS:  $11,000 on behalf of?

4          MR. WILLIAMS:  Business Development Advisors.

5          MR. DAVIS:  Are there any other bids for

6   accounts receivable?

7          MR. JONES:  How about 20?

8          MR. DAVIS:  You have to bid in $10,000

9   increments.

10          MR. JONES:  So what's that, 21?

11          MR. DAVIS:  21,000 from?

12          MR. JONES:  Louis A. Holland.

13          MR. DAVIS:  Louis A. Holland.  Any other bids

14   for accounts receivable?  Any other bids for accounts

15   receivable?

16                    (No response.)

17          MR. DAVIS:  Okay.  Moving on to I-F, cash on

18   hand, the cash on hand asset is being withdrawn.

19                    Compak Corporation I-G, communion cup

20   patent number 5246106.  Are there any bids for communion

21   cup patent number 5246106?

22          MR. WILLIAMS:  $500.

23          MR. DAVIS:  From?

24          MR. WILLIAMS:  Business Development Advisors.

25          MR. DAVIS:  Any other bids for communion cup

21

1  patent 5246106?

2          MR. ROSE:  Arlington Tool bids $501.

3          MR. DAVIS:  You have to bid in $10,000
4  increments.

5                  Identify yourself.

6          MR. GRAMLICH:  My name is Dean Gramlich.  I'm
7  counsel for Mr. Leoto, John Leoto, who is with me today.

8          MR. DAVIS:  Okay.

9          MR. GRAMLICH:  And he lifted his hand to make
10 a bid prior to this gentleman making his bid.

11         MR. DAVIS:  All right.

12         MR. GRAMLICH:  I ask that he be permitted to
13 enunciate the bid.

14         MR. DAVIS:  Well, we have a bid on the floor.
15 What I want to know is -- what I want to know is --

16         MR. ROSE:  I will withdraw our bid.

17         MR. DAVIS:  Withdraw the bid.  Next bidder.
18 There's a bid for $500 for communion cup patent number
19 5246106.

20         MR. GRAMLICH:  $10,500.

21         MR. DAVIS:  Okay, we have a bid for 10,500.

22         MR. GRAMLICH:  Gabriel, Inc.

23         MR. DAVIS:  Gabriel, Inc.  Any other bids for
24 communion cup patent 5246106?  Any other bids?

25                 All right.  Compak Corporation I-H has

22

1  been withdrawn.

2              Compak Corporation I-I print-ready art

3  work and film for brochures and other marketing

4  materials.  Any bids?

5              MR. WILLIAMS:  $500, Business Development

6  Advisors.

7              MR. DAVIS:  $500.  Any other bids?  Any other

8  bids?

9              Okay.  Compak Corporation I-J, contract

10  rights, if any.  Any bids for the contract rights, if

11  any?

12              MR. WILLIAMS:  $500, Business Development

13  Advisors.

14              MR. DAVIS:  Business Development Advisors.

15  Any other bids for contract rights?

16              Compak Corporation I-K, chose in action

17  relating to Arlington Tool Company.

18              MR. ROSE:  Arlington Tool bids one dollar.

19              MR. DAVIS:  One dollar.  Any other bids for

20  I-K, chose in action?

21              MR. WILLIAMS:  $10,001.

22              MR. DAVIS:  $10,001.  Any other bids for I-K?

23              Compak Corporation I-L, licensing

24  agreement including Patpak, Inc.  Any bids for licensing

25  agreement including Patpak, Inc.?

1          MR. WILLIAMS:   $500, Business Development
2   Advisors.

3          MR. DAVIS:   Business Development Advisors
4   bids $500.   Were there any other bids?

5          MR. GRAMLICH:   On behalf of Gabriel
6   Corporation, Dean Gramlich again.   Could you disclose
7   what licensing agreements are being referenced in
8   connection with item I-L?

9          MR. DAVIS:   Including Patpak, Inc.?

10         MR. GRAMLICH:   Yes.

11         MR. DAVIS:   Ms. Lopez?

12         MS. LOPEZ:   I'm --

13         MR. DAVIS:   She said she's getting it.

14         MR. ROSE:   I have a question on behalf of
15   Arlington Tools.

16         MR. DAVIS:   Mr. Rose?

17         MR. ROSE:   Does Mr. Johnson own any
18   individual patents that the company is presently using?

19         MR. DAVIS:   No.   He doesn't own any
20   individual patents that the company is presently using.

21         MR. ROSE:   Is the company presently using any
22   patents that are owned by others that are not the
23   subject matter of this sale?

24         MR. DAVIS:   No.

25         MR. GRAMLICH:   Dean Gramlich on behalf of

24

1  Gabriel Corporation.  There's a trust that evidently

2  owns some patents that are involved in connection with

3  the debtor's operations that I understand -- can

4  Mr. Johnson confirm whether that's true or false?

5          MR. DAVIS:  Well, the question was whether

6  the debtor is using any patents owned by anybody else,

7  for instance, that it doesn't have any rights to.  I

8  would assume that's what the question is, right?

9          MR. ROSE:  Let me rephrase the question.

10          MR. DAVIS:  Okay.

11          MR. ROSE:  Is the debtor manufacturing any

12  products at this time or at any time in the past based

13  on its right to use a patent which is owned by someone

14  other than the debtor?

15          MR. DAVIS:  With or without any agreement to

16  use it?

17          MR. ROSE:  No, with an agreement.

18          MR. DAVIS:  With an agreement.  Okay, so the

19  question is has the debtor ever used any other patent

20  pursuant to an agreement that it's used to manufacture a

21  product.

22          MR. JOHNSON:  I don't know.  I mean, not that

23  I know of.

24          MR. DAVIS:  Well, is it currently using any

25  other patent to manufacture products pursuant to a

1  license agreement or an agreement of any kind?

2        MR. JOHNSON:  No.

3        MR. DAVIS:  Okay.

4        MR. ROSE:  Has the debtor at any time

5  manufactured any product with the use of a patent that

6  it does not own?

7        MR. DAVIS:  Has the debtor ever manufactured

8  a product with a patent that it does not own?  Well,

9  that it doesn't have an agreement?

10        MR. ROSE:  No, used pursuant to an agreement.

11        MR. DAVIS:  Okay, but does it have to use it

12  pursuant to an agreement?

13        MR. WEISSBERG:  Either owns or has an

14  agreement to use, Mark?

15        MR. ROSE:  Yes.

16        MR. JOHNSON:  Please restate the whole

17  question once more.

18        MR. ROSE:  Has the debtor ever manufactured

19  any product pursuant to a patent which it does not own?

20        MR. JOHNSON:  Possibly.

21        MR. ROSE:  Could you please make a disclosure

22  of the patents that the debtor has manufactured products

23  with that -- where the debtor does not own that patent.

24        MR. JOHNSON:  I guess what Mr. Davis said

25  earlier, the fact that we're not using the patent and we

26

1  could possibly be using another patent.  Do we have an

2  agreement or something agreed upon?  No, we do not.

3           MR. DAVIS:  Is the debtor manufacturing any

4  other products right now?

5           MR. JOHNSON:  No, absolutely not.

6           MR. DAVIS:  All right.

7           MR. JOHNSON:  Absolutely not.

8           MR. DAVIS:  Has the debtor ever manufactured

9  any product?

10          MR. JOHNSON:  No, absolutely not.

11          MR. DAVIS:  Okay.

12          MR. Leoto:  My name is Mr. Jim Leoto,

13  Gabriel, Inc.  It was just represented to me outside of

14  this office by an employee of Mr. Johnson that the

15  current patent which I just bid on, a, did cover a

16  product on a current machine.  If we went back to the

17  original patent we could, in fact, manufacture that

18  product.

19               Further, it was represented to me that

20  Mr. Johnson has control over patents that exist in the

21  Seretas trust of which is currently under license and

22  manufacturing product, okay, specifically the communion

23  cup under those licenses which were originated from

24  Mr. Johnson, were transferred to the Seretas trust and

25  of which he is a benefactor of.

27

1      MR. DAVIS:  Well, first of all  -- sit down.

2      MR. NEVEL:  Ira Nevel.  I was misquoted.  He

3  is making statements that I did not make.

4      MR. DAVIS:  Ira, I did not speak to such a

5  relationship.  Just sit down.  First of all, what we're

6  doing right now is we're conducting an auction of the

7  assets that the debtor owns, okay?  We're not dealing

8  with Mr. Johnson's assets.  We're not dealing with

9  anything that he owns.  He has made the representation

10  that whatever patents he owns are not currently being

11  manufactured by the debtor.  That's what the scope of

12  this is.  Anything else is really outside of the scope

13  of the sale.

14      MR. Leoto:  But the product that's in the

15  scope of the sale which I just bid $10,500 for --

16      MR. DAVIS:  Right.

17      MR. Leoto:  -- was represented to me by a

18  current employee of Mr. Johnson's, okay, as being a

19  patent that has manufacturable capacity.

20      MR. DAVIS:  Yes.

21      MR. Leoto:  Of making this communion cup.

22      MR. DAVIS:  Well, we made that representation

23  earlier.  Mr. Johnson made that representation earlier.

24  What he said was that the patent that's being sold is a

25  manufacturable communion cup patent.  Yes, absolutely.

28

1  That's absolutely true.  He's made that representation
2  and we cleared that up.
3          MR. Leoto:  Fine, I'm comfortable.
4          MR. DAVIS:  Okay.  Thank you.
5          MR. ROSE:  Mark J. Rose on behalf of
6  Arlington Tool, Inc.  I think in the interest of a full
7  and complete disclosure Mr. Johnson ought to disclose if
8  there are other patent rights or intellectual property
9  rights that he owns, or he has an interest in, or any
10 products that the debtor has manufactured at any time
11 that have been manufactured pursuant to those patent
12 rights.  People at this auction are being asked to bid
13 based on --
14         MR. DAVIS:  Could I think about it for a
15 second?  Let me just think about that for a second
16 because I think that there are a couple of different
17 issues here, and I think we may have to take a brief
18 recess in order to discuss them.  So could we take a
19 five-minute recess in order to discuss those?
20         MR. ROSE:  Sure.
21         MR. GRAMLICH:  Let's just, for the purposes
22 of clarity, Dean Gramlich on behalf of Gabriel, just
23 sort of put a bookmark as to where we are --
24         MR. DAVIS:  That's fine.
25         MR. GRAMLICH:  -- in the process.  There was

1  a standing offer, I believe, for item number I-L

2  licensing agreements, including Patpak.  When we

3  actually stopped the auction, you were offering that and

4  I asked for disclosure with respect to the licensing

5  agreements.

6          MR. DAVIS:  That's correct.

7          MR. GRAMLICH:  That's right where we are.

8          MR. DAVIS:  That's correct.  So we will

9  resume.  We'll take a five-minute recess.

10                    (Brief recess.)

11          MR. DAVIS:  Let's go back on the record.  We

12  left off at Compak Corporation I-L.  Mr. Green, I think

13  you want to make a comment first?

14          MR. GREEN:  Yes.  I want to make an

15  objection, and that is having talked to a couple of

16  other people who were involved here, the original

17  contractual agreement contemplated $10,000 increments on

18  the sale of the entirety of the assets, not on these

19  individual lots.  And I want to make on the record a

20  very plain objection.  I think the $10,000 increment on

21  the individual lots is unreasonable, arbitrary and

22  inappropriate.

23          MR. DAVIS:  Thank you for that objection.

24          MR. JONES:  Michael Jones on behalf of Louis

25  A. Holland and Holland Capital Management.  Based on

30

1   discussions with counsel for the debtors during the

2   recess, we were informed that the communication that was

3   sent to us earlier today was inaccurate.   Compak

4   Corporation apparently does not have $48,000 in accounts

5   receivable in and of itself.

6           MR. DAVIS:   That was represented to you

7   outside?

8           MR. JONES:   I was told that Compak

9   Corporation has certain accounts receivable and

10  Communion Packaging has certain accounts receivable.

11          MR. DAVIS:   That figure includes both the

12  Compak and the Communion Packaging, and we will withdraw

13  the individual lot bid for Communion Packaging.

14          MR. JONES:   Okay.   Thank you.

15          MR. DAVIS:   Given that, are you still

16  interested in bidding, or are you withdrawing your bid?

17          MR. JONES:   We will leave our bid stand.

18          MR. DAVIS:   Okay.   That's fine.

19          MR. JONES:   But that's all the cash on hand

20  basically.

21          MR. DAVIS:   Mr. Rose?

22          MR. ROSE:   Yes.   Mr. Davis, I am somewhat

23  concerned over a number of events which have developed

24  this afternoon in connection with this sale.   I am

25  disturbed over the fact that Mr. Weissberg, who

31

1  previously represented the stalking horse in this

2  transaction, now is representing Mr. Johnson

3  individually, and that Mr. Williams, who is an employee

4  of Mr. Johnson, has been bidding on behalf of the

5  corporation with respect to each of the assets of the

6  debtor. There appears to be some question over whether

7  there are additional patent rights or intellectual

8  property rights pursuant to which the debtor may or may

9  not have been manufacturing its products. And it seems

10  to me that there may be an element, or at least there is

11  an appearance of impropriety over what has happened

12  here.

13            I don't know all of the facts at this

14  time, but I think that there needs to be a full

15  disclosure of these additional intellectual property

16  rights. And I think that the creditors of this estate

17  and the people that are bidding here today have a right

18  to know whether Mr. Johnson has a financial interest in

19  the company which has been bidding for these assets and

20  whether the principals of Nationwide Trucklines have an

21  interest in this company. I am concerned about this

22  appearance of impropriety, and I think that the people

23  here today and the creditors of this estate are entitled

24  to a full disclosure.

25           MR. DAVIS: I would like to refer you to

32

1    Section 363(m) and (n) of the Code which indicates that

2    the trustee or debtor-in-possession may void a sale

3    under this section if the sale price was controlled by

4    an agreement among potential bidders at such sale, or

5    may recover from a party to such agreement any amount by

6    which the value of the property sold exceeds the price

7    of which such sale was consummated, et cetera, et

8    cetera.  Okay?

9              In addition, in Section 363(m), it says

10   that reversal or modification on appeal of an

11   authorization of the sale does not affect the validity

12   of the sale to an entity that purchased or leased such

13   property in good faith.  Okay?  There's a requirement or

14   a duty on the part of the debtor that these sales take

15   place in good faith.  There's normally a representation

16   in the sale order that indicates that the sale has taken

17   place in good faith.

18             I think to the extent that Mr. Williams

19   is bidding in an open auction with everyone else and

20   everyone else knows what the bids are and there are no

21   competing bids that he doesn't necessarily gain or lose

22   by any inside information that he has.  He is entitled

23   to bid at an auction like this.  So that's the issue as

24   to Mr. Williams.

25             The debtor has represented that there

33

1  are no patents that they are currently using.  The
2  debtor has represented that there are no patents that
3  they have used or manufactured within the past.  I
4  believe that given the fact that we're here and that we
5  have bidders that what we should do is complete the
6  bidding.  There may be -- that may give rise to an
7  objection to the bid on the grounds that it wasn't
8  conducted in good faith or that it may -- but we don't
9  know the answer to that because we haven't gotten to the
10  end of the bid yet.  That would be my suggestion.
11              Your objection is noted.  You can
12  certainly reserve your objection, and we're going to
13  have a status date in front of Judge Black for the
14  purpose of deciding whether the sale was done in good
15  faith.
16              MR. ROSE:  Well, I've just been handed copies
17  of three patents from my colleague that are owned by
18  Jimmie L. Johnson individually.  Can you tell us with
19  regard to the Klockner CP-11 machine the name of the
20  entity which has entered into negotiations with the
21  owner of that machine for the purchase of the machine?
22              MR. DAVIS:  The individuals that bought the
23  Klockner machine were represented by Gabriel earlier.
24              MR. WEISSBERG:  McDermott.
25              MR DAVIS:  McDermott, Will, and Emery.

1          MR. WEISSBERG:  Although, if they want me to

2   represent them, I would.  The more the merrier.

3          MR. ROSE:  Well, I know that you wouldn't

4   have any hesitation about doing that, Ariel.

5          MR. WEISSBERG:  Thank you.

6          MR. DAVIS:  And they represented that they

7   were the ones that bought the machine from --

8          MR. ROSE:  All I'm saying is that I'm in

9   possession of copies of three patents that are owned by

10  Mr. Johnson individually.  And on the basis of this

11  information, it appears to me that these three patents

12  may have been used at one time by the debtor to

13  manufacture certain products that it has manufactured in

14  the past or at the present time, and I feel that there

15  is an appearance of impropriety here.  I feel that there

16  is an appearance of some form of collusion between the

17  stalking horse and between Mr. Johnson, who is the

18  president and the owner of the debtor's stock, and I

19  want that objection noted for the record.

20          MR. DAVIS:  The objection is noted for the

21  record, you know, and as I've indicated, it may give

22  rise to an objection to the entry of the sale order, to

23  the finalization of the sale order.  The debtor does not

24  own those patents and we cannot sell them today.  As to

25  what Mr. Johnson does and doesn't own that's really not

1  the subject of this particular auction.  This is an

2  auction to sell the assets of the estate.  That may be

3  the subject of other proceedings, but it's not the

4  subject today.

5          MR. ROSE:  The creditors of this estate and

6  the people and attorneys at this auction have a right to

7  have this information disclosed and it has not been

8  disclosed.

9          MR. DAVIS:  Has it ever been asked for?

10         MR. ROSE:  I asked for it 15 minutes ago.

11         MR. WEISSBERG:  Well, 15 minutes ago, Mark.

12 Where were you until 15 minutes ago?

13         MR. ROSE:  It was a flat denial.

14         MR. DAVIS:  Can you state your name for the

15 record.  Mr. Weissberg?

16         MR. WEISSBERG:  Ariel Weissberg.

17         MR. ROSE:  I asked the question at this

18 auction 15 minutes ago to which there was a flat denial

19 and now I have reason to believe that denial was not

20 true.

21         MR. DAVIS:  Mark, on behalf of the debtor, on

22 behalf of the debtor the answer on behalf of the debtor

23 is that the debtor is not using any other patents other

24 than the ones that are represented in the sale.  As to

25 any other patents that may exist that is something that

36

1    has to be done -- it may give rise to an objection to

2    the entry of the sale order.  It may be the subject of

3    individual litigation on behalf of the estate to pursue

4    whoever it is that may have an interest in that.  But

5    those, you know, that's not within the parameters of

6    what it is and your objection is noted.  I think that

7    you should take the objection before Judge Squires and

8    before Judge Black.

9              MR. ROSE:  Can we have a disclosure as to who

10   the owners of the shares are of the bidder on behalf of

11   whom Mr. Williams has been acting this afternoon?

12             MR. WILLIAMS:  I would be more than happy to.

13   It's Business Development Advisors, LLC, State of

14   Illinois.  80-percent ownership, Ira Williams, II, which

15   is myself; 20-percent ownership by Ira L. Williams, III,

16   which is my son; and 10-percent ownership to my

17   daughter, Ira J. Williams.

18             MR. DAVIS:  That's 110 percent.

19             MR. WILLIAMS:  10, 10 percent.

20             MR. DAVIS:  Oh, I thought you said 20.  Okay,

21   so it's 80, 10, 10?

22             MR. WILLIAMS:  Correct.  Any other questions,

23   sir?

24             MR. ROSE:  Not at this time.

25             MR. WEISSBERG:  Does Mr. Williams -- I'm

37

1    sorry, Mr. Johnson have an ownership interest in that

2    company?

3              MR. WILLIAMS:  No, he does not.

4              MR. WEISSBERG:  Have you agreed to give

5    Mr. Johnson an ownership interest in that company?

6              MR. WILLIAMS:  No, I have not.

7              MR. DAVIS:  Okay.  Let's move on with the

8    auction.  We're at I-L, licensing agreements.

9                    Are there any bids on licensing

10   agreements?

11             MR. WILLIAMS:  $500.

12             MR. DAVIS:  $500 bid?

13             MR. WILLIAMS:  Right.

14             MR. DAVIS:  Business Development.  Any other

15   bids for the licensing agreements?

16             MR. KOKOSZKA:  What are we bidding at?  In

17   increments of what?

18             MR. DAVIS:  $10,000.

19             MR. KOKOSZKA:  And why is that?

20             MR. DAVIS:  Because that's what was set in

21   the asset purchase agreement and the bid order.

22             MR. JONES:  How come the entry bid was not

23   5,000 or 10,000?

24             MR. DAVIS:  It didn't require the entry bid

25   to be 10,000.

38

1        MR. JONES:  Okay, so that's spelled out --

2        MR. DAVIS:  There is no entry bid required.

3        MR. KOKOSZKA:  Frank Kokoszka on behalf of

4  ICI Worldwide.  I believe Mr. Green earlier made an

5  objection.  I would join in on that objection that

6  $10,000 increment dealt with the entire lot.  And it's

7  not fair to the interest of creditors to hold a $10,000

8  increment on each separate -- if we can get, if somebody

9  is willing to pay 6,000 or $5,000 more, that's certainly

10 in the best interest of creditors to allow such a bid.

11       MR. DAVIS:  Give me a second.

12            Does anybody have the applicable

13 paragraph?

14       MR. GREEN:  The problem is the asset purchase

15 agreement only pertains to a bulk sale.  It did not have

16 any contemplation of individual purchase lots.

17       MR. DAVIS:  Paragraph number four in the bid

18 order says, "Any subsequent bid to the initial bid by

19 the purchaser shall be in increments of $10,000."

20       MR. KOKOSZKA:  Which obviously refers to the

21 purchaser and the asset purchase agreement that it was a

22 total sale of all the assets.

23       MR. DAVIS:  Well, I think it's clear that it

24 does refer to an asset, to a bid by all the assets,

25 okay?

39

1　　　　　MR. KOKOSZKA:　Yes.

2　　　　　MR. DAVIS:　So the problem at this particular

3　point in time is that we have gone through it.　There

4　are bids that are based on that representation, about

5　$10,000.　We have several bids from parties who have

6　left that bid on that basis.　So their understanding of

7　the bid procedures was that the increments would be at

8　$10,000, so the incremental bids must be in $10,000

9　because that's the way the auction was conducted.

10　　　　　MR. ROSE:　I must object to that.　I believe

11　that if the bid procedure with respect to individual

12　lots did not call for or did not require increases of

13　$10,000, then the bids that have taken place so far may

14　not represent the highest and best offers that could

15　have been obtained.

16　　　　　MR. DAVIS:　By lowering the bid increment?

17　　　　　MR. ROSE:　My client was deterred from

18　increasing the amount of its bid because it required a

19　$10,000 increase.　My client might have increased the

20　amount of its bid had it not been required to increase

21　its offer by $10,000.

22　　　　　MR. DAVIS:　Let's do this, okay, let's go

23　back and start all over again without bid increments of

24　$10,000.　And, please, let's do it quickly, okay,

25　because we don't want to be here forever doing this.　If

40

1    the bid that is solicited -- Mr. Green?

2         MR. GREEN:  You're going to void the sale if

3    you do that.  You have a bidder who was the successful

4    bidder of two lots who is gone.

5         MR. DAVIS:  That's correct.

6         MR. GREEN:  And they're going to scream

7    bloody murder.  And they are now deprived of the

8    opportunity to bid.  I don't happen to think their bulk

9    sale bid is going to take this deal, but that doesn't

10   change the fact that --

11        MR. DAVIS:  Well, it's not going to take the

12   deal if I don't get to the bulk bid, which it doesn't

13   appear I'm going to get there right now.

14        MR. GREEN:  You understand the problem

15   though?

16        MR. DAVIS:  I understand what the problem is.

17        MR. KOKOSZKA:  Well, what about in the

18   process of going forward then?  I know we don't want to

19   change the bids that have occurred, but for the rest of

20   the assets being sold now --

21        MR. DAVIS:  We will bid in less than $10,000

22   increments.

23        MR. KOKOSZKA:  Thank you.

24        MR. ROSE:  What does that do with regards to

25   the assets --

1          MR. DAVIS:  Which particular asset are you
2 talking about?
3          MR. GREEN:  Arlington Tools.
4          MR. ROSE:  Well, the Arlington Tool chose in
5 action for one.
6          MR. DAVIS:  Who bid --
7          MR. WILLIAMS:  I have 10,001.  You can't go
8 back.
9          MR. DAVIS:  Is that still your bid, 10,001?
10          MR. WILLIAMS:  We already closed on that.
11          MR. DAVIS:  Just a minute.  Is that still
12 your bid on that cause of action?  And you're not
13 interested in lowering that bid?
14          MR. WILLIAMS:  No.
15          MR. ROSE:  Well, there are other assets as
16 well.
17          MR. KOKOSZKA:  There's a few assets that were
18 500.  I think those should be --
19          MR. WILLIAMS:  No, just a moment.  We have
20 already closed on that.  Everyone had an opportunity to
21 bid.
22          MR. DAVIS:  The bidding has not closed.
23 We're going to take another round of bidding, so the
24 bidding has not closed.
25          MR. WILLIAMS:  On all of the lots?

42

1          MR. DAVIS:  On all of the lots.

2          MR. WILLIAMS:  Including the past?

3          MR. DAVIS:  Including the past.

4          MR. WILLIAMS:  And the individuals who left?

5          MR. DAVIS:  They're not interested in bidding

6   any more.  It was announced at the beginning.  I

7   announced at the beginning there will be two rounds of

8   bidding.  They've left.  That's their bid.  Okay?

9                Okay, Compak Corporation I-L, licensing

10  agreements, including Patpak.  Are there any bids on

11  licensing agreements, including Patpak?

12         MR. WILLIAMS:  I thought we were going back

13  to the beginning.

14         MR. DAVIS:  Nope, we're not going back to the

15  beginning.  We're beginning right here.

16         MR. WILLIAMS:  Okay.

17         MR. DAVIS:  Bids from this point forward will

18  not be in $10,000 increments.

19         MR. WILLIAMS:  $500.

20         MR. DAVIS:  Any other bids for Compak

21  Corporation licensing agreement?

22         MR. JOHNSON:  1,000, another 500.

23         MR. DAVIS:  Any other bids for I-L?

24         MR. WILLIAMS:  1,500.

25         MR. DAVIS:  Any other bids?

43

1     MR. JOHNSON:  Make it 2,000.

2     MR. DAVIS:  Any other bids?

3     MR. WILLIAMS:  2,500.

4     MR. DAVIS:  2,500.  Any other bids for I-L?

5     MR. JONES:  Yeah, I'll go to 3,000.

6     MR. DAVIS:  Any other bids for I-L, licensing

7  agreements, including Patpak?

8     MR. WILLIAMS:  3,100.

9     MR. JOHNSON:  3,200.

10    MR. WILLIAMS:  3,300.

11    MR. DAVIS:  Any other bids, $3,300?

12    MR. JONES:  How about ten grand?

13    MR. DAVIS:  We have a bid for $10,000 made

14  by?

15    MR. JONES:  Mr. Holland.

16    MR. DAVIS:  Mr. Holland for number I-L,

17  licensing agreement.  Any other bids besides 10,000?

18            Okay.  Let's move on to I-M, all rights

19  and options that Compak Corporation has in and through

20  equipment leases.  Any bids for I-M?

21    MR. WILLIAMS:  500.

22    MR. DAVIS:  Any other bids for I-M?  All

23  rights and options Compak Corporation has in and through

24  equipment leases.

25            Number I-N, any and all other

44

1  identifiable assets of Compak Corporation not included
2  in the above list.  Are there any bids on that?
3          MR. WILLIAMS:  Excuse me.  I didn't hear the
4  first part.
5          MR. DAVIS:  I-N, any and all other
6  identifiable assets not included in the above.
7          MR. JONES:  Michael Jones.  A question.
8  Would this include inventory?
9          MR. DAVIS:  Yes.
10          MR. WILLIAMS:  500.
11          MR. DAVIS:  Any other bids on I-N?
12          Okay.  Let's move on to Communion
13  Packaging Company.  Roman Numeral II-A, the name
14  Communion Packaging Company.  Any bids on that?
15          MR. WILLIAMS:  500.
16          MR. DAVIS:  Five, Business Development
17  Associates.  Any other bids, II-A?
18          II-B furniture, fixtures, and
19  equipment.  Any bids?
20          MR. WILLIAMS:  500.
21          MR. DAVIS:  Any other bids than the $500 bid
22  from Business Development Associates?
23          MR. WILLIAMS:  Business Development Advisors.
24          MR. DAVIS:  I'm sorry, Business Development
25  Advisors.  Any other bid for II-B?

45

1          II-C is withdrawn.

2          II-D is withdrawn.

3          II-E, work in process.  Any bids for

4  Communion Packaging Company work in process?

5          MR. WILLIAMS:   500.

6          MR. DAVIS:  Any other bids besides 500?

7          II-F, Communion Packaging Company

8  inventory.  Any bids?

9          MR. WILLIAMS:   500.

10         MR. DAVIS:  Any bids for -- any other bids

11  for II-F, inventory?

12         Any bids for II-G, print-ready art work

13  and film?

14         MR. WILLIAMS:   500.

15         MR. DAVIS:  Any other bids besides Business

16  Development?

17         II-H, contract rights, if any.

18         MR. WILLIAMS:   500.

19         MR. DAVIS:  Any other bids?

20         II-I, all rights and options that

21  Community Packaging Company has in and through equipment

22  leases.

23         MR. WILLIAMS:   500.

24         MR. DAVIS:  Any other bids besides 500,

25  Business Development?

46

1              II-J, any and all other identifiable
2    assets.
3              MR. WILLIAMS:  500.
4              MR. DAVIS:  Any other bids for that
5    individual lot?
6              Okay.  At this particular point in time
7    we will take individual bids for all of the assets.
8              MS. McCLANDON:  75,000.
9              MR. DAVIS:  And you are?  Would you please
10   state your name.
11             MS. McCLANDON:  BMJ Partners.
12             MR. DAVIS:  Are there any other bids for all
13   of the assets?
14             MR. WILLIAMS:  85,000, Business Development
15   Advisors.
16             MR. DAVIS:  Any other bids?
17             MS. McCLANDON:  86,000, BMJ Partners.
18             MR. DAVIS:  I'm sorry, what was that?
19             MS. McCLANDON:  86 -- I'm sorry, 96 -- I just
20   took it back.  95,000.
21             MR. DAVIS:  95,000.
22             Any other bids for all of the assets?
23             MR. WILLIAMS:  $101,000 -- 105.
24             MR. DAVIS:  Well, it can be more than 10,000.
25   It has to be a minimum increment.

47

1          I'm sorry.  The last bid was 95,000.

2  Business Development, the last bid was $95,000.

3          MR. WILLIAMS:  105,000.

4          MR. DAVIS:  105,000.

5          MS. McCLANDON:  115, BMJ Partners.

6          MR. WILLIAMS:  125,000, Business Development

7  Advisors.

8          MR. DAVIS:  125 for Business Development.

9          MS. McCLANDON:  135, BMJ Partners.

10         MR. DAVIS:  135, BMJ.

11         MR. WILLIAMS:  $150,000.

12         MR. DAVIS:  150.

13         MS. McCLANDON:  160, BMJ Partners.

14         MR. DAVIS:  160 for BMJ is the highest bid at

15  this time.  Any other bids?

16         MR. WILLIAMS:  170,000.

17         MR. DAVIS:  170,000.

18         MS. McCLANDON:  180, BMJ Partners.

19         MR. DAVIS:  180 from BMJ Partners.  Any other

20  bids?  Any other bids for all of the assets?  The

21  highest bid at this point in time for all of the assets

22  is $180,000.

23          Okay.  Let's take a brief five-minute

24  recess.

25              (Brief recess.)

1          MR. DAVIS:  Are you ready?  Could I have your

2     attention please?  At this particular point in time the

3     debtor has calculated the amount that has been bid for

4     the individual lots.  That amount is $59,001.  The total

5     bid for all of the assets at this particular point in

6     time bid by BMJ Partnership is $180,000.

7               At this particular point in time are

8     there any other bids requested or are there any other

9     bids that any entity would like to bid on any of the

10    individual assets on Exhibit A to the bid procedure

11    order, either Compak Corporation I-A through N with the

12    exception of withdrawals?  Are there any other

13    individual bids?  Are there any other individual lot

14    bids for any of the individual assets listed on Exhibit

15    A for Communion Packaging Company, II-A, B, E, F, G, H,

16    I, J with the exception of C and D which have been

17    withdrawn?

18               Given that there is no further interest

19    in any of the individual lot bids, the lot bidding at

20    this point in time is now closed.  Are there any other

21    bids?  The highest bid at this point in time for all of

22    the assets is $180,000 for BMJ.  Are there any other

23    bids for all of the assets?  Are there any other bids

24    for all of the assets for both Communion Packaging and

25    Compak Corporation?  The highest bid at this point in

49

1  time is BMJ Partners.  Any other bids?  If there are no
2  other bids, the bidding on that will be closed at this
3  point in time.

4             Now based on the procedure that we have
5  gone through today and the willingness of BMJ Partners
6  to purchase all of the assets of Communion Packaging and
7  Compak Corporation for $180,000, it would be the
8  debtor's recommendation that the bid for $180,000 by BMJ
9  Partners should be accepted and recommended to the
10  Judge.  Mr. Green has indicated a willingness to put a
11  10-percent deposit down at this particular point in time
12  in the amount of $18,000.

13             I would just like to say that I've had
14  conversations with Mr. Rose, Mr. Green, and Mr. Jones
15  about the procedure that has gone on here today.  It
16  appears that there is a need for some sort of further
17  examination by the debtor and the estate of possible
18  causes of action which may exist against various
19  individuals.  Those causes of action can be pursued by
20  either creditors or by the debtor's attorney.  Pursuant
21  to the bid procedure order, if the successful bidder was
22  Nationwide Trucking, the closing could not be conducted
23  by myself.  Because the successful bidder is BMJ
24  Partners, we can conduct a closing.

25             How soon could BMJ Partners close on

50

1  this particular sale?

2       MR. GREEN:  You've got to come up with more

3  documentation than we do.  How much time do you think

4  you will need?

5       MR. DAVIS:  Well, it was a typical list:

6  recommendations, warranties, and so forth, 7 to 10 days,

7  14 days.

8       MR. GREEN:  Well, keeping in mind whatever

9  the implications are of the March 31st deadline in

10  trying --

11       MR. DAVIS:  Right.  So it would have to be --

12       MR. GREEN:  Sooner rather than later.

13       MR. DAVIS:  Right.

14       MR. GREEN:  A week?  Sometime next week?

15       MR. DAVIS:  Sometime next week.  Mark, do you

16  have any questions of BMJ, or do you have any other

17  comments that you'd like to make at this particular

18  point in time?

19       MR. ROSE:  No.

20       MR. DAVIS:  Is it your plan to object to the

21  granting of the sale order, do you think?

22       MR. ROSE:  I haven't decided that yet.  I

23  think I want to reflect on that and discuss it with my

24  client and counsel for all the unsecured creditors in

25  this case.

51

1      MR. DAVIS:  As I have indicated without any

2  hesitation the estate retains causes of action for any

3  elusive activity that went on that may result in a

4  diminishment of return of assets to the estate.

5          Yes, Mr. Jones?

6      MR. JONES:  Michael Jones on behalf of Louis

7  A. Holland and Holland Capital Management.  My client

8  wants to stress that he supports the sale to BMJ

9  Partners.

10     MR. DAVIS:  Any other comments at this time?

11 I have a proposed sale order that has certain findings

12 of fact that I will circulate around to all the parties

13 tomorrow morning.  I'll make sure that it gets drafted

14 and it gets circulated to all the parties for all the

15 relevant parties' review so that you can edit it and

16 make comments on it to the extent that it's appropriate.

17                          (Which were all the proceedings
                            had in the above-entitled sale
18                          as of March 19, 2003.)
   I, Barbara A. Casey, do hereby
19 certify that the foregoing is
   a true and accurate transcript
20 of sale proceedings had in the
   above-entitled cause.

21

22

23

24

25

# Appendix Ex. 62

EOD MAR 2 5 2003

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| Compak Corp. | ) | CASE NO. 02-22594 |
| | ) | CHAPTER 11 |
| DEBTOR | ) | JUDGE BLACK |

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Communion Packaging Co. | ) | CASE NO. 02-39188 |
| | ) | CHAPTER 11 |
| DEBTOR. | ) | JUDGE BLACK |

### AGREED ORDER AUTHORIZING SALE OF BUSINESS PROPERTY

This matter coming before this Honorable Court on the Debtors' MOTION TO SELL

BUSINESS REAL AND PERSONAL PROPERTY AND TO SHORTEN NOTICE PERIOD, due

notice being given and all things being considered

### THE PARTIES HEREBY STIPULATE TO THE FOLLOWING FACTS:

1.    A petition for relief under Chapter 11 of the U.S. Bankruptcy Code (the "Code") was

filed on behalf of Compak Corp. ("Compak") on June 10, 2002, Case No. 02- 22594, which was

assigned to Judge Black. A Petition for relief under Chapter 11 of the Code was filed on behalf of

Communion Packaging Co. ("CPC") on October 7, 2002, Case No. 02-39188, which was assigned

to Judge Black. (Compak and CPC will hereinafter be referred to as the "Debtors").

2.    The Debtors are presently in possession, operating and managing its business.

3.    Compak is an Oregon Corporation with its headquarters in Illinois which is the parent

corporation for CPC, an Illinois corporation and wholly owned subsidiary of Compak. Compak is the

holder of patent or programs which will generate income from its products, including the dual lid

127

technology communion cup and the Remembrance Circle of Life Program. CPC is the licensee of the patent known as the communion cup which is a product used by religious groups to deliver communion in liturgical ceremonies. CPC, as the licensee of the Compak patent for the communion cup and as a wholly owned subsidiary of Compak, generates revenues for Compak through payment of license fees.

4.   Since the commencement of this Bankruptcy Proceeding, and prior thereto, the Debtors have been providing information to interested parties about possible investment in or purchase of the assets of the Debtors.

5.   The Internal Revenue Service (the "IRS") is the Debtor's largest secured creditor possessing a security interest in the assets of the Debtors in the amount of $47,255.71 pursuant to a proof of claim filed in this proceeding.

6.   The  Debtors have received an offer to purchase substantially all of their business real and personal property, excluding bankruptcy causes of action and related claims and cash (hereinafter referred to as "Business Assets"), from Nationwide Truck Lines ("Nationwide")for the sum of $750,000.00, which offer was reflected in an Asset Purchase Agreement (the "Agreement") by and between Debtor and Nationwide, as described in the Motion.

7.   Written notice of the Motion, in the form filed herein, was transmitted to all required parties, including, without limitation, to all known potential bidders, all parties in interest and all of the Debtors' scheduled creditors. The notice of the Motion provided was adequate and sufficient under the circumstances of this chapter 11 case.

8.   Prior to the hearing on the Motion, the bid reflected in the Agreement was withdrawn by Nationwide. Because other bidders had expressed interest in bidding on the assets of the

2

Debtors, an auction was held in open court for the purpose of soliciting additional bids pursuant to an Order entered by this court on February 25, 2003 defining the bid procedures (the "Order").

9.    During the auction, bids were solicited by the Debtors pursuant to the procedures authorized in the Order, with bids taken for individual lots of the assets, and bids taken for all of the assets.

10.    BMJ Partners ("BMJ") bid at the auction for all the assets of the Debtors in the amount of $180,000 (the "Offer"). Other bids were solicited, and BMJ's bid was the highest and best bid with no other bidders offering to purchase all the assets for any greater amount.

11.    It is in the best interest of the Debtors, their creditors and their bankruptcy estates that the Business Assets be sold to BMJ pursuant to the terms of the Agreement which formed the basis of the BMJ bid, free and clear of liens, claims, encumbrances and interests for the sum of $180,000 (the "Transaction").

12.    BMJ is a third-party purchaser unrelated to the Debtors. BMJ's principals are unrelated to the Debtors, their officers, directors and shareholders.

13.    The terms of the Transaction are fair and reasonable under the circumstances of this chapter 11 case.

14.    The Motion should be approved because it is in the best interests of the Debtors, its estate, its creditors and other parties in interest.

15.    BMJ is entering into the Transaction in good faith and is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protection of that provision with respect to the Motion and this Order, and otherwise has proceeded in good faith in all respects in connection with the Transaction in that:

a.   BMJ recognized that the Debtors were free to deal with any other party interested in purchasing its assets;

b.   BMJ participated in an in-Court competitive bidding process;

c.   BMJ in no way induced or caused the chapter 11 filing of the Debtor; and

d.   BMJ has not violated section 363(n) of the Bankruptcy Code by any action or inaction.

16.   BMJ's offer to purchase the Business Assets is the highest and best offer received for the Business Assets.

17.   There was no objection raised to the approval of BMJ's Offer.

**BASED ON THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, EFFECTIVE IMMEDIATELY, AS FOLLOWS:**

A.   The Court has jurisdiction to hear and determine the Motion and enter this Order.

B.   This Order constitutes a final and appealable order within the meaning of 28 U.S.C. §158(a), that there is no just reason for delay of its enforcement and directs entry of judgment as set forth herein.

C.   This proceeding is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(a),(n) and (o).

D.   The statutory predicates for the Motion are sections 363 and 105 of the Bankruptcy Code, as complemented by the Federal Rules of Bankruptcy Procedure.

E.   The Motion is hereby authorized and approved in all respects except to the extent modified by this Order.

F.   The notice of the Motion provided complied with the various applicable

4

requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the procedural due process requirements of the United States Constitution.

G.    The Debtors are authorized to sell the Business Assets to BMJ pursuant to sections 363 and 105 of the Bankruptcy Code and on terms substantially comparable to those of the Asset Purchase Agreement attached hereto as Exhibit "A ( the "Agreement"). Such sale shall be free and clear of all liens, claims, encumbrances and interests, including rights of set off and recoupment, with any Liens against the Business Assets to attach to the net proceeds of sale in the same order of priority as such Liens possessed against the Business Assets.

H.    The Debtors are authorized to pay all closing costs and taxes related to the sale of the Business Assets all without further Order of this Court.

I.    The Debtors are authorized to perform such actions as may be necessary or required to sell and transfer the Business Assets to BMJ in accordance with this Order.    In connection therewith, the Debtors are authorized to perform, consummate and implement the closing terms substantially comparable to those of the Agreement (as modified herein) and any other documents, instruments or agreements necessary or required to be executed in connection therewith, and to close the Transaction.

J.    Upon the closing of the Transaction, the Business Assets shall be transferred and sold, and possession thereof delivered, to BMJ, free and clear of all liens, claims, encumbrances, and interests of any kind and nature, including rights of set off and recoupment.

H. L  BMJ is not a successor to the Debtors or their estates by reason of any theory of law or equity and BMJ shall not assume or in any way be responsible for any liability or obligation of the Debtors and/or their estates except as specifically assumed by BMJ.

5

I. Effective on the date of entry of this Order, all entities, including, without limitation, the Debtors (and/or their successor, including any trustees thereof), creditors, employees, former employees and shareholders shall be permanently and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of any kind against BMJ either as alleged successor or with respect to any Liens against the Business Assets or arising out of the Transaction.

J. The terms and provisions of this Order shall be binding upon the Debtors, any trustees thereof, their respective estates and creditors, the Debtors' shareholders, all entities and third parties, and their respective successors and assigns.

K.    Upon closing, all funds shall be deposited in the ~~Debtor-in-Possession~~ *Michael J. Davis Client Trust* account of Compak and said funds shall be frozen pending further Order of this Court

L.    If any person or entity which has filed statements or other documents or agreements evidencing Liens on, or interests in, the Business Assets, shall not have delivered to the Debtors prior to or contemporaneously with the Closing termination statements and other instruments of release, the Debtors and/or BMJ is hereby authorized to execute and file such termination statements and other instruments of release on behalf of such person or entity with respect to the Business Assets.

M.    Upon closing all Business Assets which are in the possession and control of the Debtors shall be delivered by the Debtors to BMJ, except as excluded by the Agreement. Any and all other Business Assets in the possession or control of any other person or entity, excluding the Debtors but including, without limitation, any current or former vendor, supplier or employee of the Debtors are transferred to BMJ free and clear of Liens; and, such vendors, suppliers,

6

employees, persons, or entities shall immediately deliver and relinquish possession and control of such Business Assets to BMJ.

N.    The ten day stay of this Order provided by Rule 6004(g) and 6006(d) shall not apply.

O.    No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Transaction.

P.    Any net cash proceeds derived from the sale of the Business Assets, shall be deposited by the Debtors into the Compak Debtor in Possession Bank Account.


Dated this _24th_ of March, 2003

                              ENTERED:


                              _Bruce W. Black_
                              **Bankruptcy Judge**


Michael Davis
Davis & Hands
1301 W. 22nd St., St. 603
Oak Brook, Ill. 60523
630-574-0123

7

02/10/2003  16:25  3126631514     WEISSBERG AND ASSOCT     PAGE  02

02/11/2003  17:51  3126631514     WEISSBERG AND ASSOCT     PAGE  02

2/11/2003

# ASSET PURCHASE AGREEMENT

THIS AGREEMENT is made in duplicate on this 9TH day of FEBRUARY, 2003, by and among Compak Corporation, an Oregon Corporation ("Compak"), Communion Packaging Company, an Illinois corporation ("Communion"), both located at 980 North Michigan Ave. Suite 1400, Chicago, Illinois 60611, (Compak and Communion shall be referred to collectively as "Sellers"; and NATIONWIDE TRUCK LINES INC, Chicago, Illinois herein after referred to as "Purchaser".

1.     **Assets to be Sold by Compak.** On the terms and subject to the conditions herein set forth, at the Closing, Compak shall sell, assign, transfer and convey to Purchaser, and Purchaser shall purchase and acquire the following assets (the "Compak Assets"): (a) all of the issued and outstanding common capital stock and equity securities that Compak owns in Compak BVI ("Compak BVI Stock"); (b) the name "Compak Corporation"; (c) the patent and all intellectual property rights in the Communion Cup patent number 5246106 dated September 21, 1994 (the "Patent"); (d) all forms, office supplies, catalogs and warehouse and other supplies located at the facility or in any other location; (e) all prepaid expenses and deposits reflected as assets if such assets are of continuing benefit to the Purchaser after the Closing Date; (f) all books, records, computer tapes and discs, computer software, files and other papers and documents of Compak located at the facility or any other location, including without limitation all price lists, sales records, sales correspondence, ledgers, journals, statements, bills, invoices, customer and supplier lists, files and records, data processing records and payroll and employment records; (g) all of Compak's right, title and interest in and under all Leases, Contracts and Permits, which are being assigned to and assumed by Purchaser, and all unfilled customer orders and unfilled purchase orders

2     **Assets to be Sold by Communion.**

2.1.     On the terms and subject to the conditions herein set forth, at the Closing, Communion shall sell, assign, transfer and convey to Purchaser, and Purchaser shall purchase and acquire the following assets ("Communion Assets"):

(a) All of the properties, assets and choses in action, rights, accounts receivable as of the Closing Date, licenses, permits, franchises and interests of every kind and description, real, personal and mixed, tangible and intangible, wherever located, then owned, in whole or in part, by Communion, and all of Communion's business as a going concern, together with any goodwill associated therewith, located at Chicago, Illinois or Franklin Park, Illinois (the " OLMARC facility") or any other location where Communion has assets located. Without limiting the generality of the foregoing, the Communion Assets shall include the following:

(i) All inventories of every kind and character, located at the facility or any other location (herein called collectively "Inventory"); (ii) All fixed assets located at the

1

02/18/2003  16:25   3125531514          WEISSBERG AND ASSOCT         PAGE   03
02/11/2003  17:51   3125531514          WEISSBERG AND ASSOCT         PAGE   03

2/11/2003

facility, including, without limitation, all machinery and equipment, accessories, attachments and parts therefore; (iii) All forms, office supplies, catalogs and warehouse and other supplies located at the facility or in any other location; (iv) All prepaid expenses and deposits reflected as assets if such assets are of continuing benefit to the Purchaser after the Closing Date; (v) All books, records, computer tapes and discs, computer software, files and other papers and documents of Communion located at the facility or any other location, including without limitation all price lists, sales records, sales correspondence, ledgers, journals, statements, bills, invoices, customer and supplier lists, files and records, data processing records and payroll and employment records; (vi) All of Communion's right, title and interest in and under all Leases, Contracts and Permits, which are being assigned to and assumed by Purchaser, and all unfilled customer orders and unfilled purchase orders; (vii) All real estate now owned by Communion; (viii) All other assets, properties and rights specifically set forth in this Agreement as being sold, transferred or assigned to, or purchased by, Purchaser; and, (ix) the name "Communion Packaging Company."

3       **Excluded Liabilities**. Hereinafter, the Communion Assets and the Compak Assets shall be collectively referred to as the "Sale Assets." This Agreement is only for the sale, assignment, transfer and delivery of the Sale Assets, as described above. Consequently, the parties agree that nothing contained herein shall be construed as an assumption by Purchaser of any of Sellers' debts, obligations, or liabilities. All such liabilities which have arisen or have been incurred prior to the Closing Date shall remain the obligation of Sellers whether or not such liabilities are reported, contingent, or otherwise, or whether Purchaser and/or Sellers have actual notice of such liabilities prior to the Closing Date. ..

4. **Purchase Price**. Purchaser agrees to purchase the Sale Assets for the sum of seven hundred fifty thousand ($750,000.00) Dollars as follows ("Purchase Price"):

4.1 **Earnest Money**. Seventy Five Thousand and No/100 ($75,000.00) Dollars to be paid on February 28th, 2003. The earnest money shall be held in escrow by EDWARD BERMAN, P.C. ("Escrowee") for the mutual benefit of the parties and shall be disbursed according to the terms of this Agreement. In the event either party submits a written request to Escrowee for disbursement of the escrowed funds other than for purposes of Closing, Escrowee shall provide a five-day written notice to the other party of the proposed distribution, at the party's address shown on this Agreement or such other address last provided to Escrowee. In the event such other party fails to object in writing to the proposed distribution within five (5) days of mailing of the notice, Escrowee shall disburse the escrowed funds accordingly; otherwise the funds shall continue to be held in escrow pending joint direction of the parties or an order of court of competent jurisdiction.

4.2 **Balance**. The balance of the Purchase Price to be paid at Closing in cash to Purchaser in the amount of $675,000.00.

2

2/11/2003

4.3 <u>Purchase Price Allocation</u>.  The Purchase Price shall be allocated as follows: (a) $650,000.00 of the Purchase Price shall be allocated to the Compak Assets; and, (b) $100,000.00 of the Purchase Price shall be allocated to the Communion Assets. Notwithstanding the foregoing, the Purchase Price shall be paid at Closing to Compak.

5.  <u>Representations</u>.

5.1 <u>Seller Representations</u>.  In order to induce Purchaser to enter into this Agreement, the Sellers covenant, warrant and represent, as the case may be, to the Purchaser that to the best of Sellers' knowledge:

(a)     That Sellers have good and merchantable title to the Sale Assets subject to liens and encumbrances which shall be released at Closing; and further represent and warrant that there are no complaints pending against Sellers pertaining to the Sale Assets that cannot be resolved by the entry of a final and nonappealable order of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, approving the transactions contemplated in this agreement ("Bankruptcy Court Order");

(b)     Sellers have no action, proceeding, or investigation pending or threatened against Sellers before any court or any governmental department, commissions, board, agency or instrumentality other than that involved in Bankruptcy case nos. 02-B-22594 and 02-B-39186 filed in the Northern District of Illinois, Eastern Division (the "Case") or have reasonable grounds to know any basis for any action, proceeding or investigation resulting in any order, injunction, or decree against Seller other than that mentioned herein;

(c)     Sellers have complied with all laws, rules and regulations relating to the business and the Sale Assets;

(d)     Sellers will use their best efforts to acquire approval from the Bankruptcy court for the sale of the Sale Assets free and clear of all liens, claims and encumbrances, including the entry of the Bankruptcy Court Order, and Sellers owe no obligations and have contracted no liabilities affecting Sellers' business which might affect the consummation of the purchase price and sale described in this Agreement other than those involved in the Case for which Sellers will use their best efforts to receive Bankruptcy Court approval for the sale free and clear of all liens, claims and encumbrances nor will such purchase and sale conflict or violate any agreement or law to which Sellers or said businesses are subject.

3

02/18/2003  15:25    3125531514                  WEISSBERG AND ASSOCT                PAGE  05
02/11/2003  17:51    3125531514                  WEISSBERG AND ASSOCT                PAGE  05

2/11/2003

(e)    Sellers have paid in full or will arrange for such payment of all taxes of Sellers which may arise or result from this Agreement and will use their best efforts to obtain the Bankruptcy Court Order.

(f)    Subject to approval by the Bankruptcy Court, the party signing this Agreement on behalf of the Sellers has full right, title and authority to execute this Agreement and all other documents of conveyance contemplated hereunder and is empowered to perform all acts contemplated hereunder.

(g)    Between the date of the execution of this Agreement and the Closing, Sellers shall maintain the inventory at normal and customary levels.

(h)    The Sellers shall continue their normal operations through the Date of Closing.

(i)    The Sellers shall make their best efforts to retain all customers and represent to all inquiring parties that the assets of the Sellers are being sold as on-going entities;

(j)    The Sellers shall make their best efforts to retain all employees necessary to operate the businesses of the Sellers.

5.2.    Purchaser Representations. Purchaser represents and warrants that:

(a)    Purchaser has no action, proceeding, or investigation pending or threatened against Purchaser before any court or any governmental department, commissions, board, agency or instrumentality, nor does Purchaser know, or have reasonable grounds to know, any basis for any action, proceeding or investigation resulting in any order, injunction, or decree against Purchaser.

(b)    Purchaser has complied with all laws, rules and regulations relating to the transactions contemplated by this Agreement.

(c)    Purchaser has full right, title and authority to execute this Agreement and all other documents of conveyance contemplated hereunder and is empowered to perform all acts contemplated hereunder.

4

2/11/2003

> (d)    Purchaser shall use its best efforts to cause the transactions contemplated by this Agreement to be consummated.

6. <u>Closing</u>. Closing of the transaction contemplated herein shall take place ten days after entry of the Bankruptcy Court Order in the Case (i.e., 10 days after the order becomes final and non-appealable) or at such earlier date as full compliance as set forth in Paragraph 16 herein is completed; but in any case, no earlier than March 20, 2003 and no later than March 31, 2003. At the Closing of this transaction, Purchaser shall pay <u>Compak</u> as provided for in Paragraph 4, and Sellers shall deliver to Purchaser its Bills of Sale, Assignment of Patent, Assignments of Name, Certificate for the Compak BVI Stock and all other documents necessary to effectuate the transfer of title to the property being sold herein to be free and clear of any claims, liens, or encumbrances.

7.    <u>Risk of Loss</u>.

> Prior to Closing, the Sellers assume all risk of loss, damage, or destruction to the Sale Assets being purchased herein by Purchaser. In the event of any such loss prior to Closing which substantially impairs the value of Sellers' business, Purchaser shall have the right to terminate this Agreement or to close and receive an assignment of the applicable insurance proceeds.

8.    <u>Assignment</u>.

> This Agreement and any interest therein may be assigned by Purchaser without the written consent of the Sellers.

9. <u>Closing Documents</u>.

> 9.1 <u>Sellers' Closing Documents</u>.

> > At the time of Closing, Sellers shall deliver to Purchaser the following documents:

> > > (a)    Certified Copies of Resolutions duly adopted by the directors of Communion and Compak authorizing the execution and delivery of this Agreement with Purchaser and the consummation thereof;

> > > (b)    A Certificate of Good Standing dated no more than thirty (30) days prior to the closing from the Secretary of State in which Communion and Compak are incorporated or organized showing that Communion and Compak are in good standing;

5

02/10/2003  16:25    3126531514                    WEISSBERG AND ASSOCT          PAGE  07
02/11/2003  17:51    3126531514                    WEISSBERG AND ASSOCT          PAGE  07

2/11/2003

      (c)    All records of account and such other data and documents in Sellers' possession and control as may be necessary for or helpful to Purchaser to continue the operation and maintenance of the businesses of Compak and Communion;

      (d)    Bills of Sale transferring title to the Sale Assets;

      (e)    Assignment of Patent transferring title in the Patent to Purchaser;

      (f)    Assignments of Name transferring title in the name "Compak Corporation" and "Communion Packaging Company" to Purchaser; and,

      (g)    Such other documents or instruments as may be reasonably necessary to effectuate the transactions provided for in this Agreement.

9.2 Purchaser's Closing Documents. At Closing, Purchaser will deliver the following documents and payments to Sellers:

      (a)    Payment to Compak of all of the funds due to be paid as described in Paragraph 4 of this Agreement.

      (b)    Any other documents reasonably requested by Sellers to effectuate these transaction.

10.    Access. Upon the signing of this Agreement, Sellers agree to allow Purchaser or its representatives full access to all books, and records, of Sellers and to fully explain and answer any questions which may arise from the inspection. Sellers and Purchaser, individually, agree that all information provided is strictly confidential and will not divulge its contents to any person or entity not a party to this Agreement or use the information to its benefit prior to the Closing or in the event this transaction fails to close.

11.    Binding.

    This Agreement shall be binding on and shall inure to the benefit of the executors, administrators, successors, and assigns of the parties hereto; nothing contained in this paragraph shall be construed as a consent to any assignment of this Agreement by Sellers or Purchaser except as provided in Paragraph 8 of this Agreement.

12. Survival.

    The representations, warranties and covenants of the parties hereto and their respective successors and/or assigns shall survive the Closing.

2/11/2003

13. Notices. All notices, requests, demands, and other communications hereunder shall be in writing and shall be deemed to have been duly given (i) upon delivery when delivered personally; (ii) three (3) business days after being deposited in the United States mail, registered or certified mail, return receipt requested; or (iii) one (1) business day after being dispatched by a nationally recognized overnight courier service, to the parties at the addresses as set forth below or at such other addresses as may be furnished in writing:

If intended for Sellers:

Michael J. Davis

Davis & Hands

1301 W. 22nd St., Ste. 603

Oak Brook, Illinois  60523

If intended for Purchaser:

Ariel Weissberg

401 South LaSalle, Suite 403

Chicago, Illinois  60605

14. Entire Agreement.

This Agreement constitutes the sole and only Agreement between Sellers and Purchaser respecting the sale and purchase of the Sale Assets and correctly sets forth the obligations of Sellers and Purchaser to each other as of this date. Any Agreements or representations respecting said business or its sale to Purchaser not expressly set forth in this Agreement are null and void.

No amendments or variation of the terms and conditions of this Agreement shall be valid or enforceable unless made in writing and signed by Purchaser and Sellers.

15. Supplemental Exhibits. Seller may, from time to time prior to or at the Closing, by notice in accordance with Paragraph 13, supplement or amend any Exhibit, including, without limitation, one or more supplements or amendments to correct any matter which

7

2/11/2003

would constitute a breach of any representation, warranty or covenant herein contained. No such supplemental or amended Exhibit shall be deemed to cure any breach of such representation, warranty or covenant for purposes of Paragraph 17 hereof. If, however, the Closing occurs, any such supplement or amendment of any Exhibit will be effective to cure and correct for all purposes any breach of any representation, warranty or covenant which would have existed by reason of Sellers not having made such supplement or amendment.

16. Conditions Precedent.

16.1 Purchaser's Performance. The performance of the obligations of Purchaser are subject, at the election of Purchaser, to these conditions precedent:

(a)    At Closing, the title of Sellers to the Sale Assets will be good and marketable and be free and clear of all liens, claims, and encumbrances.

(b)    Each of the representations and warranties of Sellers in this Agreement or in any certificate or document delivered under its provisions, or in connection with these transactions, shall be true on and as of Closing, as though such representations and warranties were made on and as of Closing, except for such changes contemplated or permitted by this Agreement.

(c)    Sellers shall have performed and complied with all covenants, agreements and obligations required by this Agreement to be performed or complied with by it before or at Closing, including the delivery of all documents and instruments in the form required by Paragraph 5.

(d)    Sellers shall have secured necessary approval of the transactions contemplated by this Agreement from the United States Bankruptcy Court in connection with the pending bankruptcy of Sellers, including the Bankruptcy Court Order.

15.2  Sellers' Performance. The performance of the obligations of Sellers is subject, at the election of Sellers, to these conditions precedent:

(a)    Each of the representations and warranties of Purchaser in this Agreement, or in any certificate or

2/11/2003

document delivered under its provisions, or in connection with these transactions shall be true in all material respects on and as of Closing, as though such representations and warranty was made on and as of Closing, except for such changes contemplated or permitted by this Agreement.

(b)     Purchaser shall have performed and complied in all material respects with all covenants, agreements and obligations required by this Agreement to be performed or complied with by it before or at Closing, including the delivery of all payments, documents and instruments in the form required by Paragraph 5.

(c)     Purchaser shall have delivered to Sellers, all of the funds due to be paid as described in Paragraph 4 of this Agreement.

(d)     Sellers shall have secured necessary approval of the transactions contemplated by this Agreement from the United States Bankruptcy Court in connection with the pending bankruptcy of Sellers', including the entry of the Bankruptcy Court Order.

16. Construction: Severability. This Agreement is being delivered and is intended to be performed in the State of Illinois and shall be construed and enforced in accordance with the laws of the State of Illinois. The language used in this Agreement will be deemed to be the language chosen by the parties hereto to express their mutual intent and no rule of strict construction will be applied against any party hereto. In the event that any provision of this Agreement is found to be unenforceable, invalid or illegal, the remainder of this Agreement shall continue in full force and effect as if such enforceable, invalid or illegal provision were not a part of this agreement.

17. Termination.

17.1 Permitted Termination. This Agreement may, by notice given prior to or at the Closing, be terminated only under the following circumstances (each, a "Permitted Termination"):

(a)     By either Purchaser or Sellers if a material breach of any provision of this Agreement has been committed by the other party and such breach has not been waived;

9

2/11/2003

(b)      By Purchaser, if any of the conditions in **Paragraph 15.1** have not been satisfied on or before the Closing Date, or if satisfaction of any such condition is or becomes impossible (other than through the failure of Purchaser to comply with its obligations under this Agreement) and Purchaser has not waived such condition or before such date;

(c) By Seller, if any of the conditions in **Paragraph 15.2** have not been satisfied on or before the Closing Date or if satisfaction of any such condition is or becomes impossible (other than through the failure of Sellers to comply with its obligations under this Agreement) and Sellers have not waived such condition on or before such date; or

17.2 By mutual consent of Purchaser and Sellers, if any entity or combination of entities other than Purchaser bids $50,000 more than the amount Purchaser has offered to pay in this Agreement and Purchaser does not wish to exercise its rights under *Paragraph 17.3*.

17.3    Result of Termination. Each party's right of termination under **Paragraphs 17.1 and 17.2** is in addition to any other rights it may have under this Agreement or otherwise, and the exercise of a right of termination will not be an election of remedies. If this Agreement is terminated pursuant to **Paragraphs 17.1 and 17.2** except as set forth below, all further obligations of the parties under this Agreement will terminate except that Sellers will pay to Purchaser a breakup fee of *expenses attributable to the preparation and execution of their bid in an amount of no less $27,000.00* if this agreement is terminated pursuant to Paragraph 17.1.4. In the event Purchaser is the terminating party because of Sellers' breach, the earnest money shall be returned to Purchaser.

17.4    Overbid., In the event that Purchaser does not purchase the Sale Assets under this Agreement as a result of an "overbid" received by Sellers in connection with the bankruptcy proceedings, the earnest money shall be returned to Purchaser. The parties agree that, in the event that an "overbid" is received which, in the determination of the Bankruptcy court responsible for Sellers' bankruptcy, is superior to the price being paid by Purchaser by more than $50,000 the Purchaser shall, at its discretion, have the right to match or exceed such "overbid" and, at its discretion, to purchase the Sale Assets under this Agreement at such purchase price subsequently offered by Purchaser and approved by the Bankruptcy Court.

18. As Is. Purchaser accepts the Sale Assets in all respect in "AS IS" condition as of the date of this Agreement, *except as indicated herein.*.

WEISSBERG AND ASSOCT
WEISSBERG AND ASSOCT

2/11/2003

19. Waiver. The waiver by either party of a breach or violation of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach of such provision or any other provision of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Memorandum of Agreement on the day and year first written above.

COMPAK CORPORATION

By: _____

Its: _____

COMMUNION PACKAGING CORPORATION

By: _____

Its: _____

NATIONWIDE TRUCK LINES, INC.

By: _____

Its: _____

11

# Appendix Ex. 66

## BILL OF SALE
## ASSETS OF COMMUNION PACKAGING COMPANY

Communion Packaging Company, an Illinois corporation (the "Seller"), for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby sell, assign, transfer and set over to BMJ Partners., an Illinois corporation (the "Purchaser"), and its successors and assigns, all of Seller's right, title and interest in and to all of the personal property of the Seller, tangible and intangible, wherever located, including without limitation all of Seller's business as a going concern, goodwill, choses in action, accounts receivable, licenses, franchises, the assets indicated on the Schedules and Statement of Financial Affairs filed in Bankruptcy case #02-39188 in the Northern District of Illinois, Eastern Division inventory, fixtures, machinery, equipment, accessories, attachments, parts, forms, office supplies, catalogs, warehouse and other supplies, prepaid expenses, deposits, refunds, books, records, computer tapes and disks, computer software, files and other papers and documents, unfilled customer orders, unfilled purchase orders, trademarks, trade names, service marks, registrations, patents, insurance policies (including proceeds thereof), the phone numbers 312-902-1221, 866-272-7265, the website www.CommunionPackaging.com, and all other personal property and personal property rights specifically set forth in that certain Order (the " Order") dated March 24, 2003 by and between Purchaser and Seller; except that the following personal property of the Seller shall be excluded from the Purchased Assets: all records having exclusively to do with the corporate organization of Seller's business, tax records, records maintained by Seller's accountants and attorneys, records related to assets excluded from the Purchased Assets, records related to any liability of Seller, other formal corporate records, Seller's rights under the Asset Purchase Agreement, tax records, tax returns, related work papers relating to Seller's business prior to today, collective bargaining agreements, personnel policies (including vacation time, holiday pay, tuition reimbursement, bonus programs and sick leave), material fringe benefits, medical, life or disability benefits, excess benefit plans, bonus or incentive plans, deferred compensation plans, change-of-control agreements, other employee benefit plans, policies, programs, arrangements, agreements or contracts (whether or not written or terminated), cash, cash equivalents, cash investments, marketable securities, bank deposits, avoidance actions, claims, and rights of recovery available to debtors under 28 U.S.C., Title 11.

EXCEPT AS PROVIDED IN THE ASSET PURCHASE AGREEMENT, ASSIGNEE MAKES NO REPRESENTATION, WARRANTY, COVENANT OR UNDERTAKING, EXPRESS OR IMPLIED, WITH RESPECT TO THE EXISTENCE OF ANY SPECIFIC ITEMS CONSTITUTING THE PURCHASED ASSETS OR THE QUANTITY THEREOF, OR THE CONDITION, QUALITY, MERCHANTABILITY (IN THE SENSE OF A UCC WARRANTY), FITNESS FOR A PARTICULAR PURPOSE OR VALUE OF THE PURCHASED ASSETS, AND THE PURCHASED ASSETS ARE SOLD WITHOUT RECOURSE ON AN ABSOLUTE "AS IS, WHERE IS" BASIS.

On or after the date hereof, the Seller will, at the Purchaser's sole expense, from time to time, at the Purchaser's reasonable request, execute and deliver such further instruments and take or cause to be taken such other action to carry out the effect, intent

and purpose of the sale, assignment and transfer to the Purchaser hereunder.

Dated this _____ day of March, 2003

Compak Corporation

By: _____

Its: _____

685927_2 [12/12/01]

2

DUO03135

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| COMPAK CORPORATION, | ) | Case No. 02 B 22594 |
| | ) | Honorable Bruce W. Black |
| Debtor. | ) | Chapter 7 |
| | ) | |
| COMMUNION PACKAGING | ) | Case No. 02 B 39188 |
| COMPANY, an Illinois corporation, | ) | Chapter 7 |
| | ) | Honorable Bruce W. Black |
| Debtor. | ) | |
| | ) | (Jointly Administered) |
| _____ | ) | |
| THE COMPAK COMPANIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 04 A 04028 |
| | ) | |
| v. | ) | |
| | ) | |
| JIMMIE L. JOHNSON, RON BOWEN, | ) | |
| BRUCE CARLSON, PATPAK, INC., | ) | |
| DUOTECH HOLDINGS, INC., | ) | |
| DUOTECH PACKAGING, LLC, AND | ) | |
| OLMARC PACKAGING COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF FILING

To: Attached Service List

Please take notice that on **July 24, 2008**, the undersigned filed with the United States Bankruptcy Court for the Northern District of Illinois, 219 S. Dearborn Street, Chicago, Illinois, the **JOINDER OF TRUSTEES TO OBJECTIONS TO THE PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO BANKRUPTCY RULE 9033 AND LOCAL RULE 9033-1,** a copy of which is attached hereto.

_____
/s/
Joseph A. Baldi

**Certificate Of Service**

I, Joseph A. Baldi, hereby certify that I caused a true and correct copy of the foregoing Notice of Filing and the document identified therein to be served on the persons on the attached service list by electronic mail, or facsimile transmission on July 24, 2008.

_____/s/_____
Joseph A. Baldi

### SERVICE LIST
### The Compak Companies, LLC v. Johnson et al
### 04 A 04028

David P. Leibowitz
Leibowitz Law Center
420 West Clayton Street
Waukegan, IL 60085-4216
*Via e-mail and facsimile*

Office of the United States Trustee
227 West Monroe Street
Suite 3350
Chicago, IL 60603
USTPRegion11.ES.ECF@usdoj.gov

Ariel Weissberg, Esq.
Weissberg and Associates, Ltd.
401 South LaSalle Street, Suite 403
Chicago, IL 60605
*Via e-mail and facsimile*

The Compak Companies, LLC/ BMJ Parners/JoeAnn McClandon
c/o Robert M. Fishman
and George J. Spathis
Shaw Gussis, Fishman Glantz Wolfson & Towbin
321 N. Clark Street, Suite 800
Chicago, IL 60610
*Via e-mail and facsimile*

DuoTech Holdings, Inc./DuoTech Packaging LLC/Bruce Carlson.
c/o Steven E. Anderson
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606
(312) 357-1313
Fax: (312) 759-5646
sanderson@btlaw.com
*Via e-mail*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| COMPAK CORPORATION, | ) | Case No. 02 B 22594 |
| | ) | Honorable Bruce W. Black |
| Debtor. | ) | Chapter 7 |
| | ) | |
| COMMUNION PACKAGING | ) | Case No. 02 B 39188 |
| COMPANY, an Illinois corporation, | ) | Chapter 7 |
| | ) | Honorable Bruce W. Black |
| Debtor. | ) | |
| | ) | (Jointly Administered) |
| _____ | ) | |
| THE COMPAK COMPANIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 04 A 04028 |
| | ) | |
| v. | ) | |
| | ) | |
| JIMMIE L. JOHNSON, RON BOWEN, | ) | |
| BRUCE CARLSON, PATPAK, INC., | ) | |
| DUOTECH HOLDINGS, INC., | ) | |
| DUOTECH PACKAGING, LLC, AND | ) | |
| OLMARC PACKAGING COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## JOINDER OF TRUSTEES TO OBJECTIONS TO THE PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO BANKRUPTCY RULE 9033 AND LOCAL RULE 9033-1

David Leibowitz, trustee of the Estates of Compak Corporation and Communion Packaging Company, and Joseph A. Baldi, trustee of the estate of Jim Johnson (herein collectively the "Trustees"), as parties-in-interest in these proceedings, hereby join the Objections to the Proposed Finding of Fact and Conclusions of Law Pursuant to Bankruptcy Rule 9033 and Local Rule 9033-1, docket number 223, filed on July 7, 2008 by DuoTech Holdings, Inc., DuoTech Packaging LLC and Bruce Carlson.

Dated: July 24, 2008

Respectfully submitted,

DAVID P. LEIBOWITZ, not individually or
personally, but solely in his capacity as Trustee
of the Compak and Communion bankruptcy
estates

By:_____/s/_____

David Leibowitz
Leibowitz Law Center
420 Clayton Street
Waukegan, IL 60085
*Counsel to Chapter 7 Trustee*
*David P. Leibowitz*

JOSEPH A. BALDI, not individually or
personally, but solely in his capacity as Trustee
of the Johnson bankruptcy estate

By:_____/s/_____

Joseph A. Baldi (00100145)
JOSEPH A. BALDI & ASSOCIATES PC
19 South LaSalle Street
Suite 1500
Chicago, Illinois 60603
Telephone: (312) 726-8150
Facsimile: (312) 332-4629
*Counsel to Chapter 7 Trustee*
*Joseph A. Baldi*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILINOIS

| | |
|---|---|
| In re: | ) |
| | ) Case No. 02 B 22594 |
| COMPAK CORPORATON, | ) Chapter 7 |
| | ) |
| Debtor. | ) Honorable Bruce W. Black |
| | ) |
| COMMUNION PACKAGING COMPANY, | ) Case No. 02 B 39188 |
| | ) Chapter 7 |
| Debtor. | ) |
| | ) (Jointly Administered) |

| | |
|---|---|
| THE COMPAK COMPANIES, LLC | ) |
| | ) |
| Plaintiff, | ) Adv. Proc. No. 04 A 04028 |
| v. | ) |
| | ) |
| JIMMIE L. JOHNSON, RON BOWEN, BRUCE | ) |
| CARLSON, PATPAK, INC., DUOTECH HOLDINGS, | ) |
| INC., DUOTECH PACKAGING , LLC, and OLMARC | ) |
| PACKAGING COMPANY, | ) |
| | ) |
| Defendants. | ) |

## THE COMPAK COMPANIES, LLC'S RESPONSE TO THE DUOTECH DEFENDANTS' OBJECTIONS TO PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff, The Compak Companies, LLC ("TCC"), by its attorneys and pursuant to the

Federal Rules of Bankruptcy Procedure 9033 and Local Rule 9033-1, submits its response to the

Objections ("Objections") by Duo Tech Holdings, Inc., DuoTech Packaging, LLC, and Bruce

Carlson (the "Defendants")[1] to the Bankruptcy Court's proposed findings of fact and conclusions of

law entered on June 25, 2008 (the "Proposed Findings" and "Proposed Conclusions").

### INTRODUCTION

Ignoring the record in this case, the Defendants object to Bankruptcy Court's Proposed

Conclusions that: (1) at all relevant times, Compak owned (or was entitled to own) the '351, '388

and '312 Patents (sometimes referred to as the "Related Patents"); (2) Compak's interests in the

---

[1] The Trustees of the Compak and Johnson bankruptcy estates have also filed objections merely joining in the Objections filed by the Defendants.

Related Patents were sold and assigned to BMJ Partners ("BMJ"), TCC's predecessor in interest; and (3) Compak's interests in all licensing agreement (including any agreement with DuoTech) were similarly sold and assigned to BMJ.

**Significantly, the Defendants have posited no objection to any of the Court's Proposed Findings.** Instead, Defendants' Objections simply rehash the same flawed legal arguments that they raised in the briefing of the summary judgment motion that the Bankruptcy Court properly rejected. The Defendants' Objections should be rejected in their entirety. As set forth more fully below, the Bankruptcy Court correctly held that Compak was vested with ownership of all of the Related Patents by operation of law, and its interest in the Related Patents were sold to BMJ. The Bankruptcy Court erred, however, in its conclusion that the sale did not occur "free and clear" of any DuoTech license to use the 106 Patent (defined below) and the Related Patents. Indeed, controlling Seventh Circuit authority makes it clear that even the complete *lack* of notice merely rendered the sale order voidable (not void), but that defect was waived by the Defendants, who failed to move in a timely fashion to vacate the sale order. Finally, in the alternative, to the extent that the Debtor's asset were sold *subject to* a DuoTech license, the Bankruptcy Court correctly concluded that any and all benefits, including the right to receive royalties on these Related Patents--belong solely to Plaintiff as the owner of the Related Patents.

**THE STANDARD OF REVIEW**

The provision of Rule 9033 regarding this Court's review of the Proposed Findings and Conclusions is clear and concise:

> The district court judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject or modify the proposed finding of fact and conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instruction.

2

Fed. R. Bank. P. 9033(d). Based upon this standard of review, the Proposed Findings should be accepted, and the Proposed Conclusions should be accepted, in part, and rejected, in part, as set forth both herein and in accordance with Plaintiff's Objections.[2]

**THE BANKRUPTCY COURT CORRECTLY CONCLUDED THAT, AT ALL RELEVANT TIMES, COMPAK WAS VESTED WITH OWNERSHIP OF THE PATENTS BY OPERATION OF LAW**

The Bankruptcy Court was correct when it held that: "All rights, title, and interest" in the Related Patents "vested in Compak by operation of law when the Patents were issued;" (2) that "Johnson was divested of any transferable interest" in these Related Patents; and that as such, (3) "the purported Patpak license was invalid…." *See* Proposed Conclusions at Count II, ¶¶ 2-4. This is particularly clear when viewed in content of the broader record, summarized briefly below.

The patents at issue are used to fabricate multi-compartment, dual-lid containers that allow the packaging of liquids and solids together. The first of these patents, the "106 Patent," was issued in 1993 to Jimmie Johnson. The 106 Patent was for a "communion cup" in which juice or wine is sealed in one compartment, and a communion wafer is sealed in the other compartment. Subsequent continuations of the 106 Patent merely expanded the uses for the container, and eventually added minor modifications to the lid design. *See* Plaintiff's Statement of Additional Material Facts (hereinafter "Statement") at ¶¶ 8-24.[3]

In 1992, while the 106 Patent was pending, Johnson assigned his interest in the 106 Patent, "and any related inventions" to the newly formed Compak Corporation ("Compak"), in exchange for 2,600,000 shares of Compak stock. At the same time, Johnson also executed a Subscription Agreement in which he agreed that he would not directly or indirectly use or disclose Compak's

---

[2]    TCC filed its limited Objections to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law on July 25, 2008, and incorporates them by reference herein.

[3]    The Statement was included as part of Plaintiff's Response to the Statement of Facts as to which the DuoTech Defendants Contend there is No Genuine Issue, and an Appendix of Exhibits concurrently submitted in support thereof (the "Appendix"). Pursuant to Rule 9033(b), the Statement and Appendix will be furnished herewith, together with all pleadings referenced herein.

"processes, data, know-how, improvements, inventions [and] techniques ....or anything related thereto." *See* Statement at ¶¶ 6-7.   The Bankruptcy Court expressly found that the 1992 Bill of Sale operated as a transfer by Johnson of "all of his interest in the invention underlying the application which led to the 106' patent, *and any subsequent related inventions,* to Compak." *See* Proposed Findings at ¶ 10 (emphasis added).  Defendants tacitly concede the same.

Johnson would later apply for the Related Patents, and obtained them in his own name (rather than Compak's name) even though each was expressly designated as a "continuation" of the 106 Patent. *See* Statement at ¶¶ 8-24.   The Bankruptcy Court expressly found that the "ideas and inventions which are the subject of the '351, '388 and '312 patents *are related to the ideas and inventions which are the subject of the '106 patent."* *See* Proposed Conclusions at Count II, ¶ 1)(emphasis added).  Again, Defendants have conceded the same.

Instead of assigning the Related Patents to Compak, Johnson purported to assign them to a new company, Patpak, Inc. ("Patpak"), that he created and controlled, and in turn, caused Patpak to license the Related Patents to Compak for a fee. *See* Statement at ¶¶ 35-47.  Frankly, it is perplexing, that after conceding that Johnson assigned "future related inventions" to Compak, and that the Related Patents were, in fact, "future related inventions," that the Defendants could even credibly debate the conclusion that logically follows—that the Related Patents belonged to Compak (not Johnson or Patpak).  Nevertheless, the Defendants have objected based solely on the cryptic contention that "the question of patent ownership was never properly before the Bankruptcy Court." *See* Objections at p. 4.  The mere suggestion is absurd.

Indeed, this Court need not look past the Complaint to see that Plaintiff has steadfastly alleged throughout this litigation that Compak was the rightful owner of the Related Patents. Among other things, the Complaint alleges that the Related Patents "should have been registered in Compak Corporation's name... ." *See* Complaint at ¶17.  Moreover, Count I of the Complaint

4

(which was referred to the Bankruptcy Court) seeks the imposition of a constructive trust over the Related Patents, alleging that Compak was "the true and rightful owner," because its funds and resources were used to develop the Related Patents, and thus asks the Court to order Johnson to transfer legal title to the Related Patents to Compak. *Id.* at ¶ 52. And finally, in the Complaint, Plaintiff also alleged that by virtue of its purchase of Compak's business assets, Plaintiff was vested with Compak's rights to the Related Patents. *Id.* at ¶ 53. Simply stated, the "question of patent ownership" was always squarely before the Bankruptcy Court, and any suggestion to the contrary strains the limits of good faith legal advocacy.

More significantly, however, the question of ownership of the Related Patents was expressly "teed-up" *by both sides* in the briefing of Defendants' Motion for Summary Judgment (the "Motion").[4] In fact, Defendants' Motion expressly challenged Plaintiff's "alleged ownership rights" in the Related Patents. *See* Defendants' Memorandum of Law at p. 4. In its Response to the Motion, Plaintiff cited an abundance of authority demonstrating that the 1992 Bill of Sale (described above) automatically vested Compak with ownership of the Related Patents *as they were invented. See Imatec, Ltd., v. Apple Computer, Inc.*, 81 F.Supp.2d 471, 481 (S.D.N.Y. 2000); *see also FilmTec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1573 (Fed. Cir. 1991)(assignment of future inventions occurs by operation of law); *Affymetrix, Inc., v. Illumina, Inc.*, 446 F.Supp.2d 292, 296 (D.Del. 2006)(present assignment of future interests occurs by operation of law, *and does not require subsequent assignment*). *See* Response at pp. 6-7, 10-11. Incredibly, the Defendants chose to ignore these arguments, failing to offer any contrary authority or rebuttal. This failure was tantamount to a concession by the Defendants of this critical issue. *See Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 876 (7th Cir. 2008)(where party fails to address an argument in a summary judgment brief, it is deemed a waiver). The Bankruptcy Court, therefore, correctly held

---

[4] In considering a motion for summary, any admissible evidence of record is properly before the court and may be considered. *In re Associated Bicycle Service, Inc.*, 128 B.R. 436, 441 (N.D.Ind. 1990).

that Compak was vested with ownership of the Related Patents by operation of law. The Defendants' Objection thereto must fail.

Similarly, in its Response to the Motion, Plaintiff also demonstrated that the 1992 Bill of Sale divested Johnson of any right, title or interest in the Related Patents. *See Imatec, Ltd.,* 81 F.Supp.2d at 481. Accordingly, there was no need (as Defendants claimed and still claim) for Plaintiff to "avoid" any purported pre-petition assignment of the Related Patents by Johnson.[5] Quite the contrary, because Johnson had no enforceable legal interest in the Related Patents, his purported assignment of the Related Patents to Patpak was a nullity. *See FilmTec Corp.,* 939 F.2d at 1573 (although employee purported to assign his rights in patent to a plaintiff, a third-party, "he had nothing to give to [the plaintiff] and his purported assignment to [the plaintiff] is a nullity.") The Defendants also chose to ignore *these* arguments, failing to offer contrary authority or counter-argument, thereby also conceding the issue. Thus, the Bankruptcy Court correctly held that Johnson "was divested of any transferable interest" in the Related Patents, and that his purported assignment of the Related Patents to Patpak as well as "the purported Patpak license was invalid." This Court should ignore the Defendants' Objections thereto.

The Bankruptcy Court's Proposed Conclusions relating to the ownership of the Related Patents (at Count II, ¶¶ 1-8, at Count I, ¶¶ 2-3) should be accepted, but modified per Plaintiff's limited objection.

---

[5]   Whether by design or oversight, the Defendants stubbornly cling to the incorrect belief that Plaintiff's interest in the Related Patents hinges on the need for a bankruptcy trustee to bring a fraudulent conveyance or preference action. It does not. In fact, Plaintiff neither seeks to assert nor relies on any avoidance powers vested in either trustee. As set forth above, Compak's rights to the Related Patents vested by operation of law (not avoidance powers) as the Patents were issued (and long before Compak filed for bankruptcy). Similarly, Plaintiff neither needs nor seeks relief from the Court's March 2003 sale order which, as set forth below, plainly transferred Compak's rights in the Related Patents to BMJ.

**THE BANKRUPTCY COURT CORRECTLY CONCLUDED THAT
COMPAK'S INTEREST IN THE RELATED PATENTS WERE
<u>TRANSFERRED TO PLAINTIFF PURSUANT TO THE SALE ORDER</u>**

The Bankruptcy Court was also correct when it found and held that: (1) Compak was vested with all rights, title, and interest in the Related Patents by operation of law when they were issued; (2) that Plaintiff was the successful bidder at an auction of all of Compak's business assets (which merely excluded its bankruptcy causes of action); and that as such, (3) the imposition of a constructive trust was "needless" to transfer legal title of the Related Patents to Plaintiff. (Proposed Findings at ¶ 4, Proposed Conclusions at Count II, ¶ 2, and Count I, ¶ 3).

The Defendants argue that the Sale Order (defined below) only expressly referenced the 106 Patent, and not the Related Patents. *See* Objection at pp. 6-7. The complete record, however, makes it quite clear that Compak's rights, title, and interest in the Related Patents were included in its sale of Business Assets to BMJ. Indeed, at the outset of the auction process, Compak's counsel expressly acknowledged that the participants were bidding "for all of the assets of Compak," including its rights "to any intellectual assets." *See* Statement at ¶ 101-05, Appendix Ex. 60 at pp. 2, 4. After BMJ was the successful bidder, the sweeping nature of the conveyance was memorialized in the Bankruptcy Court's Order approving the sale (the "Sale Order") to BMJ of all of Compak's "Business Assets," defined exceedingly broadly to include "all of [the] business real and personal property" and merely excluding "bankruptcy causes of action, and related claims and cash." *See* Statement at ¶ 107-14, Appendix Ex. 62. Thus, to the extent that Compak was vested with actual property rights to the Related Patents, the Sale Order transferred those rights to BMJ.

In the alternative, even if Compak merely had the right to bring a cause of action against Johnson and/or Patpak to compel the formal assignment of the Related Patents, that right was also transferred to BMJ as part of the approved Sale Order. Indeed, the Bill of Sale operates to sell, assign, transfer and set over to BMJ "all of the Seller's rights, title and interest in and to all of the

7

personal property of the Seller, *tangible and intangible*, wherever located, including without limitation all of Seller's business as a going concern, goodwill, [and] *choses in action... ." See* Statement at ¶ 115, Appendix Ex. 66 (emphasis added). In short, the Sale Order effectively transferred to BMJ any and all rights that Compak had or could have asserted in the Related Patents.

Defendants argue that Plaintiff has "acknowledged lack of ownership" in the Related Patents because Plaintiff sought a settlement with the Trustees to purchase their interests in the Related Patents. This contention barely merits response. Indeed, the Settlement Agreement— which preceded the Court's Proposed Findings and Conclusions—is a compromise of disputed claims, expressly noting in its recitals that: "a dispute ensued between [Plaintiff], on the one hand, and Compak's and Johnson's Trustees on the other hand, over ownership and/or rights to use of the [Related] Patents." *See* Joint Motion of Ch. 7 Trustees for Approval of Settlement Agreement at Ex. A. The Settlement Agreement is plainly inadmissible to prove the validity of Plaintiff's claim to the Related Patents. *See* Fed. R. Evid. 408. And if it were not, this Court should also note that after Defendants objected to the settlement, outbid Plaintiff, and then entered into their own Agreement with the Trustees, the Trustees would not represent or warrant that they owned any of the Related Patents, but instead merely quit claimed "any and all of the rights, titles and interests that either has *or may have or claim to have*" in the Related Patents. By the Defendants' warped logic, this would be a clear admission by both parties that ownership of the Related Patents was unsettled.[6] Unsettled, that is, until the Bankruptcy Court entered its Proposed Findings and Conclusions and this Court affirms the same. The Bankruptcy Court's Proposed Conclusions

---

[6] So it is clear, Defendants agreed to purchase the Trustees' alleged interests in the Related Patents with full knowledge that those interests (if any) were the subject of this pending legal dispute. They cannot, therefore claim *bona fide* purchaser status. In essence, the Defendants willingly took the gamble that they were buying something of value from the Trustees…and they lost that gamble.

relating to the transfer of the Related Patents (at Count I, ¶ 3) should be accepted, but modified per

Plaintiff's limited objection.

### THE BANKRUPTCY COURT ERRED IN CONCLUDING THAT THE SALE ORDER DID NOT EFFECTIVELY TRANSFER COMPAK'S ASSETS TO BMJ FREE AND CLEAR OF THE DUOTECH LICENSE

The Sale Order plainly purported to authorize the sale of Compak's Business Assets to

BMJ "free and clear of all liens, claims, encumbrances and interests." (*See* Statement at ¶¶ 81-90).

The Bankruptcy Court concluded, however, that the Sale Order was insufficient to extinguish the

DuoTech license because Defendants never received notice of the same, and even if they did, the

notice did not adequately advise them that their property rights "were in jeopardy at the sale." *See*

Proposed Conclusions at Count II, ¶¶ 15-17. Even assuming that this were true, the Bankruptcy

Court nevertheless erred in ultimately concluding that the Sale Order was "void" for the purpose of

selling assets free and clear of the DuoTech license. *See* Proposed Conclusions at Count II, ¶¶ 18.

Accordingly, Plaintiff joins Defendants in objecting to this conclusion, but for a vastly different

reason—the Sale Order was, at most, *voidable* (not void) in this limited respect, and Defendants

can no longer collaterally challenge the terms of the sale to a *bona fide* purchaser.

Stripped to its core, Defendants' challenge to the notice and sufficiency thereof is a

collateral attack on the 2003 Sale Order, which otherwise purported to sell all of Compak's

Business Assets free and clear of any DuoTech license. *See Gekas v. Pipin (In re Met-L-Wood

Corp.)*, 861 F.2d 1012, 1018 (7th Cir. 1988) (post-sale lawsuit was properly dismissed as "a thinly

disguised collateral attack on the judgment confirming the sale"). It must be noted, however, that a

§ 363 sale is an *in rem* proceeding that transfers property rights which are "good against the world,

not just against those with notice of the proceedings." *Id.* In *In re Edwards*, a case squarely on

point, the Seventh Circuit refused to set aside a bankruptcy sale of real property to a *bona fide*

purchaser after eighteen months, even though a lien holder (who held a recorded second mortgage)

never received notice of the sale. 962 F.2d 641 (7th Cir. 1992). Although conceding that the lack

of notice to the lien holder effectively denied it of due process rights, the Seventh Circuit reasoned

that the impact of this error was trumped by the strong policy of preserving finality in a § 363

bankruptcy sale and "the principal that a bona fide purchaser at a bankruptcy sale obtains good

title." *Id.* at 645. As the Court explained:

> The issue is what happens when the trustee or debtor in possession fails to
> make the required notice. That issue is controlled by the policy of finality
> illustrated by section 363(m) and by the limited scope of Rule 60(b). The
> doctrine of *bona fide* purchasers does not violate the due process clause.

*Id.* at 645. Accordingly, after weighing the competing valid property interests, the Court

concluded that the scale tips "heavily in favor of the bona fide purchaser," and held that the lien

holder could not vacate the sale order conveying the property *free and clear* of the lien holder's

interest. *Id.* at 643-45.

     *Edwards* and *Met-L-Wood* are dispositive of this dispute. The Sale Order expressly

provided that BMJ was a good faith purchaser within the meaning of § 363(m). *See* Appendix Ex.

62 ¶¶15, G. The Defendants waived their right to challenge the Sale Order—even on the grounds

of due process—because they failed to appeal the Sale Order or otherwise move for relief

pursuant to Rule 60(b) or Rule 9024(b) of the Federal Rules of Bankruptcy Procedure. *See* 962

F.2d at 644. ("A denial of due processes is for the most part treated like any other legal error, and

is thus waived if not pressed."). Among other things, Rule 60(b) requires a litigant seeking relief

from an order to move accordingly within a reasonable time, and not more than one year after the

order was entered. *Id.* at 643 ("after the time for appeal [of the sale order] had passed the sale

could only be challenged, if at all, only in accordance with the provisions of Rule 60(b)"). Thus

regardless of whether they received prior notice that their rights were in jeopardy, Defendants

failed to act reasonably thereafter to protect their alleged rights.

And so it is clear, Defendants were keenly aware that their rights were in jeopardy within months (if not days or weeks) of the entry of the Sale Order. In October, 2003, Plaintiff commenced the captioned infringement action against Defendants alleging that the Sale Order "extinguished the purported license as a matter of law." *See* Complaint at ¶ 43. Still, however, Defendants never sought relief under Rule 60(b) or Rule 9024(b). Defendants' protests about "fairness" ring hollow when measured against the interests of Plaintiff, a *bona fide* purchaser. This Court must reject Defendants' Objections, and correct the Bankruptcy Court's Proposed Conclusion that the Sale Order did not transfer assets free and clear of the DuoTech license. While the Sale Order was perhaps voidable for a time, the time to challenge its legal impact has long passed. This Court should conclude that any DuoTech license was extinguished by the Sale Order, and thus any use of the Related Patents by Defendants thereafter was indeed infringement of the Related Patents. Defendants' Motion for Summary Judgment as to Count II should be denied.

### ALTERNATIVELY, THE COURT MUST CONCLUDE THAT COMPAK' TRANSFERRED ITS INTERESTS IN THE DUOTECH LICENSE TO PLAINTIFF AS PART OF THE 2003 BANKRUPTCY SALE

Alternatively, to the extent this Court declines to find (as it should) that Defendants' failure to seek timely relief from the Sale Order precludes their challenge to the rights of a *bona fide* purchaser which purchased assets "free and clear" of the DuoTech license, it should nevertheless approve the Bankruptcy Court's conclusions that: (1) BMJ "acquired Compak's interest in the DuoTech License through its purchase of the debtors' assets;" and that as, such (2) the "DuoTech License was not an asset of the chapter 7 estate" and §365(d)(1) of the Bankruptcy Code does not apply. *See* Proposed Conclusions at Count II, ¶¶ 19-20.

Plaintiff concurs with Defendants that executory contracts must be "assumed" as that term is used by § 365 of the Bankruptcy Code to be assigned. Defendants are simply wrong, however, to the extent that they are contending that the DuoTech license could not have been assumed as

11

part of the assignment approved by the Bankruptcy Court in this case. Exalting form over substance, the Defendants contend that the assumption of the DuoTech license was "never approved, *by separate order,*" and thus "had not *properly* been assumed by Compak." *See* Objection at p. 7 (emphasis added)[7]. There is nothing in the text or notes of § 365 that states that assumption must be made by a separate order. Defendants have not cited to any authority that supports their "separate motion" requirement (and Plaintiff's research has not revealed any). In fact, there is ample authority that suggests the contrary—compliance with § 365 does not require strict adherence to rigid formalisms. *See, e.g., In re Re-Trac Corp.,* 59 B.R. 251, 254-55 (D.Minn. 1986); *In re By-Rite Distributing, Inc.,* 55 B.R. 740, 743 (D. Utah 1985). Rather, as the Court in *By-Rite* reasoned:

> Section 365 contemplates two distinct actions, one by the trustee (or debtor in possession) and one by the Court. The trustee assumes or rejects, and the Court approves. The Code does not specify how the trustee is to assume or reject a lease, but the trustee's action is different from the Court's. Such is the import of § 365(a), which states that 'the trustee, subject to the Court's approval, may assume or reject any... [executory contract].

*Id.*

In this case, the "two distinct actions" were accomplished concurrently. The Bankruptcy Court expressly found that that the Notice stated that "*all* executory contracts of the debtor" would be assigned to the purchaser. *See* Proposed Findings at ¶ 20 (emphasis added).[8] Similarly, the

---

[7]     The most disingenuous part of Defendants' argument is that they would not have had any basis for objecting to the assumption of the DuoTech license. There has been no contention that Compak was in default thereof (it was not), thus there was no need to "cure" any default. *See Superior Toy & Manufacturing Co., Inc., v. Steege,* 78 F.3d 1169, 1174 (7th Cir. 1996)(debtor must cure any default to assume executory contract). Any failure to "properly assume" the license, therefore, would have been a meaningless technicality, yet the Defendants are attempting to exploit that technicality to the detriment of a *bona fide* purchaser.

[8]     Indeed, Defendants are judicially estopped from arguing to the contrary having sought summary judgment based upon their belief that "it was clear from the Sale Motion and attached Asset Purchase Agreement and Procedures Order that the proposed 'stalking horse' bidder was seeking to assume *all* of Debtors contracts," (Memorandum of Law at p. 12 (emphasis in original)), and arguing that the Notice

Sale Order sufficiently indicates that the executory contracts had been assumed as part of the assignment in that it expressly ordered that "[t]he ten day stay of this Order provided by ... Rule 6006(d) shall not apply. *See* Appendix Ex. 62 at ¶ N. Rule 6006 governs the "Assumption, Rejection or Assignment of an Executory Contract" and subsection (d) imposes a ten day stay of an order assigning an assumed executory contract "unless the court orders otherwise." The fact that the Notice and Motion merely stated that the executory contracts would be "assigned," rather than more precise, "assumed and assigned," is legally irrelevant. *See Chbat v. Tleel (In re Tleel)* 876 F.2d 769, 772 (9th Cir. 1989)("the bankruptcy court's order permitting the Trustee to sell the property free and clear of all liens...operated as an assumption of the contract. .... In this case, the formal actions taken in the bankruptcy court by the debtor in possession acting as trustee....to obtain permission to sell the Property free and clear of all licenses...constitute an adequate assumption..."). Accordingly, the Defendants' contention that the DuoTech license was not properly assumed before it was assigned must be rejected on the merits.[9] Of course, this Court need not reach the merits of the argument, however, because as set forth above, any challenge that the DuoTech license was not properly assumed is a collateral attack on the Sale Order that has been waived. *See Gekas*, 861 F.2d 1012 at 1018.

Finally, even assuming that the DuoTech license was not properly transferred (thus terminated by operation of law), the Defendants are legally mistaken in their belief that the benefits under the license created by operation of law pursuant to § 365(n) inured to the benefit of the Trustees (and now to Defendants by virtue of their settlement with the Trustees). The right to receive royalties on the Related Patents belongs solely to Plaintiff as the owner of the Related

---

"informed parties in interest that the purchaser was going to *assume all of Debtor's contracts, including licenses* of intellectual property." *Id.* at p. 11 (emphasis added).

[9]    A contrary holding would yield a patently unfair result and set a dangerous precedent by rewarding a debtor in possession that sells its interest in an executory contract to a *bona fide* purchaser, and then is allowed to claim that its failure (by design or oversight) to "properly assume" the contract rendered the sale a nullity, thereby creating a windfall for the debtor.

13

Patents. *See Chemical Foundation, Inc., v. E.I. du Pont Nemours & Co.,* 29 F.2d 597, 600 (D.Del. 1928)(assignee of patents enjoys all rights to future royalties unless assignor expressly reserves those rights for itself); *see also* WALKER ON PATENTS § 20.47.

Significantly, courts follow this same rule whether the royalties are paid pursuant to an express license agreement, or a license created by operation of law upon a timely election made pursuant to § 365(n). *See Schlumberger Resource Management Services, Inc., v. Cellnet Data Systems, Inc. (In re Cellnet Data Systems, Inc.)* 327 F.3d 242, 247-48 (2003). *Cellnet,* involved a dispute between a Debtor and the purchaser of its intellectual property over which of the two had the rights to receive royalties after an express license agreement was rejected and the licensee elected to continue using the patents pursuant to § 365(n) of the Bankruptcy Code. In *Cellnet,* the Third Circuit reaffirmed the axiom that "it is the intellectual property that creates the right to royalties" although it noted that the owner may otherwise "parcel out its bundle of rights" associated with ownership. *Id.* at 249-50. Citing *Chemical Foundation,* the Court made it clear, however, that it would not permit those rights to be "parceled out" cavalierly. Quite the contrary, the Court held that any right to receive royalties on a patent flowed from ownership of the patent unless "divorced by an *express reservation."* *Id.* at 247. The Court also made it clear that the "express reservation" would have had to be part of the terms of the assignment, and not merely implied out of the retention of a license, holding:

> Where an assignment conveys all the assignor's right title and interest [in patents], if the right to receive royalties is to be severed from the beneficial ownership of the patent and remain in the assignor, *there must be an express reservation or some agreement to that effect.* I do not think that the mere retention of the 'license' ... is sufficient to make the severance.

*Id.* at 247-48 (quoting *Crom v. Cement Gun Co.,* 46 F.Supp. 403, 405-06 (D.Del. 1942).

Similarly, in *Novon International, Inc., v. Novamont S.P.A., et al., (In re Novon International, Inc.,)* 2000 WL 432848 (W.D.N.Y. 2000), the court took the same approach to a

similar dispute over the rights to receive royalties payable pursuant to §365(n).  Noting that accrued royalties are not presumptively assigned, without more, by assignment of the patent, the presumption is reversed with respect to "future royalties," which "are incident to and transferred with the patent unless separated by express reservation or 'some agreement to that effect.' " 432848*5.

It follows therefore that even if Defendants have a continuing viable license protected created by operation of law pursuant to § 365(n), any and all benefits inuring from that license belong to the Plaintiff.    As the Bankruptcy Court found (and Defendants concede), the Debtor purported to assign *all* of its rights, title and interest in the DuoTech license (and Patpak license) to Plaintiff. There was no express reservation of any right to receive future royalties by the Debtor in any motion, notice, or agreement.  Plaintiff, therefore, *not* the Trustees, and *not* the Defendants, is entitled to any and all royalties due for use of the Related Patents.  Defendants Objections to the Bankruptcy Court's contrary Proposed Conclusions (at Count II, ¶¶ 18-20) must fail.[10]

---

[10]    Defendants' Objection to the Proposed Conclusions for their failure to grant them a right of set-off against Plaintiff for their attorney's fees is wholly without merit. *See* Objection at pp. 11-12.  Under any scenario, Defendants would not be entitled to any set-off for the attorneys fees they purportedly incurred. Obviously, if Compak's assets were sold free and clear of all liens, claims, encumbrances and interests, then any rights set forth therein can only have been enforced against the proceeds of the sale. *Precision Industries, Inc. v. Qualtech Steel SQQ, LLC,* 327 F.3d 537, 548 (7th Cir. 2003)(asset sold free and clear of third party's interest, whose only recourse was to seek protection under section 363(e)). Even if a DuoTech license survived the sale, the issue of which license survived remains hotly contested.  The July License does not confer any right to recover attorney's fees. *See* Statement at ¶¶ 48-56. And finally, if Defendants enjoy a license under § 365(n), they are expressly deemed to waive "any right of set-off it may have," whether under a prior license agreement, the Bankruptcy Code or non-bankruptcy law.  11 U.S.C. § 365(n)(2)(C)(i).

Respectfully submitted,

Dated: August 4, 2008

**COMPAK CORPORATON**

By:  ___/s/ George J. Spathis_____
          One of its Attorneys

Robert M. Fishman (3124316)
George J. Spathis (6204509)
Shaw Gussis Fishman Glantz
   Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, IL 60610
Tel: (312) 541-0151

## CERTIFICATE OF SERVICE

George J. Spathis, an attorney, certifies that service of the above and foregoing pleading was accomplished through the Electronic Notice for Registrants on the attached CM/ECF service list, as well as upon the attached mail service list by first-class U.S. Mail, postage prepaid, on this 4th day of August, 2008.  Copies of documents required to be served by Fed. R. Civ. P. 5(a), made applicable by Fed. R. Bankr. P. 7005, have been served.

## CM/ECF Service List

The following is the list of attorneys who are currently on the list to receive e-mail notices for this case:

> Donna B. Wallace
> dbwallace@ameritech.net
>
> Charles Sanford Riecke
> criecke@seyfarth.com
>
> Ariel Weissberg
> ariel@weissberglaw.com
>
> Steven E. Anderson
> sanderson@btlaw.com
>
> George J. Spathis
> gspathis@shawgussis.com

## Mail Service List

> Steven J. Rosenberg
> 53 West Jackson, Suite 224
> Chicago, IL 60604

_/s/ George J. Spathis_

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| COMPAK CORPORATION, | ) | Case No. 02 B 22594 |
| | ) | Honorable Bruce W. Black |
| Debtor. | ) | Chapter 7 |
| | ) | |
| COMMUNION PACKAGING | ) | Case No. 02 B 39188 |
| COMPANY, an Illinois corporation, | ) | Chapter 7 |
| | ) | Honorable Bruce W. Black |
| Debtor. | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| _____ | ) | |
| THE COMPAK COMPANIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 04 A 04028 |
| | ) | |
| v. | ) | |
| | ) | |
| JIMMIE L. JOHNSON, RON BOWEN, | ) | |
| BRUCE CARLSON, PATPAK, INC., | ) | |
| DUOTECH HOLDINGS, INC., | ) | |
| DUOTECH PACKAGING, LLC, AND | ) | |
| OLMARC PACKAGING COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

### NOTICE OF FILING

**TO:**    THE ATTACHED SERVICE LIST

PLEASE TAKE NOTICE that on the 4th day of August, 2008, the undersigned filed

**DUOTECH DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE**

**BANKRUPTCY COURT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS**

**OF LAW**, with the United States Bankruptcy Court for the Northern District of Illinois, copies

of which are herewith served upon you.

Respectfully submitted,

DUOTECH HOLDINGS, INC.; DUOTECH
PACKAGING LLC and BRUCE CARLSON

By:    /s/Steven E. Anderson
       Daniel P. Albers (Atty. No. 6185037)
       Steven E. Anderson (Atty. No. 6292286)
       **BARNES & THORNBURG**
       One North Wacker Drive Suite 4400
       Chicago, IL 60606
       (312) 357-1313
       Fax: (312) 759-5646

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was served on this 4th day of August, 2008 via the ECF filing system, except as noted, to the following parties of record:

**George J. Spathis**
Shaw Gussis Fishman Glantz Wolfson & Tow
321 N. Clark Street
Suite 800
Chicago, IL 60610
312 541-0151
312 980-3888 (fax)
gspathis@shawgussis.com

**Robert M Fishman**
Shaw Gussis Fishman Glantz Wolfson
321 N Clark Street
Suite 800
Chicago, IL 60610
312 666-2842
312 275-0567 (fax)
rfishman@shawgussis.com

**Donna B Wallace**
Joseph A Baldi & Associates, PC
19 S Lasalle Street Suite 1500
Chicago, IL 60603
312-726-8150
312-332-4629 (fax)
dbwallace@ameritech.net

**Joshua J Whiteside**
Staes & Scallan PC
111 W Washington St Suite 1310
Chicago, IL 60602
312 201-8969
312 201-9233 (fax)
joshwhiteside@covad.net

**Andrea C Okun**
Seyfarth Shaw LLP
55 E Monroe
Suite 4200
Chicago, IL 60603-5803
3123468000
3122698869 (fax)

**Steven J Rosenberg**
53 W Jackson Suite 224
Chicago, IL 60604
312-280-7717

**Ariel Weissberg**
Weissberg & Associates, Ltd
401 S. LaSalle Street
Suite 403
Chicago, IL 60605
(312) 663-0004
312 663-1514 (fax)
ariel@weissberglaw.com

By:   /s/ Steven E. Anderson

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| COMPAK CORPORATION, | ) | Case No. 02 B 22594 |
| | ) | Honorable Bruce W. Black |
| Debtor. | ) | Chapter 7 |
| | ) | |
| COMMUNION PACKAGING | ) | Case No. 02 B 39188 |
| COMPANY, an Illinois corporation, | ) | Chapter 7 |
| | ) | Honorable Bruce W. Black |
| Debtor. | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| THE COMPAK COMPANIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 04 A 04028 |
| | ) | |
| v. | ) | |
| | ) | |
| JIMMIE L. JOHNSON, RON BOWEN, | ) | |
| BRUCE CARLSON, PATPAK, INC., | ) | |
| DUOTECH HOLDINGS, INC., | ) | |
| DUOTECH PACKAGING, LLC, AND | ) | |
| OLMARC PACKAGING COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## DUOTECH DEFENDANTS' RESPONSE TO PLAINTIFF'S
## OBJECTIONS TO THE BANKRUPTCY COURT'S PROPOSED
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

DuoTech Holdings, Inc., DuoTech Packaging LLC and Bruce Carlson (collectively

hereafter "DuoTech") by and through their attorneys Barnes & Thornburg LLP, in accordance

with Fed. R. Bank. P. 9033(b), hereby respond to Plaintiff's Objections to the Proposed Findings

of Fact and Conclusions of Law filed with the Bankruptcy Court on July 25, 2008 and state:

-4-

## Introduction

Plaintiff (like defendants DuoTech and the Chapter 7 Trustees for the various estates) **does not object to the ultimate conclusion that the District Court should grant DuoTech summary judgment on Counts I and II of the Complaint, regardless of how the Court addresses either party's objections.** Plaintiff's objections to the Bankruptcy Court's Proposed Finding of Fact and Conclusion of Law ("Proposed Findings") are limited to three points.

First, Plaintiff argues that the word draft be stricken from Proposed Findings of Fact ¶13, even though the Bankruptcy Court found no deficiencies in the construction or implementation of the August 29, 2001 license agreement (also referred to as the "DuoTech License") which states that it supersedes any preexisting agreements. Second, Plaintiff suggests that Proposed Finding of Fact at ¶19 be changed to indicate that DuoTech Management received notice of the Sales Motion[1] even though the Bankruptcy Court provides detailed analysis supporting its conclusion that DuoTech was not served with sufficient notice and that the notice that was provided to other parties would not have adequately informed DuoTech that its license rights were in jeopardy. Third, Plaintiff seeks to expand the language of Proposed Conclusion of Law (Count I) at ¶3, when its actions demonstrate that Plaintiff did not own the '351, '388 and '312 patents (collectively referred to hereafter as the "Patents").

---

[1] The Sale Motion consisted of a copy of the motion and a copy of the proposed Asset purchase agreement between Compak and a stalking-horse bidder. For purposes of consistency, all abbreviated designations are consistent with those used in the Proposed Findings.

**Plaintiff's Objection to Proposed Finding of
Fact ¶13 is Unnecessary and Without Basis and Should Be Denied.**

Plaintiff objects to the Bankruptcy Court's use of the word "draft" in the Proposed
Findings of Fact ¶13. In support of its objection, Plaintiff suggests that DuoTech denies that it
had a working relationship and license agreement with Compak prior to the August 29, 2001
license agreement. This is not the case. In the very electronic correspondence cited by Plaintiff,
Bruce Carlson acknowledges that a license agreement did exist for use of the Patents, albeit in an
unsophisticated form. After acknowledging the inadequacy of the prior agreement for the
purpose of selling packaging services to potential clients, Carlson stated the necessity for a more
formal agreement. On this point, Carlson wrote:

> [T]he original problem was the [DuoTech] spent a lot of money
> and time 'dummying-down' our original license with [Compak], so
> it would sail right through. **[N]ow that is coming back to haunt
> us since other companies need to see real legalese.** [L]et me be
> perfectly clear: this is not a problem – it is a language issue. [B]y
> Tuesday or [Wednesday, I] will present a new license to
> [C]ompak. If they don't accept it, we will package our mouth wash
> differently. *(emphasis added) See* Exhibit 2, Adv. Case No. 04 A
> 04028, Docket No. 231.

As is apparent from this statement, DuoTech's business partners required the legal
certainty that accompanies a formal license; more specifically, a license that more clearly
detailed the rights and obligations of both parties. The law has long recognized the business
reality of companies working together under some basic form of understanding prior to the
formal declaration of their working relationship in a traditional contract. *See generally Great
Lakes & St. Lawrence Transp. Co. v. Scranton Coal Co.*, 239 F. 603, 610 (7th Cir. 1917). In
order for DuoTech to approach potential customers on Compak's behalf, the two organizations
had a basic draft agreement that was formalized (and superseded) by the August 29, 2001
DuoTech License. Thus, even if the previous versions of the agreement were "contracts," the

-6-

DuoTech License states that "[t]his agreement . . . supersedes any preexisting agreements between such parties concerning the same[.]" Supp. Tab "D" ¶19 at 15-16. Docket No. 148. There is no basis for Plaintiff's proposed change.

Also, Proposed Findings of Fact ¶¶12 and 14 do not support Plaintiff's objection, as Plaintiff suggests.  Neither Proposed Finding addresses the completeness of any agreement between the parties prior to entering the DuoTech License agreement.  In Proposed Conclusions of Law (Count II) ¶¶5-6 the Bankruptcy Court merely concluded that it would find, as a matter of law, that even if the August 2001 license were somehow invalid, DuoTech would still have the right to use all four patents at issue.  The Proposed Findings do not show, however, that the Court found any deficiencies in the construction or implementation of the DuoTech License.

### Plaintiff's Objection to Proposed Finding of Fact ¶19 Seeks To Overturn The Bankruptcy Court's Notice Analysis and Should Be Denied As Legally and Factually Unsupported.

Plaintiff objects to the Bankruptcy Court's Proposed Finding of Fact at ¶19 because it does not include language identifying individuals who received notice of the Sale Motion. Plaintiff's proposed amendment to the Proposed Finding of Fact at ¶19 would state that DuoTech "management" was aware of the Sales Motion.  Plaintiff asserts that the addition to the Proposed Finding of Fact at ¶19 would provide a more accurate finding of fact.  To the contrary, the adoption of the Plaintiff's suggested additional language would overturn the Bankruptcy Court's factual finding and, in so doing, invalidate the related Proposed Conclusions of Law (Count II) ¶¶ 9-17 regarding the notice issue.

Throughout the proceedings in Bankruptcy Court, the issue of whether DuoTech received proper notice of the Sales Motion has been key.  As the Bankruptcy Court observed in Proposed Conclusion of Law (Count II) at ¶17, notice must be "of such nature as reasonably to convey the

-7-

required information" that DuoTech's property rights were in jeopardy at the sale. As is evident from the Bankruptcy Court's detailed analysis of the notice issue in ¶¶9-17 of Count II of the Proposed Findings, the Court concluded that DuoTech did not receive adequate notice of the Sales Motion in Finding of Fact ¶19. *See Proposed* Findings ¶¶19-20 and Proposed Conclusions (Count I) ¶¶9-19. Plaintiff cites no evidence to overturn the Court's proposed finding or to justify a different conclusion. Rather, Plaintiff re-cites several opinions that the Bankruptcy Court specifically addressed in its Proposed Findings. Most notably, the Court held that *Boyd*[2] (the case cited by the Plaintiff in support of its position that service on Ron Bowen and Dr. Binkley satisfied traditional notice requirements in regards to DuoTech) "simply has no relevance to this case." Plaintiff offers no new reasons why *Boyd* or the other cited cases would apply under the facts of this case and there are none. The Court's factual and legal conclusions on the notice issue were correct and should not be changed. Plaintiff's objection should again be denied.

**Plaintiff's Objection and Supplement to
Proposed Conclusion of Law ¶3 Should Are Also Baseless and Should be Denied.**

Plaintiff finally objects to the Bankruptcy Court's use of the phrase "and continued to have" in the Proposed Conclusion of Law (Count I) at ¶3, and requests that language be added to reflect a post-sale transfer of interest between BMJ and TCC. It is unclear how Plaintiff can object to the wording of this proposed conclusion while admitting, even if its suggested revision were adopted, that **"the imposition of a constructive trust to transfer title to the plaintiff is needless[.]"** (*emphasis added*). Plaintiff's only supporting argument for changing the language of the Proposed Conclusion of Law (Count I) at ¶3 is that the language of the Sales Order

---

[2] *Boyd v. Illinois State Police*, 98 C 8348, 2001 WL 726988 (N.D. Ill. June 28, 2001).

approved by the Court in March 2003 should be construed as broad enough to encompass all intellectual property rights owned by Compak at that time. However, Plaintiff's own actions in soliciting the Trustees of the various defendant estates and attempting to purchase these very same patents during the course of this litigation directly belie its new position. *See generally*, Joint Order of Chapter 7 Trustees For Approval of Settlement Agreement, Interpleader Adv. Case No. 03 A 03898, Docket No. 124.

Also, DuoTech has itself objected to the basis of the Proposed Conclusion of Law (Count I) at ¶3, asserting that (1) the ownership of the Patents was never properly before the Bankruptcy Court because Plaintiff lacked standing to bring bankruptcy causes of action, (2) any such action was an impermissible collateral attack on the March 2003 Sale Order that is barred by *res judicata* and that (3) the actions of all parties involved in the case (and the Bankruptcy Court's Approval of the Settlement Agreement[3]) show PatPak's ownership of the Patents.    *See* DuoTech's Objection to the Proposed Finding of Fact and Conclusions of Law at 4-13, Adv. Case No. 04 A 04028, Docket No. 223.

Once more, there is no basis for this objection and it should be denied.

## Conclusion

Plaintiff's objections do **not contest the ultimate conclusion reached by the Bankruptcy Court that summary judgment should enter in DuoTech's favor on Counts I and II of the Complaint** and that portion of the proposed findings should remain intact no matter how the Court rules on either party's objections. Plaintiff's limited objections have no factual or legal basis. Accordingly, for the reasons set forth above and in DuoTech's objections,

---

[3] The term "Settlement Agreement" refers to the agreement approved by the Bankruptcy Court on November 29, 2007 whereby DuoTech, purchased all of the remaining assets of the Compak, Communion Packaging Company, Patpak and Jimmie Johnson bankruptcy estates.

DuoTech respectfully requests that the District Court deny Plaintiff's objections, and enter summary judgment for DuoTech.

**DATED:**       August 4, 2008

**DUOTECH HOLDINGS, INC.;**
**DUOTECH PACKAGING, LLC and**
**BRUCE CARLSON, Defendants**

By:  /s/ Daniel P. Albers
          One of their Attorneys

Daniel P. Albers (Atty. No. 6185037)
Steven E. Anderson (Atty. No. 6292286)
**BARNES & THORNBURG LLP**
One North Wacker Drive, Suite 4400
Chicago, IL 60606
(312) 357-1313
Fax:  (312) 759-5646
Daniel.Albers@btlaw.com
sanderson@btlaw.com

CHDS01 SANDERSON 478850v2

-10-